# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CommScope, Inc., | ) Civil Action No. 19-cv-15962- |
| | ) MCA-LDW |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Rosenberger Technology (Kunshan) Co. Ltd., Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG, Northwest Instrument, Inc., CellMax Technologies AB, Janet Javier, and Robert Cameron, | ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION

WHEREAS, counsel for Plaintiff CommScope, Inc. ("CommScope") and Defendants Rosenberger Technology (Kunshan) Co. Ltd., Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, and Rosenberger Hochfrequenztechnik GmbH & Co. KG (collectively, "Rosenberger"); Janet Javier and Robert Cameron; and CellMax Technologies AB

("CellMax"); and Northwest Instrument, Inc. ("NWI") (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain issues regarding ESI discovery;

WHEREAS, the Parties have entered into this Stipulation and Order Regarding the Production of Electronically Stored Information ("ESI Order") to facilitate the just, speedy, and inexpensive discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

IT IS HEREBY ORDERED that:

1. All Parties are bound by and subject to the terms of this ESI Order.

2. The obligations in this ESI Order do not apply to productions made before the entry of this Order or to responses provided to requests made before December 16, 2020. A Party may, upon a showing of good cause, request the production of ESI information as outlined in paragraphs 8-10 for prior productions. The Court may order cost-shifting, if appropriate, upon granting such requests.

3. The provisions of this Order do not modify the Parties' rights and obligations under the Discovery Confidentiality Order (Dkt. 22).

4. **Definitions.**

   a. "Documents" is defined to include hard-copy documents, electronic documents, and ESI as defined herein and consistent with the definition of Federal Rule of Civil Procedure 34.

   b. "Electronic Document or Data" means documents or data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer slide presentations (e.g., PowerPoint or Keynote slides), spreadsheets (e.g., Excel), and image files (e.g., PDF, CAD files, or software files).

   c. "Electronically stored information" or "ESI," as used herein includes Electronic Documents or Data, and computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media.

   d. "Hard-Copy Document" means documents existing in paper form at the time of collection.

   e. "Discovery Material" is defined as all products of discovery and all information derived therefrom, including, but not limited to, documents, objects and things, deposition testimony, interrogatory/request for admission

responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

  f. Plaintiff and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this ESI Order.

  5. **Cooperation.** The Parties shall conduct discovery in a cooperative manner, including without limitation, by producing Documents in accordance with Federal Rule of Civil Procedure 34; and by meeting and conferring in good faith on any issue regarding ESI, as necessary, that may arise during the course of discovery. No Party may seek relief from the Court concerning compliance or non-compliance with the ESI Order until it has met and conferred with the other Party in a good-faith effort to resolve or narrow the area of disagreement.

  6. **Data Sources and Search Protocol.**

  a. The Parties will search for and review Documents in their respective possession, custody, or control regardless of the location of the Documents, including Documents stored outside the United States, to the extent allowed by local law. The Parties reserve all objections to any particular request.

  b. To the extent discovery requires the production of Documents from document custodians, such as e-mail or other ESI on custodians'

4

computers, or on personal drives (e.g., P drive, One Drive), a Party will search and review from agreed-upon custodians and with an agreed-upon list of search terms. The parties are to confer in good faith to prepare a list of agreed custodians and search terms.

    c.    When search terms are applied to identify discoverable Documents, the terms will if possible be applied to the Documents' metadata, file name and file path, in addition to the Documents' content. The responding party shall notify the requesting party of any instance where it was not possible to search Documents' metadata, file name and file path, in addition to the Documents' content.

    d.    Potentially responsive data sources that are not searchable with search terms such as CAD drawings, voicemails, software program files, etc. will be separately identified and reviewed for production using an agreed upon list of sources and search process.

    e.    To the extent a response to discovery requires production of discoverable Documents contained in a structured database—i.e., data that fits in a relational database—the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the Requesting Party. Upon review of the report, the Requesting

Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

  f.  The Parties' agreement as it relates to search terms, document custodians, or data sources does not preclude a Party from requesting additional search terms, document custodians, or data sources pursuant to the terms of this ESI Order, nor does it preclude a Party from objecting to any such additional requests. But the Parties will endeavor to minimize, to the extent practicable, these burdens by avoiding serial requests for additional terms, custodians, or data sources. The Parties agree to meet and confer in good faith regarding requests for additional terms, custodians, or data sources.

  g.  Unless expressly excluded by this ESI Order, the failure to provide a specific search process for a data source in this ESI Order does not excuse a Party from undertaking a reasonable search for and producing discoverable information from that source. Likewise, nothing in this ESI Order forecloses a Party from requesting discovery specifically from a data source that is not addressed herein.

