Re

400 Crossing Boulevard
8th Floor
P.O. Box 5933
Bridgewater, NJ 08807
T: 908-722-0700
F: 908-722-0755

July 29, 2021

**VIA ECF – UNDER SEAL**

The Honorable Leda Dunn Wettre, U.S.M.J
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

> **Re:** **CommScope, Inc. v. Rosenberger Technology (Kunshan) Co. Ltd.,** *et al.*
> **Civil Action No. 2:19-cv-15962-JXN-LDW**

Dear Judge Wettre:

This firm, along with Faegre Drinker Biddle & Reath LLP, represents Plaintiff CommScope, Inc. ("CommScope") in the above-captioned matter. We write to request that the Court compel the Rosenberger Defendants[1] to provide additional discovery relevant to CommScope's hardware trade secret claims.[2] CommScope respectfully requests the opportunity to present oral argument on this request.

---

[1] As used in this letter, "Rosenberger Defendants" means and includes Rosenberger Technology (Kunshan) Co. Ltd., Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG, and Northwest Instrument, Inc.

[2] The Court gave CommScope permission to file this letter motion. (June 21, 2021 Hr'g Tr. 23:4-24:5.)



**Norris McLaughlin, P.A.**

July 29, 2021
Page 2

## I.    INTRODUCTION

CommScope has compelling evidence that Rosenberger misappropriated CommScope's trade secret hardware designs for base station antennas ("BSAs"). This evidence is more than enough to unlock the door to discovery on Rosenberger's relevant BSA hardware designs, but Rosenberger has opened the door just a crack.

As the Court knows, CommScope obtained several Rosenberger BSA models outside this litigation. Those Rosenberger BSAs contained components that were suspiciously similar to CommScope's designs. ██████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

Rosenberger's approach is improper for several reasons. First, the Third Circuit recently rejected the argument that trade secret misappropriation is limited to "replicas," and reaffirmed that misappropriation encompasses anything substantially derived from another's trade secret. *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 907-08 (3d Cir. 2021). Second, Rosenberger's approach is an invitation to mischief: It would allow Rosenberger to make a microscopic (and perhaps inconsequential) change to a stolen component, slap a new part number on it, and thereby exclude that component, and the BSAs that contain it, from discovery—█████████████████████

Norris McLaughlin, P.A.

July 29, 2021
Page 3

████████████████████████████ Third, Rosenberger's approach puts CommScope in a classic "Catch-22": CommScope cannot prove a BSA or its components contain misappropriated hardware unless it first obtains basic discovery on that BSA, but Rosenberger will not provide that discovery until CommScope first provides such proof.

CommScope has taken to heart the Court's guidance to focus discovery. CommScope is *not* seeking discovery of all of Rosenberger's designs for BSAs or BSA components. Instead, CommScope is focusing on a targeted subset of BSA components. Specifically, CommScope requests that the Court order Rosenberger to produce its design files for five categories of components—components that represent *a subset* of the suspicious components CommScope identified in the Rosenberger BSAs that it obtained outside this litigation.[3] In other words, each of these types of components is already at issue in the litigation; CommScope simply seeks to ensure that discovery is not artificially limited to ███████████████████████ ███████████████████████████████████████████████.

CommScope will review the design files Rosenberger produces and identify the components that are suspiciously similar to CommScope's components and that should therefore be within the scope of discovery. For the components that do not appear

---

[3] The categories of components are (1) PCB-based low-band cloaked parasitic elements; (2) PCB-based low-band cloaked dipole radiating elements, including stalks and cloaked dipole arms; (3) low-band radiating element base boards; (4) PCB-based high-band dipole radiating elements, including dipole arms, feed stalks with resonance rejection circuits, and directors; and (5) high-band radiating element feed boards, including base boards.

Norris McLaughlin, P.A.

July 29, 2021
Page 4

suspicious, no further discovery will be necessary. CommScope submits that this is a fair and reasonable way to balance CommScope's legitimate need for further information with the Court's concerns about the burdens of discovery.

## II.    BACKGROUND

### A.  The Current Framework for Hardware Discovery Artificially Constrains CommScope's Hardware Claims.

As things stand, CommScope's ability to obtain discovery *in this litigation* is limited by the information CommScope was able to obtain *outside this litigation*.

