# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CommScope, Inc., CommScope Inc. of North Carolina, and CommScope Technologies, LLC, | ) ) ) | Civil Action No. 19-cv-15962-JXN-LDW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **BRIEF IN SUPPORT OF JOINT** |
| v. | ) | **MOTION OF ALL PARTIES** |
| | ) | **FOR RECONSIDERATION OF** |
| Rosenberger Technology (Kunshan) | ) | **THE DENIAL OF THE** |
| Co. Ltd., Rosenberger Asia Pacific | ) | **REQUESTED EXTENSION** |
| Electronic Co., Ltd., Rosenberger | ) | **BASED ON NEW** |
| Technology LLC, Rosenberger USA | ) | **INFORMATION, OR, IN THE** |
| Corp., Rosenberger North America | ) | **ALTERNATIVE, TO STAY THE** |
| Pennsauken, Inc., Rosenberger Site | ) | **LITIGATION** |
| Solutions, LLC, Rosenberger | ) | |
| Hochfrequenztechnik GmbH & Co. | ) | |
| KG, Northwest Instrument, Inc., | ) | |
| CellMax Technologies AB, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION .......................................................................................1

BACKGROUND..........................................................................................3

    A.    The parties' China-based witnesses have important information and are subject to intense COVID restrictions................................3

    B.    U.S. depositions cannot take place in Mainland China....................4

    C.    China has instituted strict lockdowns preventing travel...................5

    D.    China-based witnesses face onerous quarantine requirements ..........7

    E.    China's COVID policies prevent making the required advance plans ..........................................................................................9

    F.    The parties are working diligently to make progress despite headwinds.................................................................................10

ARGUMENT..............................................................................................10

I.    The Parties Respectfully Request the Court to Reconsider its Order..........10

II.    In the Alternative, the Court Should Stay the Case for Mediation............13

CONCLUSION...........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Andreyko v. Sunrise Sr. Living, Inc.*,
993 F. Supp. 2d 475 (D.N.J. 2014) ........................................................... 10

*Bechtel Corp. v. Local 215 Laborers' Int'l Union of N. Am.*,
544 F.2d 1207 (3d Cir. 1976).................................................................... 13

*Burress v. Freedom Mortgage Corp.*,
2022 WL 586606 (D.N.J. Jan. 31, 2022).................................................... 14

*Junjiang Ji v. Jling Inc.*,
2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019) ..............................................5

*Landis v. North American Co.*,
200 U.S. 248 (1936) .............................................................................13, 14

*Max's Seafood Cafe v. Quinteros*,
176 F.3d 669 (3d Cir. 1999)....................................................................... 10

*Nicholas v. Trustees of Princeton Univ.*,
2017 WL 6514662 (D.N.J. Dec. 20, 2017)................................................. 14

*Schwartz v. Nugent*,
2018 WL 3069220 (D.N.J. June 21, 2018).................................................. 14

*Terry v. Town of Morristown*,
2008 WL 11510335 (D.N.J. 2008).............................................................. 11

*Walsh v. Defenders, Inc.*,
2018 WL 555690 (D.N.J. 2018) ................................................................. 10

OTHER STATUTES

Article 284 of the Civil Procedure Law of the People's Republic of China ...........4

RULES

Local Civil Rule 7.1(i)................................................................................ 10

Local Civil Rule 301.1..................................................................3, 13, 14, 15

## OTHER AUTHORITIES

Alexandra Stevenson, *A Chinese city tells overseas visitors to quarantine for 28 days, then do another 28*, N.Y. Times (Nov. 10, 2021), https://www.nytimes.com/2021/11/10/world/asia/covid-china-shenyang-quarantine.html ......................................................................................7

Alexandra Stevenson, *China's economy pays a price as lockdowns restrict nearly a third of its population*, N.Y. Times (Apr. 14, 2022), https://www.nytimes.com/2022/04/14/business/china-lockdowns-economy.html ..............................................................................6

Brenda Go & Engen Tham, *Shanghai separates COVID-positive children from parents in virus fight*, Reuters (Apr. 2, 2022), https://www.reuters.com/world/china/shanghai-separates-covid-positive-children-parents-virus-fight-2022-04-02/; ....................................................8

Britt Clennett & Karson Yiu, *Shanghai lockdown tests resilience of 'Zero-COVID' strategy, as economic and social tolls grow*, ABC News (Apr. 13, 2022), https://abcnews.go.com/International/shanghai-lockdown-tests-resilience-covid-strategy-economic-social/story?id=84052348 .............. 11