  h.  Absent a showing of good cause (*i.e.*, where such sources are known to be the only sources of discoverable information for relevant custodians during a relevant period), no Party need restore data stored in a

backup system for the purpose of system recovery or information recovery to comply with its discovery obligations in the present case. For the avoidance of doubt, the above limitation does not apply to PSTs or other data locally stored on a custodian or party's computer or server, or that is otherwise readily accessible (such as external hard drives, DVDs, flash drives, and other media). A producing party retains the right to object to such a request, including on the basis that certain sources of ESI are not reasonably accessible because of undue burden or cost. To the extent a party believes that potentially responsive documents are not reasonably accessible, it shall immediately identify, by category or type, the source(s) containing potentially responsive information with enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information from the identified source(s).

  i. Absent a showing of good cause, no Party needs to search (i) phone data or (ii) instant messaging platforms that have been demonstrated not to be reasonably accessible. Any discovery regarding the foregoing two categories shall be limited and tailored to meet a specific discovery need.

7. **De-Duplication.**

  a. The Parties shall make reasonable efforts to de-duplicate Electronic Documents. Electronic Documents may be de-duplicated

7

vertically within each custodian or horizontally across custodians. All Electronic Documents will be de-duplicated using MD5 or SHA1 Hash values. All files bearing an identical MD5 or SHA1 Hash value are considered a duplicate group. For purposes of this paragraph, only e-mail messages in which the parent document and all attachments are identical will be considered duplicates.

      b.    A producing party may de-duplicate Electronic Documents across custodians and populate a data field that identifies each custodian who had a copy of the produced document (the "Duplicate Custodian" field) in addition to a separate data field (the "Custodian" field) identifying the custodian whose document is produced; such de-duplicated documents shall be deemed produced from the custodial files of each custodian identified in the Duplicate Custodian field for all purposes in this litigation, including for use at deposition and trial. A producing party shall use a uniform description of each custodian in English characters across productions. Multiple custodians in the "Duplicate Custodian" field shall be separated by a semicolon. Entity or departmental custodians shall be identified with a description of the entity or department to the extent applicable.

      c.    Hard-Copy Documents shall not be treated as duplicates of ESI.

   d. If a producing party makes supplemental productions following an initial production, that party shall provide with each supplemental production an overlay file to allow the receiving party to update the "Duplicate Custodian" field. The overlay file shall include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the supplemental production.

8. **Production Format.**

   a. General Provisions.  All documents, unless otherwise specified in paragraph 8(b) below, whether stored as paper or ESI, will be produced by the Parties as color, single-page images, with extracted or OCR text in document-level text files, with a load file that references the images and text, and a .DAT file with delimiters that list the metadata fields specified in paragraph 10.  Image reference load files will be provided in .LFP or .OPT formats.  The Parties will meet and confer regarding any good-faith request for the production of Electronic Documents in native file format.

   b. Native Format. The Parties agree that if producing a file in the format provided in paragraph 8(a) would render the file unusable (e.g., Microsoft Excel; design/drawing files such as CAD files; or audio or video files) then such files shall be produced in their native format in the first instance, without requiring a request from the receiving party. Microsoft

9

PowerPoint files should be produced both in the format provided in paragraph 8(a) and in native format. Any file produced in native format (except for PowerPoints) shall include (1) an accompanying Bates-numbered, single-page TIFF slipsheet containing a confidential designation (if any) and a statement that the file has been produced in native format, and (2) agreed upon metadata fields. The delivery format of these elements shall be a load file or files as provided in paragraph 8(a), above. However, should any such file contain information that is protected by any applicable privilege or immunity, it may be produced in TIFF or JPG format as described in paragraph 8(a), above. If producing a set of native files in the format provided in this paragraph would render the related native files unusable, then such files shall be produced in the format in which they exist in the ordinary course.

  c. Parent-Child Relationships. Parent-child relationships (e.g., the association between e-mails and attachments) will be preserved when producing documents. E-mail attachments will be consecutively produced with the parent e-mail record. If an e-mail attachment is privileged or has a technical issue, a slip sheet may be inserted in the production. In addition, under this paragraph, a Party need not produce junk files and non-user-created content routinely excluded during processing.

  d. Database Records.  To the extent that any Party requests information that is stored in a database or database-management system as outlined in paragraph 6(e), the Parties will meet and confer regarding the accessibility of such information and the format of production.

  e. Non-Standard Files.  Non-standard electronic files include, but are not limited to, source code, transactional data, database files, audio and video files, and data and files associated with proprietary applications that are not publicly available.  The Parties will meet and confer as to a reasonable production format for such files.