Before bringing this lawsuit, CommScope was able to legitimately acquire several Rosenberger BSA models, ███████████████████████████████████ ███████████████████████ Importantly, the Rosenberger BSAs CommScope was able to purchase ████████████████████████████████████████████ ██████████████████████████████[4] (Dkt. No. 219-01, Declaration of Cai Lishao ¶ 4 (██████████████████████████████████████).) CommScope examined those BSAs and identified striking similarities between CommScope's BSAs and BSA component designs and the Rosenberger BSAs and BSA components. It is these strikingly similar components that make up the five categories of BSA components for which CommScope now seeks production of Rosenberger design files.[5]

---

[4] Rosenberger does not offer its BSAs for sale to competitors, such as CommScope.

[5] These five categories of BSA components are a *subset* of all BSA components at issue in the case. For example, CommScope is not, at this time, seeking additional production of ████████████████████████████████████████████ █████████████████████████████████████████████████████ ███████████████████████████████████████████

**Norris McLaughlin, P.A.**

July 29, 2021
Page 5



(*See* Declaration of Dr. van der Weide ("Dr. van der Weide Decl.") ¶¶ 55-76.) ███████████████████████████████████████ ███████████████████████████████ (*Id.*) █████████████████ ███████████████████████████ therefore excludes relevant components from discovery—and allows Rosenberger to continue benefiting from CommScope's trade secret designs, including by taking a stolen design, making a minor modification, and assigning a different Rosenberger part number.

### B. CommScope Has Met and Conferred with Rosenberger.

CommScope presented this issue to the Court through the informal discovery dispute process. During the June 21, 2021 conference, the Court gave CommScope permission to file this letter. (June 21, 2021 Hr'g Tr. 23:4-24:5.) Following that conference, CommScope met and conferred with Rosenberger extensively to attempt to resolve this dispute, including through several letters and emails and a lengthy telephone conference, but Rosenberger refused to provide *any* additional hardware discovery, necessitating this letter motion.

Norris McLaughlin, P.A.

July 29, 2021
Page 6

## III.    ARGUMENT

### A.  A Trade Secret Plaintiff is Entitled to Broad Discovery.

"In this Circuit, '[i]t is well recognized that the federal rules allow broad and liberal discovery.'" *IQVIA, Inc. v. Veeva Systems, Inc.*, No. 2:17-CV-00177-CCC-MF, 2018 WL 4380992, at *1 (D.N.J. Sept. 14, 2018) (quoting *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)). Once a party makes a threshold showing of relevance, the "party resisting discovery . . . bears the burden of showing specifically how the request is burdensome" or otherwise improper. *In re Mercedes-Benz Emissions Litig.*, No. 2:16-CV-881-SDW-JAD, 2020 WL 747195, at *5 (D.N.J. Feb. 14, 2020) (citation omitted). This liberal standard applies in the trade secret context just the same as any other context. As this Court has explained, "there is no heightened pleading standard for a misappropriation claim, and [plaintiffs] are entitled to seek discovery to support [their] allegations setting forth a *prima facie* claim." *Avaya Inc. v. Cisco Sys., Inc.*, No. 10-CV-5881-FLW, 2011 WL 4962817, at *2 (D.N.J. Oct. 18, 2011) (citation omitted).

If anything, liberal discovery is of heightened importance in the trade secret context. As the Third Circuit recognized over thirty years ago:

> [m]isappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place. Against this often delicate construct of circumstantial evidence there frequently must be balanced defendants and defendants' witnesses who directly deny everything.

*SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985) (citation omitted). Circumstantial evidence remains essential to trade secret plaintiffs today. Indeed, as the

Norris McLaughlin, P.A.

July 29, 2021
Page 7

Third Circuit acknowledged only a few months ago, when reversing a district court for prematurely dismissing a trade secret suit, "demand[ing]" complete "precision" before trial is "misplaced" because it "ignores the challenges a trade secret plaintiff commonly faces when *only discovery will reveal exactly what the defendants are up to*." *Oakwood Labs.*, 999 F.3d at 907 (emphasis added).