John Liu & Paul Mozur, *'Totally Inhumane': Child Separations Feed Anger in a Locked-Down Shanghai*, N.Y. Times (Apr. 2, 2022), https://www.nytimes.com/2022/04/02/ business/shanghai-covid-child-separation.html ............................................................8

U.S. Dep't of State, *China Judicial Assistance Country Information*, https://travel.state.gov/content/ travel/en/legal/Judicial-Assistance-Country-Information/China.html (last visited Apr. 14, 2022) ........................4

U.S. Dep't of State, *China Travel Advisory*, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/china-travel-advisory.html (last visited Apr. 14, 2022) ..................................5

Vivian Wang & Isabelle Niu, *Shanghai Seethes in Covid Lockdown, Posing Test to China's Leadership*, N.Y. Times (Apr. 7, 2022), https://www.nytimes.com/2022/04/07/world/asia/shanghai-covid-china.html ..............................................................................9

## INTRODUCTION

The parties jointly move the Court to reconsider the denial of their stipulation to extend the scheduling order 3.5 months. (Dkt. 525.) Since the Court's order, the COVID restrictions in Mainland China have become even more severe. Most acutely, the relevant Chinese authorities will not confirm that they will issue the travel documents that would be necessary for witnesses to travel outside of Mainland China for depositions.[1] What's more, all the China-based witnesses would be traveling from near Shanghai and are affected by the city's recently extended lockdown. These are new developments that were not before the Court when the joint stipulation was presented to the Court and rejected.

Requiring employees to leave Mainland China is not a practical solution given the recent lockdowns and the required quarantines upon return. Travelers returning to Mainland China face lengthy quarantine periods of up to 56 days upon return, and those who are not Chinese citizens would be denied re-entry into the country. These quarantine periods have significant, real life consequences for the witnesses. For example, the quarantine policies may mean that one CommScope witness is not allowed to be with his minor son while he recovers from recent heart surgery. Similarly, many Rosenberger witnesses have family responsibilities that

---

[1] Chinese law prohibits these depositions (whether remote or in person) from occurring in the mainland.

make their absence for multiple weeks not feasible, including recent parents who have no alternative extended care giver for their infant children.

This application is not one that the parties make lightly. The parties have been working diligently to plan for depositions and were prepared to meet the current deadlines until the recent developments in China. But depositions are not permitted in Mainland China and the recently enacted measures make international travel unfeasible. Even for those witnesses willing to travel outside the mainland and quarantine for weeks, travel would require governmental approval, which is currently not confirmed.

Moreover, the scheduling of international depositions (outside Mainland China) is a complicated undertaking that would be particularly difficult given the uncertainty surrounding China's COVID policies. The parties intend to take 17 depositions of witnesses from China and anticipate over 40 days of deposition from such witnesses. The combination of required international travel for the witnesses and the need for translation requires substantial advance planning and coordination. And the COVID restrictions in China make any advance planning hypothetical at best.

The parties therefore jointly move the Court to reconsider its denial of the parties' stipulation to amend the scheduling order and extend the schedule 3.5 months to allow time for the COVID restrictions in China to ease. The parties have

agreed to use this time to re-engage in mediation with Judge Linares. Given developments since the last mediation, the parties are hopeful that progress can be made and this matter resolved. Thus, in the alternative, the parties request that the Court stay the case for 90 days under Local Rule 301.1 or the Court's inherent authority to allow renewed mediation efforts before the parties undertake the substantial expense associated with depositions and expert discovery.

## BACKGROUND

### A.    The parties' China-based witnesses have important information and are subject to intense COVID restrictions

CommScope and Rosenberger collectively have 12 witnesses based in Mainland China whom the parties need to depose. (Declaration of Randall Kahnke ("Kahnke Decl.") ¶ 4.) Five of the Rosenberger witnesses have also been requested for deposition in the Delaware patent case. (*Id.* ¶ 5.) These witnesses have personal knowledge of important information concerning material issues in this case. For example, CommScope contends that the Rosenberger witnesses are the principal source of information about Rosenberger's design and development of BSAs. (*Id.*, Exs. A-B.) Rosenberger contends that CommScope's witnesses are the principal source of information about CommScope's treatment of the trade secrets at issue. (Declaration of Michael S. DeVincenzo ("DeVincenzo Decl.") ¶ 3.) Given the overlapping witnesses, the parties have tried to coordinate deposition scheduling in

the Delaware patent case and this case. (Dkt. 492.) The parties in the Delaware patent case also intend to request an extension or stay. (Kahnke Decl. ¶ 6.)