  f. Hidden Text or Data.  The TIFF images of all files, including without limitation Microsoft Word files (*.doc and *.docx) and PowerPoint files (*.ppt and *.pptx) will be created with any tracked changes, comments, speaker's notes, or any other hidden data showing in such images.

  g. Encrypted files. The producing party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted. Files that cannot be unencrypted should nonetheless be produced in their original format. If a producing party cannot unencrypt discoverable ESI that exists in encrypted format, the parties agree to meet and confer regarding how such information should be handled.

h.     Hard-Copy Documents. Except as otherwise set forth in this paragraph, the Parties agree that responsive paper documents shall be converted to single-page TIFF files, and produced following the same protocols set forth in paragraph 8(a) above, including the production of OCR text that is generated to make such documents searchable. Generally, all paper documents will be scanned and produced electronically, unless a Party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing Party or Parties to review and copy the documents directly. Hard-Copy Documents should be logically unitized. Accordingly, to the extent reasonably possible distinct documents should not be merged into a single record, and single documents should not be split into multiple records. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the documents in the compilation should be reflected in the beginning and ending documents and attachment fields (akin to an e-mail "family"). The Parties will make their best efforts to unitize the documents correctly. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only

populate the following metadata fields: "BEGINDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "CONFIDENTIAL," and "REDACTION" fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

    i.    Bates Numbering. Files will be named according to the Bates number of the corresponding *.tiff image. The Bates number will:

        i.    be consistent across the production;

        ii.    contain no special characters; and

        iii.    be numerically sequential within a given document.

9.    Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

10.    **Metadata to be Produced.**

    a.    The following metadata fields will be produced for each document to the extent that such information is available at the time of collection and processing:

        i.    BEGDOC
        ii.    ENDDOC
        iii.    BEGATTACH

    iv. ENDATTACH
    v. PROD VOLUME
    vi. REDACTIONS
    vii. FILE EXTENSION
    viii. FILE NAME
    ix. FILE PATH
    x. DUPLICATE FILE PATH
    xi. DATE CREATED
    xii. AUTHOR
    xiii. TO
    xiv. FROM
    xv. CC
    xvi. BCC
    xvii. SUBJECT
    xviii. CONFIDENTIALITY
    xix. CUSTODIAN
    xx. DUPLICATE CUSTODIANS
    xxi. LAST MODIFIED DATE – MM/DD/YYYY format
    xxii. DATE SENT – MM/DD/YYYY format
    xxiii. TIME SENT– (HH:MM) format
    xxiv. RECEIVED DATE – MM/DD/YYYY format
    xxv. RECEIVED TIME – (HH:MM) format
    xxvi. FILE SIZE
    xxvii. PAGE COUNT
    xxviii. MD5 HASH
    xxix. TIME ZONE PROCESSED

    b. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

11. **Redactions.** A Party may use redactions as permitted by this ESI Order or the Discovery Confidentiality Order entered in this litigation. Other than as

permitted by this ESI Order or the Discovery Confidentiality Order entered in this litigation, no redactions for relevance may be made. Where a responsive document contains both redacted and non-redacted content, the producing party shall produce the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the producing party's obligation to timely assert and substantiate the assertion of privilege over the redacted content in a privilege log. Redacted versions of spreadsheets, computer slide presentations, and word processing files containing hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) shall be produced in color in TIFF or JPEG format. The Parties shall grant reasonable requests for the production of redacted documents in other formats where the TIFF or JPEG image is not reasonably usable.

12. **Production Media.** The producing party may produce documents via a secure file transfer mechanism and/or on readily accessible computer or electronic media ("Production Media"). Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production as well as the sequence of the material in that production.

13. **Encryption.** To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party.

In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

14. **Authenticity and Admissibility.** Nothing in this ESI Order shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

15. **Use at Deposition.** Any Document produced in native format that a Party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in TIFF image format, endorsed with the document's Bates number and confidentiality designation, as described in paragraph 8(b) above, absent exigent circumstances. If a Party identifies and/or marks a Document as an exhibit at a deposition without the corresponding cover page as contemplated by this provision, the Party shall note the Bates number and confidentiality designation of the Document on the record. Where the Party identifying and/or marking the exhibit is unable to do so during the deposition, the exhibit shall be treated during the deposition as Highly Confidential – Attorneys' Eyes Only and designated as such until the Bates number is identified, and the proper confidentiality designation can be determined.