Recognizing these principles, courts permit trade secret plaintiffs to conduct discovery into conduct and documents potentially suggestive of misappropriation. In *Boston Scientific Corp. v. Nevro Corp*., for instance, the court rejected a defendant's attempt to limit a trade secret plaintiff's discovery into just the two documents the complaint specifically alleged the defendant misappropriated. No. 16-1163-CFC-CJB, 2020 WL 5095447, at *7 (D. Del. Aug. 21, 2020). Instead, the court explained, a plaintiff could seek discovery into any portion of defendant's business so long as it could "credibly explain" how the subject matter "relate[d] to the misappropriation that occurred during the relevant time period," and whether the subject matter "concern[ed] the type of misappropriated material that was 'proprietary' to [plaintiff]. . . ." *Id*. The court also acknowledged the same Catch-22 scenario facing CommScope—that "in some trade secret cases, plaintiffs 'may face an inherent difficulty identifying what portions of trade secrets have been misappropriated prior to receipt of discovery from defendants,' such as cases where the defendant 'stole large volumes of documents or secrets from [the p]laintiff without [p]laintiff's knowledge.'" *Id*. (quoting *Vesta Corp. v. Amdocs Mgmt. Ltd*., 147 F. Supp. 3d 1147, 1154 (D. Ore. 2015)).

Norris McLaughlin, P.A.

July 29, 2021
Page 8

**B.**

To be clear, this is not discovery in search of a harm. ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ .

CommScope retained Dr. Daniel van der Weide to examine, among other things, CommScope's and Rosenberger's BSA hardware designs. Based on his analysis thus far, Dr. van der Weide has identified "substantial design similarities" between CommScope components and the corresponding Rosenberger components, as explained in greater detail in Dr. van der Weide's declaration. (Dr. van der Weide Decl. ¶¶ 6-8.)

For example, in comparing CommScope's and Rosenberger's low band dipole arms, Dr. van der Weide identified uncanny similarities in design aspects like ████████

███████████████████████████████████████████████████

███████ (*Id.* ¶¶ 17-38.) Below is Figure 2 from Dr. van der Weide's declaration, showing what Dr. van der Weide determined to be "exact copying" of CommScope's plated through hole design. (*Id.* at Fig. 2.)

**Norris McLaughlin, P.A.**

July 29, 2021
Page 9



Similarly, in comparing CommScope's and Rosenberger's low band base boards, Dr.

van der Weide identified uncanny similarities in design aspects like ███████████

██████████████████████████ (*Id.* ¶¶ 39-54.) Ultimately, Dr. van der Weide

concluded that the similarities were much more likely the result of Rosenberger's

copying of CommScope's designs rather than coincidence. (*Id.* ¶¶ 6-7, 38, 54.)  Dr. van

der Weide determined that █████████████████████████████████████

███████████████ (*Id.*¶¶ 8, 37, 52.)

████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████.

Norris McLaughlin, P.A.

July 29, 2021
Page 10

### C. Discovery Should Not be Limited by Rosenberger's Part Numbering.

It is improper for Rosenberger to limit discovery to ███████████

████████████████████████████████████████████████████████

███████████████████████████████.[6] In fact, the Third Circuit recently rejected the

argument that trade secret claims require "replication." *Oakwood Labs.*, 999 F.3d at

907-08. Rather, trade secret misappropriation encompasses anything that is

substantially derived from a misappropriated trade secret. *See* Restatement (Third) of

Unfair Competition § 40 (2020) ("[A]n actor is liable for using the trade secret with

independently created improvements or modifications if the result is substantially

derived from the trade secret."); *Givaudan Fragrances Corp. v. Krivda*, 639 F. App'x

840, 848 (3rd Cir. 2016) (upholding instruction to jury that "liability for misappropriation

exists where a party uses information that was 'substantially derived' from a trade

secret"); *Gen. Elec. Co. v. Sung*, 843 F. Supp. 776, 778 (D. Mass. 1994) (explaining

---

[6] Even as to the suspicious components CommScope identified in the Rosenberger
BSAs it obtained outside the litigation, the discovery Rosenberger has provided is
deficient. For example, ████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████ CommScope is conferring with Rosenberger on this issue,
which Rosenberger claims to be investigating. Even if Rosenberger ultimately agrees to
remedy this issue as to ███████████████████████████
████████████████████████████████████████████
██████████████████████████ it heightens CommScope's concerns about
Rosenberger unilaterally determining which BSAs are within discovery and which BSAs
are out.