The CommScope witnesses are based in Suzhou, which is approximately one hour by train outside Shanghai. (Patel Decl. ¶¶ 2-3.) The Suzhou area is not in complete lockdown, but the government there is testing everyone (a city of over 7 million people). (*Id.* ¶ 5.) If one person in a neighborhood in Suzhou tests positive for COVID, then the entire neighborhood goes into lockdown for up to two weeks. (*Id.*) Currently, 180 CommScope Suzhou employees are in lockdown. (*Id.*)

The Rosenberger witnesses are based either in Kunshan, which is located even closer to Shanghai, or in Shanghai itself. (DeVincenzo Decl., Ex. A.) Kunshan recently went into lockdown. (*Id.*; *see id.*, Exs. B-C .) The residents have been ordered to stay at home. (*Id.*, Exs. A-C.)  Rosenberger's facility in Kunshan is also closed due to the shutdown.  (*Id.*, Ex. A.)

Shanghai is the travel hub for the region. As such, all witnesses would likely travel via Shanghai airports for the depositions. (Patel Decl. ¶ 3 & DeVincenzo Ex., A.)

## B.    U.S. depositions cannot take place in Mainland China

Under Chinese law, it is illegal for U.S. lawyers to take depositions in Mainland China for U.S. litigation. (Kahnke Decl., Ex. C, Article 284 of the Civil Procedure Law of the People's Republic of China; *see also* U.S. Dep't of State,

*China Judicial Assistance Country Information*, https://travel.state.gov/content/ travel/en/legal/Judicial-Assistance-Country-Information/China.html (last visited Apr. 14, 2022) ("*China Judicial Assistance Country Information*") ("China does **not** permit attorneys to take depositions in China for use in foreign courts.") (emphasis in the original)).

This prohibition also applies to remote depositions of witnesses located in Mainland China. *Junjiang Ji v. Jling Inc.*, 2019 WL 1441130, at \*5 (E.D.N.Y. Mar. 31, 2019) ("[I]f the people or witness sitting in the border of the People's Republic of China, the foreign authority or foreign individual cannot take deposition from them or take testimony from them because they are in China." (quoting testimony of Jian Hang, a New York attorney "who had also been licensed to practice law in China for approximately 20 years")). "Participation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants." *China Judicial Assistance Country Information*. Thus, to avoid violating Chinese law, the depositions ***must*** occur outside of Mainland China.

## C.    China has instituted strict lockdowns preventing travel

China follows a Zero COVID policy, which "severely impacts travel and access to public services." U.S. Dep't of State, *China Travel Advisory*, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/china-

travel-advisory.html (last visited Apr. 14, 2022) ("*China Travel Advisory*").

As part of the Zero COVID policy, Chinese authorities have issued some form of lockdown for nearly 400 million people, including for people in Kunshan. Alexandra Stevenson, *China's economy pays a price as lockdowns restrict nearly a third of its population*, N.Y. Times (Apr. 14, 2022), https://www.nytimes.com/2022/04/14/business/china-lockdowns-economy.html ("Nearly 400 million people are estimated to be under some form of lockdown in China as officials try to stop a fast-moving Omicron outbreak that is beginning to weigh on the world's second-largest economy."). Under these lockdowns, citizens are not allowed to go outside the community except for severe illness—illness that would preclude international travel. (DeVincenzo Decl., Ex. A.) Even for the witnesses not subject to lockdowns and willing to travel (*see* Patel Decl. ¶ 9), Chinese authorities are not issuing travel documentation—required for travel even to places like Hong Kong—except for "urgent" matters. (Declaration of Jim Miao ("Miao Decl.") ¶¶ 2-7 & DeVincenzo Decl. ¶ 2.) Indeed, the relevant Chinese authorities will not commit to issuing travel documentation for depositions for U.S. litigation. (Miao Decl. ¶ 7.) Without these travel documents, witnesses would be unable to leave Mainland China. (*Id.* ¶ 2.) Further, Chinese officials could provide no information about when they would be able to resume issuing travel documentation. (*Id.* ¶¶ 2-7.)