16. **Confidential, Highly Confidential Attorneys'-Eyes-Only, or Restricted Confidential-Source Code Information.** For the avoidance of doubt, nothing herein shall affect the Parties' rights and obligations with respect to any document or data with a confidentiality designation, as governed by the Discovery Confidentiality Order.

17. **Third-Party Discovery.**

   a. Following the execution of this ESI Order, a Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this ESI Order and the Discovery Confidentiality Order with the subpoena and state that the Parties in the litigation have requested that non-Parties produce documents in accordance with the specifications set forth herein.

   b. The Issuing Party shall immediately produce to all other Parties a copy of any documents (or other responses) and ESI (including any metadata) obtained under subpoena to a non-Party in the format in which they were received from the non-Party.

18. **No waiver.** Nothing in this ESI Order shall be deemed a waiver of any objection to search or production of data, including but not limited to (a) burden, relevance, proportionality, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues or (b) any privilege or immunity from production.

19. **Modification.** Any practice or procedure set forth herein may be varied by agreement of the parties confirmed in writing or by Court order. For purposes of this provision, an agreed-upon variance may be evidenced by an e-mail confirmation from the party from whom allowance for such variance has been sought.

DATED: January 8, 2021.  */s/ Leda Dunn Wettre*
Honorable Leda Dunn Wettre
United States Magistrate Judge

So stipulated and agreed by the Parties:

| /s/ | /s/ |
|---|---|
| Edward G. Sponzilli | Matthew M. Oliver, Esq. |
| NORRIS MCLAUGHLIN, P.A. | One Lowenstein Drive |
| 400 Crossing Boulevard, 8th Floor | Roseland, New Jersey 07068 |
| Bridgewater, NJ 08807 | Telephone: (973) 597-2500 |
| Phone: (908) 722-0700 | moliver@lowenstein.com |
| Fax: (908) 722-0755 | |
| Email: egsponzilli@norris-law.com | MILBANK LLP |
| | Daniel M. Perry |
| /s/ | *Pro Hac Vice* |
| Randall E. Kahnke (MN Atty. No. 202745) | Kim B. Goldberg |
| *Pro Hac Vice* | *Pro Hac Vice* |
| Tyler Young (MN Atty. No. 395017) | 55 Hudson Yards |
| *Pro Hac Vice* | New York, New York 10001 |
| Lauren W. Linderman (MN Atty. No. 0398446) | Telephone: (212) 530-5000 |
| | dperry@milbank.com |
| *Pro Hac Vice* | kgoldberg@milbank.com |
| Anna E. Sallstrom (MN Atty. No. 400489) | |
| *Pro Hac Vice* | David I. Gindler |
| Faegre Drinker Biddle & Reath LLP | *Pro Hac Vice* |
| 2200 Wells Fargo Center | Y. John Lu |
| 90 South Seventh Street | *Pro Hac Vice* |

| | |
|---|---|
| Minneapolis, MN 55402-3901<br>Phone: (612) 766-7000<br>Fax: (612) 766-1600<br>Email: randall.kahnke@faegredrinker.com<br>tyler.young@faegredrinker.com<br>lauren.linderman@faegredrinker.com<br>anna.sallstrom@faegredrinker.com<br><br>Harmony Mappes (IN Atty. No. 27237-49)<br>*Pro Hac Vice*<br>Faegre Drinker Biddle & Reath LLP<br>300 North Meridian Street, Suite 2500<br>Indianapolis, IN 46204<br>Phone: (317) 237-0300<br>Fax: (317) 237-1000<br>Email:harmony.mappes@faegredrinker.com<br><br>*Attorneys for Plaintiff CommScope, Inc.* | 2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067<br>Telephone: (424) 386-4000<br>dgindler@milbank.com<br>jlu@milbank.com<br><br>*Attorneys for Defendants Rosenberger Technology (Kunshan) Co. Ltd, Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG, and Northwest Instrument, Inc* |
| /s/ _____<br> Jonathan W. Wolfe, Esq<br>Jane J. Felton, Esq.<br>Patrick T. Collins, Esq.<br>SKOLOFF & WOLFE, P.C.<br>293 Eisenhower Parkway, Ste. 390<br>Livingston, New Jersey 07039<br>(973) 992-0900<br>jwolfe@skoloffwolfe.com<br>jfelton@skoloffwolfe.com<br>pcollins@skoloffwolfe.com<br><br>*Attorneys for Defendants Janet Javier and Robert Cameron* | /s/ _____<br>Mark S. Pincus<br>PINCUS LAW LLC<br>90 Broad Street, 23rd Floor<br>New York, New York 10004<br>(212) 962-2900<br>mark@pincus-law.com<br><br>*Attorney for Defendant CellMax Technologies AB* |