**Norris McLaughlin, P.A.**

July 29, 2021
Page 11

that trade secret protection extends "to materials 'substantially derived' from that trade secret" (citation omitted)).

Patent law is instructive on this point. In patent cases courts regularly allow discovery into products "'*reasonably similar'* to those that have been specifically accused of infringement." *Invensas Corp. v. Renesas Elec. Corp*., 287 F.R.D. 273, 279-82 (D. Del. 2012) (emphasis added) (citation omitted) (collecting cases; extended discussion).[7] Limiting discovery to *only* the products specifically accused of infringement in the complaint, courts reason, would run afoul of "'the broad and liberal policy of discovery' set out by the Federal Rules of Civil Procedure." *Id*. at 283 (citation omitted).

To receive such "similar product" discovery, then, all a plaintiff must do is, first, "articulate, in a focused, particularized manner" how the products are similar, and how discovery into those products will advance the plaintiff's infringement case. *Id*. at 279. Then, the plaintiff must explain how "vital information about the [similar] products rests largely or solely with the party withholding discovery," and could not be "easily obtained"

---

[7] *See also Elm 3DS Innovations, LLC v. Samsung Elec. Co., Ltd*., No.: 14-CV-1430-LPS-CJB, 2015 WL 13902870, at *1 (D. Del. June 30, 2015) (finding unaccused computer chips "reasonably similar" to "previously accused" chips because "many are from the same product family . . ., were manufactured during the same timeframe, and share many of the same product identifiers used in Defendants' part decoders," and permitting discovery into them); *EPOS Tech. v. Pegasus Tech*., 842 F. Supp. 2d 31, 33 (D.D.C. 2012) (similar, and emphasizing that "[c]ase law from various circuits clearly states that there is no bright-line rule limiting discovery to only those products specifically accused in a party's infringement contentions"); *Aristocrat Tech. v. Int'l Game Tech*., No.: C 06-03717-RMW-RS, 2009 WL 3573327, at *5 (N.D. Cal. Oct. 30, 2009) (similar, and explaining that "[a]lthough compliance with the request [to inspect reasonably similar products] may impose some hardship on [defendant], the generally liberal construction afforded to Rule 26 necessitates this result").

**Norris McLaughlin, P.A.**

July 29, 2021
Page 12

from public sources. *Id*. at 280. If a plaintiff can do this, discovery into similar products is

generally permitted. *See, e.g.*, *High 5 Games, LLC v. Marks*, No.: 2:13-CV-07161-JMV-

MF, 2019 WL 1499769, *7 (D.N.J. Apr. 5, 2019) (rejecting defendant's attempt to limit

discovery to the specific video-game products identified in the complaint, because the

plaintiff had specifically identified the similar products about which it sought information

and was thus not on a fishing expedition); *Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F.

Supp. 2d 650, 653-77 (E.D. Tex. 2009) (rejecting defendant's attempt to limit discovery

to three specific LCD models listed in its patent infringement contentions, and allowing

"all reasonably similar [LCD drive] products", which numbered in the hundreds.").

Here, CommScope is not engaged in a fishing expedition. ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████ And CommScope is not seeking

discovery regarding *all* Rosenberger BSAs or BSA components. Rather, CommScope

simply seeks the basic discovery necessary to identify Rosenberger components that

are similar to or derived from the components that are already at issue.

An example shows ████████████████████████████████████████

████████████████████████████████████████████ . ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ (*See* Dr. van der

Weide Decl. ¶¶ 57-58).[8] Yet these two components—aside from having different part

___

[8] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

**Norris McLaughlin, P.A.**

July 29, 2021
Page 13

numbers—"have *identical* layouts in almost every respect, including the metal patterns

and stalk mounting slots." (*Id.* ¶ 62(b).) The only discernible difference between the two

parts is "the diameter of the four circle-shaped holes on each of the dipole arms," but

even on that issue "the placement of the holes is, however, highly similar." (*Id.* ¶ 62(c).)