**D.      China-based witnesses face onerous quarantine requirements**

The quarantine policies in Mainland China are extremely stringent.
Travelers returning to Mainland China face up to 56 days in quarantine. *See*
Alexandra Stevenson, *A Chinese city tells overseas visitors to quarantine for 28
days, then do another 28*, N.Y. Times (Nov. 10, 2021),
https://www.nytimes.com/2021/11/10/world/asia/covid-china-shenyang-
quarantine.html. The U.S. State Department warns, "While in quarantine, health
authorities will test travelers as often as daily for COVID-19 and will not permit
travelers to leave their rooms." *China Travel Advisory*. The Chinese quarantine
policies apply to anyone entering the country, including witnesses returning to
Mainland China following their deposition. *Id.* ("All travelers should prepare to
quarantine at a government-designated location for a minimum of 14 days upon
arrival. … Even after completing quarantine on-arrival, travelers to the PRC and
Hong Kong may face additional quarantines and mandatory testing as well as
movement and access restrictions."). In short, leaving Mainland China for
depositions guarantees that witnesses will face a quarantine upon return.

These quarantine requirements have real consequences for the witnesses—
all of whom would be required to spend what could be many weeks away from
their family in quarantine facilities. (Patel Decl. ¶¶ 6-7). One witness for
CommScope faces the possibility of being quarantined away from his minor son

while the son recovers from heart surgery this summer. (*Id.* ¶ 8.) Similarly, many of the Rosenberger witnesses have family obligations and care requirements that make an extended quarantine untenable. One witness for Rosenberger, a new mother, has an infant child whom she will not leave for an extended period. (DeVincenzo Decl., Ex. A.) Another Rosenberger witness has a 14-month-old for whom she does not have an extended care giver to replace her. (*Id.*)

China's COVID policies do not account for these individual circumstances, even when they impose significant hardships. For example, in some parts of China, including in Shanghai—through which all the witnesses would be traveling—the State Department has warned of parents being separated from children under China's COVID-19 policies. (*China Travel Advisory*; *see also* Patel Decl. ¶¶ 3-4 & Devincenzo Decl., Ex. B (April 11, 2022 CNBC article titled, "U.S. State Department orders all non-emergency government staff in Shanghai to leave as Covid surges.").) U.S. news agencies confirm this risk. *See, e.g.*, Brenda Go & Engen Tham, *Shanghai separates COVID-positive children from parents in virus fight*, Reuters (Apr. 2, 2022), https://www.reuters.com/world/china/shanghai-separates-covid-positive-children-parents-virus-fight-2022-04-02/; John Liu & Paul Mozur, *'Totally Inhumane': Child Separations Feed Anger in a Locked-Down Shanghai*, N.Y. Times (Apr. 2, 2022), https://www.nytimes.com/2022/04/02/business/shanghai-covid-child-separation.html.

**E.     China's COVID policies prevent making the required advance plans**

There is no indication that the restrictions described above are likely to lift or lessen soon. To the contrary, the COVID situation in China appears to be worsening. *See, e.g.*, Vivian Wang & Isabelle Niu, *Shanghai Seethes in Covid Lockdown, Posing Test to China's Leadership*, N.Y. Times (Apr. 7, 2022), https://www.nytimes.com/2022/04/07/world/asia/shanghai-covid-china.html ("[With Shanghai's] worst outbreak since the pandemic began, the authorities have deployed their usual hard-nosed playbook …no matter the cost.").

The parties are exploring options for these depositions, including traveling to Hong Kong or Singapore.[2] But the circumstances in China have impeded the advance planning required. For example, Suzhou residents are being tested for COVID every day and if one person in a neighborhood tests positive, then the entire neighborhood is locked down for two weeks. (Patel Decl. ¶ 5.) In Kunshan, Rosenberger's factory is now closed and its employees cannot leave their home for work, let alone for international travel. (DeVincenzo Decl., Ex. A.) These type of COVID restrictions make the advance planning and coordination for travel for depositions unrealistic—to say nothing of the on-the-ground logistical needs the

---

[2] The parties' joint stipulation mentioned that Hong Kong had announced plans to ease quarantine and travel restrictions to allow entry by foreigners traveling from the United States. (Dkt. 524.)  But the actual policy is narrower than announced and is currently limited to Hong Kong residents traveling from the United States. *See* https://www.coronavirus.gov.hk/eng/inbound-travel.html.

parties will face (such as hiring multiple local interpreters for depositions and preparation) that also require substantial lead time to schedule. (*See* Kahnke Decl. ¶ 18.)