(Part 661912, ROSEN00566039.)        (Part 689540, ROSEN00441683.)

In fact, as shown circled in red above, the Rosenberger drawing for the *excluded*

*part*—number 661912—bears the label "661912 Rev. A" (*i.e.*, Revision A), while the

Rosenberger drawing for the *included* part—part number 689540—bears the label

"661912 Rev. B" (*i.e.*, Revision B). (*Id.* ¶ 62(c) & at Fig. 7.) ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Norris McLaughlin, P.A.**

July 29, 2021
Page 14

████████████████████████████ (*Id.* ¶ 63.) In his declaration, Dr. van der

Weide ███████████████████████ *Id.* ¶¶ 55-76.) Although Rosenberger

happened ███████████████████████████████████████

███████████████████████████████████████████████

███████████ There is no legitimate reason to exclude these substantially similar

components from the scope of hardware discovery.

### D. Rosenberger Should Produce All Design Files for Five Specific Categories of Components That Are Already at Issue.

As explained above, trade secret law is clear that CommScope is entitled to

discovery not only on the suspicious components it specifically identified (as defined by

the Rosenberger part number) but on substantially similar components, as well.

CommScope originally asked Rosenberger to simply include the "substantially similar"

components within the scope of discovery. Rosenberger, however, took the position that

it did not understand what that meant, and ███████████████████████

███████████████████████████████████████ (*See* Dr.

van der Weide's Decl. ¶¶ 55-76.)

CommScope therefore requests that, for each of the five categories of

components that are a subset of the components that are ***already at issue*** █████

██████████████████████████ Rosenberger produce all of its

design files. To be clear, CommScope is not asking for Rosenberger to produce all

designs for all of its BSAs or BSA components. █████████████████████

███████████████████████████████████████████████

Norris McLaughlin, P.A.

July 29, 2021
Page 15

██████████ And even for these five categories of components, CommScope is not asking for extensive discovery. At this point, CommScope is asking for the **component design files only**. If CommScope determines that a component appears to misappropriate CommScope's trade secrets, the parties can meet and confer over the inclusion of these additional components (and BSAs containing those components) within the scope of discovery. And for any components that do not appear suspicious, no further discovery will be necessary.

### E.  The Discovery Confidentiality Order Provides Sufficient Protection.

CommScope recognizes that the Court has concerns about giving a competitor access to sensitive documents in discovery. However, here, when a party marks a document "attorneys' eyes only"—████████████████████████████ ████████████—it can be reviewed *only* by the opposing party's outside counsel and experts. (Dkt. No. 22 ¶ 9.) Not even in-house counsel can review material designed "attorneys' eyes only" by another party. (*Id.*) Thus, Rosenberger can continue to designate design files "attorneys' eyes only," and *no one at CommScope will be able to see them*. Indeed, CommScope produced thousands of its own trade secret BSA design files, relying on the protections of the Discovery Confidentiality Order. Given the strength of the protective order that is in place in this case, it is appropriate to require Rosenberger to produce its design files, even if those design files are confidential, sensitive information. *See generally* Wright & Miller, 8A Federal Practice & Procedure § 2043 (3d ed. 2021) ("It is well settled that there is no absolute privilege for trade

**Norris McLaughlin, P.A.**

July 29, 2021
Page 16

secrets and similar confidential information. . . . In most cases the key issue is not whether the information will be disclosed but under what conditions[.]").

## IV.    CONCLUSION

CommScope respectfully requests that the Court order Rosenberger to produce design files for five specific categories of components: (1) PCB-based low-band cloaked parasitic elements; (2) PCB-based low-band cloaked dipole radiating elements, including stalks and cloaked dipole arms; (3) low-band radiating element base boards; (4) PCB-based high-band dipole radiating elements, including dipole arms, feed stalks with resonance rejection circuits, and directors; and (5) high-band radiating element feed boards, including base boards. CommScope also respectfully requests the opportunity to present oral argument.

Respectfully submitted,

**NORRIS McLAUGHLIN, P.A.**

/s/ *Edward G. Sponzilli*
Edward G. Sponzilli