**F.     The parties are working diligently to make progress despite headwinds**

Even with these challenges, the parties are working diligently to plan for depositions. For example, the parties have identified witnesses, exchanged 30(b)(6) deposition notices and objections, and had numerous lengthy discussions about depositions. (Kahnke Decl. ¶ 19; DeVincenzo Decl. ¶ 4.) The parties have entered a "joint-use" agreement to allow use of information between the Delaware patent case and this case, while respecting the protective orders in both cases. (*Id.*) Thus, the parties are well positioned to start depositions once restrictions in China ease. At bottom, given the worsening situation in China and despite the sincere best efforts of both parties we have been unable to devise a practical plan for conducting the required depositions within the discovery period. (*See id.*)

ARGUMENT

**I.     The Parties Respectfully Request the Court to Reconsider its Order**

Local Rule 7.1(i) allows parties to move for reconsideration of the Court's prior orders in light of new developments. *See* L. Civ. R. 7.1(i). "The movant has the burden of demonstrating either: '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent

10

manifest injustice.'" *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (quoting *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)) (alteration in the original). The Court should grant a motion for reconsideration based on the availability of new facts or evidence if the newly available evidence undercuts the grounds for the prior decision. *See, e.g.*, *Walsh v. Defenders, Inc.*, 2018 WL 555690, at *3 (D.N.J. 2018) (granting motion for reconsideration based on newly available evidence), *aff'd* 894 F.3d 583 (3d Cir. 2018); *Terry v. Town of Morristown*, 2008 WL 11510335, at *3 (D.N.J. 2008) (granting motion for reconsideration based on new evidence).

After the Court's order denying the parties' joint stipulation to extend the schedule, the COVID restrictions in Mainland China have significantly worsened. In particular, lockdowns are in place that prevent the parties' China-based witnesses from leaving their homes. (*See* Patel Decl. ¶¶ 4-5 & DeVincenzo Decl., Ex. A.) To the extent witnesses are willing and able to travel for depositions (*see* Patel Decl. ¶ 9), the relevant Chinese authorities will not commit to issuing the required travel documentation for them to travel outside of the mainland. (*See* Miao Decl. ¶¶ 2-7.) Similarly, after the Court's order, the Shanghai area extended its lockdown and increased COVID restrictions—which impact the China-based witnesses' ability to travel. (*See* Patel Decl. ¶¶ 3-4 & DeVincenzo Decl., Exs. A-C.) Indeed, as a result, Rosenberger's Kunshan facilities have been shut down by

11

the government, preventing identified witness from going to their place of work.
(*See* DeVincenzo Decl., Ex. A.) In addition, news reports indicate that despite
China's lockdown efforts, COVID cases in Shanghai are rising and "hit a record
high on Wednesday." Britt Clennett & Karson Yiu, *Shanghai lockdown tests
resilience of 'Zero-COVID' strategy, as economic and social tolls grow*, ABC
News (Apr. 13, 2022), https://abcnews.go.com/International/shanghai-lockdown-
tests-resilience-covid-strategy-economic-social/story?id=84052348.

Despite the uncertainty, CommScope and Rosenberger have remained
committed to meeting the scheduling order's deadlines and have taken the steps
discussed above. Overseas depositions, however, take substantial lead time and
planning that is not practical given the COVID measures in China. It is not realistic
for the parties to undertake the substantial effort and unrecoverable costs of
planning depositions in multiple different locations outside of China in the hopes
the witnesses will eventually be able to travel to one of them.

Even if travel were possible, the toll on the witnesses factors in favor of
extending the schedule. In this case, witnesses face weeks in isolation in hotels or
other quarantine facilities away from their families and the associated burdens
outlined above. (*See supra* at 6-8; Patel Decl. ¶¶ 6-7; DeVincenzo Decl., Ex. A.)
Moreover, with rising COVID cases in the areas where the China-based witnesses
live, there is the real possibility that depositions will be canceled because the

witnesses are forced into lockdown as the result of someone in their neighborhood testing positive for COVID. Extending the schedule a few months would allow time for the Omicron variants in China to recede, the COVID restrictions to ease, and the witnesses to avoid these burdens.

Accordingly, and in light of the recent developments, the parties respectfully request that the Court reconsider the denial of the parties' joint stipulation and amend the scheduling order approximately 3.5 months to allow time for the COVID restrictions in Mainland China to ease.

## II.   In the Alternative, the Court Should Stay the Case for Mediation

The parties have agreed to use the requested extension to re-engage in mediation with Judge Linares. Given developments in the case since the last mediation, the parties are hopeful that progress can be made and this action resolved. Thus, in the alternative, the parties respectfully request that the Court refer the case to mediation and stay the case under the Court's inherent authority or Local Rule 301.1. A district court has "broad power to stay proceedings." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). This power "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). Similarly, Local Rule 301.1(e)(6) allows the Court to stay

"All proceedings (including motion practice and discovery) …. for a period of 90 days from the date a civil action is referred to mediation."

Whether to grant a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* Specifically, courts in this District consider four factors:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage of the non-moving party;
> (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party;
> (3) whether a stay would simplify issues and the trial of the case; and
> (4) the length of the stay.

*Burress v. Freedom Mortgage Corp.*, 2022 WL 586606, at *2 (D.N.J. Jan. 31, 2022) (first three factors); *Nicholas v. Trustees of Princeton Univ.*, 2017 WL 6514662, at *2 (D.N.J. Dec. 20, 2017) (adding fourth factor).

The most critical question is whether there is a "fair possibility that" granting a stay "will work damage to some one else." *Landis*, 299 U.S. at 255. If there is no such possibility, a stay is more likely appropriate. *See, e.g.*, *Schwartz v. Nugent*, 2018 WL 3069220, at *5 (D.N.J. June 21, 2018) (granting stay where "defendants would suffer no clear prejudice from granting a stay," whereas plaintiffs "would potentially suffer serious prejudice from its denial").

Here, because the parties are jointly moving for a stay, all factors weigh in favor of staying the case for 90 days pursuant to the Court's inherent authority or Local Rule 301.1 to allow time for mediation. The parties agree that the stay will

not impact compliance with any of the Court's orders on outstanding document and written discovery. Of course, the parties would continue to prepare for depositions in the event mediation proved unsuccessful.

The parties are optimistic that the renewed mediation will be fruitful and have agreed to schedule a mediation with Judge Linares. The parties have also removed previous impediments to mediation. Specifically, the parties have agreed to allow counsel from the Delaware patent case to appear in this case, and to allow the sharing of information from both cases. These developments make a global resolution more likely. In addition, substantial discovery since the parties' last mediation in July has put the parties in a better position to assess settlement.

Pausing the case now would give the parties time to explore mediation before incurring the substantial costs associated with depositions and expert discovery. Having the mediation and depositions proceed in tandem naturally changes that calculus because much of the discovery expenses would be committed. Thus, the parties request the Court stay the case for 90 days under Local Rule 301.1(e)(6) or the Court's inherent authority.

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court reconsider the denial of the joint stipulation to amend the scheduling order 3.5 months or, in the alternative, stay the case for 90 days.

Dated: April 14, 2022

/s/ *Edward G. Sponzilli*
Edward G. Sponzilli
NORRIS MCLAUGHLIN, P.A.
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
Phone: (908) 722-0700
Fax: (908) 722-0755
Email: egsponzilli@norris-law.com

/s/ *Randall E. Kahnke*
Randall E. Kahnke (MN Atty. No. 202745)
*Pro Hac Vice*
Tyler Young (MN Atty. No. 395017)
*Pro Hac Vice*
Lauren W. Linderman (MN Atty. No. 0398446)
*Pro Hac Vice*
Anna E. Sallstrom (MN Atty. No. 400489)
*Pro Hac Vice*
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
Email: randall.kahnke@faegredrinker.com
        tyler.young@faegredrinker.com
        lauren.linderman@faegredrinker.com
        anna.sallstrom@faegredrinker.com

Harmony Mappes (IN Atty. No. 27237-49)
*Pro Hac Vice*
Faegre Drinker Biddle & Reath LLP
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Phone: (317) 237-0300
Fax: (317) 237-1000
Email: harmony.mappes@faegredrinker.com

*Attorneys for Plaintiffs CommScope, Inc., CommScope Inc. of North Carolina, and CommScope Technologies, LLC*

/s/ *Daniel S. Eichhorn*

Daniel S. Eichhorn
CULLEN AND DYKMAN LLP
433 Hackensack Avenue
Hackensack, New Jersey 07601
(201) 488-1300


/s/ *Michael S. DeVincenzo*

Michael S. DeVincenzo
*Pro Hac Vice*
KING & WOOD MALLESONS
500 Fifth Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
Michael.devincenzo@us.kwm.com

*Attorneys for Defendants Rosenberger Technology (Kunshan) Co. Ltd., Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG, Northwest Instrument, Inc., and CellMax Technologies AB*

17