# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CommScope, Inc., CommScope Inc. of North Carolina, and CommScope Technologies, LLC, | ) Civil Action No. 19-cv-15962-JXN-<br>) LDW<br>) |
| Plaintiffs, | )<br>) **FILED UNDER SEAL**<br>) |
| v. | ) **JOINT SUBMISSION**<br>) **REGARDING PLAINTIFFS'**<br>) **DISCOVERY ISSUE** |
| Rosenberger Technology (Kunshan) Co. Ltd., Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG, Northwest Instrument, Inc., CellMax Technologies AB,[1] | )<br>) **CONTAINS INFORMATION**<br>) **DESIGNATED ATTORNEYS'**<br>) **EYES ONLY UNDER THE**<br>) **DISCOVERY**<br>) **CONFIDENTIALITY ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

---

[1] Rosenberger Technology (Kunshan) Co., Ltd. is also known as PROSE Technologies (Suzhou) Co., Ltd., and Rosenberger Technology, LLC is also known as PROSE Technologies, LLC.

**CommScope's Issue:** CommScope requests that (1) Defendants produce CommScope design files—*i.e.*, electronic blueprints, some of the key trade secrets at issue in this case—that two former-CommScope and current-Rosenberger employees (Charles Yang and Sheng Linfeng) took from CommScope to Rosenberger and (2) Defendants make Mr. Linfeng available for deposition and, based on the additional design files Defendants produce, provide additional deposition time with Mr. Yang and/or Defendants' Rule 30(b)(6) witness. Defendants have refused. This is a narrow but key issue.

## A.      CommScope's Position

Defendants should be ordered to produce the CommScope base station antenna ("BSA") design files—*i.e.*, electronic blueprints—that two Rosenberger employees took from CommScope. In recent depositions taken in Hong Kong, CommScope learned *for the first time* that (1) ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████

CommScope is therefore seeking production of its design files that these individuals have and accessed while at Rosenberger. Defendants should also be ordered to make Mr. Linfeng, who was not previously deposed, available for

deposition and, based on the additional design files Defendants produce, provide additional deposition time with him and/or Defendants' Rule 30(b)(6) witness.

As the Court knows, these design files are among the key trade secrets that CommScope contends Defendants misappropriated. CommScope thus seeks to compel production of these recently revealed CommScope design files.[2] Specifically, for Mr. Yang, CommScope requests that Defendants produce all CommScope design files on his personal computer or in his personal email account. For Mr. Linfeng, CommScope requests that Defendants produce all CommScope design files that he has on a personal computer or in his personal email account *and* that are on his Rosenberger-issued devices and accounts. The difference between these two individuals is that Defendants treated Mr. Yang as a custodian. Mr. Linfeng, on the other hand, was not designated as a custodian because ██████████████████████████████████████

██████████████████████████████

---

[2] Defendants do not dispute that these documents are responsive to a number of document requests, including No. 16 (documents from a former CommScope employee relating to their work at CommScope or reflecting non-public CommScope information), No. 17 (documents that constitute any non-public CommScope information), No. 18 (documents that originated at or were created by CommScope) and No. 19 (documents that originated at or reference CommScope relating to the design of Base Station Antennas or their components). (*See* Ex. 1.)

1.    **The CommScope Design Files Are Critically Relevant, Bear on Several Important Issues, and Should Be Produced.**

a.    **The design files at issue should have been previously produced.**

Discovery has already confirmed that Defendants possessed and used numerous CommScope design files. These files have been a critical component of this case from the start, and CommScope has taken a multifaceted approach to obtaining those files from Defendants. As part of the December 30, 2020 Joint Discovery Plan, CommScope identified as one of the issues for discovery Defendants' use of CommScope trade-secret design files and suggested that Defendants produce the design files early because they " ████████████████ ████████████████████████████████████████████ (Ex. 2, Rule 26(f) Report at 15 and 25.) Defendants opposed producing design files early. (*Id.* at 26-27.) And the Court fairly elected to allow the parties to proceed in the normal course over any objections to CommScope's discovery requests. (Dkt. 370 at 1.)

Then came the dispute over how Defendants would search for and produce documents, including design files. CommScope sought search terms and custodians. But instead of agreeing to the additional custodians or search terms CommScope proposed, Defendants instead proposed to undertake "targeted collections" for responsive documents. For example, Defendants wrote in the March 3, 2021 Joint Dispute Statement that "**Rosenberger will also conduct targeted collections from other custodians as appropriate (including many of**

3

**those CommScope has included in its additional custodian lists)**." (Ex. 3, March 3, 2021 Joint Dispute Statement at 44 (emphasis added).) CommScope noted at the time that targeted collections by the opposing party require transparency: "[I]f Rosenberger intends to use those targeted collections to justify its refusal to include other search terms and custodians, it must, at minimum, provide CommScope with information about the targeted collections." (*Id.* at 3 n.2.)

At the April 1, 2021 hearing, in denying CommScope's request for additional searches and custodians, the Court relied on Defendants' representations that targeted collections were more efficient. (Dkt. 398, Apr. 1, 2021 Hr'g Tr. 35:18-21  *see also id.* at 61:16-20 (The Court: "

As a result of this process,

. (Dkt. 474, Sept. 21, 2021 Hr'g Tr. 28:7-8; *see also* Dkt. 469-1, Dkt. 469-2, Dkt. 490-6, Dkt. 490-7, Dkt. 490-8, Dkt. 490-14.) And

CommScope has shown that ███████████████████████████████████

████████████████████████████. CommScope submitted expert

reports establishing that certain features of Defendants' design files match

CommScope's design files (which Defendants have not produced) to a degree of

precision that can be explained only by copying. (*See* Dkt. 490-26 at 10

(Defendants' designs matched CommScope's to within eight decimal places of a

millimeter).) ████████████████████████████████████

████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

█████████ (*See, e.g.*, Ex. 4, C. Lishao Tr. 82:24-84:1; Ex. 5, G. Chen Tr.

25:13-28:23, Ex. 6, T. Jiang Tr. 210:7-211:15.)

    The Court has already concluded that CommScope had demonstrated "███████

██████████████████████████ and that the existence of CommScope

---

[3] Rosenberger's Rule 30(b)(6) witness also recently testified that a ████████████

████████████ (Ex. 4, C. Lishao Tr. 339:6-340:7.) In the same March 3, 2021 Joint

Dispute Statement discussed above, ██████████████████████████████

██████████████████████ (*See* Ex. 3 at 39, n. 42.) Despite this

representation, Rosenberger's 30(b)(6) witness recently testified that ███████████

██████████████████████████████

████████ (Ex. 4, C. Lishao Tr. 346:4-6; *see also id.* at 344:12-348:6, 353:2-11.)

design files in Defendants' possession is  (Dkt. 474, Sept. 21,

2021 Hr'g Tr. 21:4, 40:11; *see also* Ex. 7, Feb. 16, 2022 Hr'g Tr. 25:6 (Court

noting the "

### b. Recent depositions reveal additional CommScope design files available to Rosenberger.

Now, at the end of the discovery period, CommScope has learned for the

first time that Defendants failed to follow through with their commitments for

targeted collections and withheld from production CommScope design files they

knew a former CommScope employee brought with him to Rosenberger.

Specifically, Mr. Yang testified:



(Ex. 8, C. Yang Tr. 12:15-13:3.) Mr. Yang also

admitted:                                                    (*Id.* at

14:16-17.)

(*Id.* at 15:15-16:8.)

Similarly, Defendants' Rule 30(b)(6) witness testified that

---

[4] The parties agree that this individual's name is in fact "Sheng Linfeng."

██████████████ (Ex. 4, C. Lishao Tr. 339:25-340:7.) ████████████████

████████████████████████████████████████████████████████████████████████

██████████ (*Id.* at 332:8-334:3.) But Defendants never identified Mr. Linfeng as a

person with discoverable information in their written discovery responses or initial

disclosures, and certainly did not identify him as someone who brought

CommScope design files to Rosenberger.[5] As a result, when narrowing the list of

custodians through negotiations with Rosenberger given Defendants' refusal to

search the files for all former CommScope employees, CommScope did not know

Mr. Linfeng possessed CommScope design files and reasonably prioritized other

custodians who were disclosed to have relevant information. Thus, Defendants

never searched for or produced any of Mr. Linfeng's files (although his files are

included in Defendants' litigation data archive). To reiterate: ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████ Such conduct could warrant discovery sanctions under Rule 37.[6]

---

[5] Defendants argue the ██████████████████████████████████████████████████
████████████████████ he "was not a Radio Frequency engineer at CommScope who
would have relevant files and he has never been a Radio Frequency engineer at
Rosenberger." (*Infra* at 32-33.) This argument makes no sense. ████████████████
████████████████████████████████████████████████████

[6] The Court would also be well within its rights to instead order an adverse
inference be taken at summary judgment and trial that Defendants possessed and

c.      **The newly revealed information is relevant and significant.**

To be clear, understanding which specific CommScope design files

Defendants possessed and used is significant for several reasons. For example,

Defendants assert that their BSA design files were created through independent

development or reverse engineering of certain CommScope BSAs. But ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

(*See, e.g.*, Ex. 8, C. Yang Tr. 217:6-7, 228:1-3, 249:10-250:12; Ex. 9, G. Chen Tr.

178:13-180:15; Ex. 6, T. Jiang Tr. 208:16-209-17, 245:3-246:17, 250:21-251:22.)

███████████████████████████████████████████████

████████████████████████████  For example,  ██████████████████████████

---

used other, unproduced CommScope design files. *See, e.g.*, *Industria de Alimentos
Zenu S.A.S. v. Latinfood U.S. Corp.*, No. 16-6576 (KM)(MAH), 2022 WL
1683747, at *11 (D.N.J. May 26, 2022) (finding Rule 37(c) sanctions were
appropriate where "on multiple occasions Defendants had the obligation and
ability to supplement and correct their disclosures and discovery production, but
failed or refused to do so"); *Trowery v. O'shea*, No. 12-6473 (NLH/AMD), 2015
WL 9587608, at *7 (D.N.J. Dec. 30, 2015) ("Where a party has willfully withheld
highly relevant and highly adverse material from discovery, despite specifically
tailored and repeated requests for such material, sanctions are appropriate."
(quoting *Gallant v. Telebrands Corp.*, 35 F. Supp. 2d 378, 404 (D.N.J. 1998)); Fed.
R. Civ. P. 37(c) (providing as a sanction, among other things, a preclusion order
"designat[ing] facts be taken as established"; "inform[ing] the jury of the party's
failure"; and an award of the moving party's reasonable expenses). CommScope
reserves its rights to seek this or other sanctions in this case, but at this time,
CommScope is seeking only an order requiring Defendants to produce the withheld
design files and allowing additional deposition time.



(Ex. 8, C. Yang Tr. 267:11-16; *see also id.* at 218:2-20, 229:6-10, 230:14-23, 242:19-243:2, 246:2-11, 252:18-253:4.)

(*Id.* at 178:4-179:16, 230:3-13, 261:20-262:16; *see also id.* at 253:23-24

Because of the inability of Defendants' witnesses to testify about the development of Defendants' BSA design files and the fact that they could not rule out having copied CommScope's design files, discovering which specific CommScope design files Defendants had access to is a key means to establish misappropriation and rebut Defendants' defenses. This discovery goes to the heart of this trade-secret dispute, is responsive to CommScope's discovery requests, and is not available to CommScope via other means. It should be produced.

### 2. Defendants' Objections to Production Are Not Well-Taken.

Defendants raise several objections to producing the recently revealed CommScope design files. None is persuasive.

#### a. CommScope's request is timely, narrowly tailored, and not barred by the ESI Order.

CommScope first learned about Mr. Yang's and Mr. Linfeng's possession of

CommScope design files ███████████████████████████████████████

████████████████; Defendants do not contend to have disclosed this information

earlier.[7] Defendants, on the other hand, ████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. Yet

Defendants assert that CommScope should be barred from this discovery

purportedly because it is "untimely," "waived," and "materially expand[s] the

scope of the ESI Order and Defendants' discovery obligations."

        As to timeliness, the parties and the Court *always* anticipated that

depositions might reveal the existence of additional, highly relevant documents,

which would need to be produced or necessitate additional depositions. (*See* Ex.

10, June 21, 2021 Hr'g Tr. 13:19-14:1 (recognizing that additional document

discovery and depositions may be warranted based on information learned during

depositions).) That is precisely what happened here.

        Similarly, Defendants' repeated references to what CommScope purportedly

should have learned through its pre-suit investigation are beside the point. Any

search of emails on CommScope's system would not have revealed what design

files Mr. Yang or Mr. Linfeng brought to Rosenberger. Moreover, as

---

[7] Notably, Defendants have dropped any argument that CommScope's request for production of the design files Mr. Linfeng took from CommScope was waived or untimely.

CommScope's counsel has repeatedly confirmed with Defendants' counsel, searching CommScope's email system was not an available option because Mr. Yang's and Mr. Linfeng's email accounts had already been deleted before this litigation and before CommScope had reason to know of Defendants' misappropriation pursuant to CommScope's routine, ordinary course business processes.[8] Accordingly, Defendants' claim that the information CommScope seeks here should have been known earlier or obtained by other means is simply incorrect.

It also would be unfair for Defendants to evade production of this information based on the ESI Order and the parties' agreed-to search terms. The ESI Order was negotiated and entered in January 2021, at a time when Defendants *alone* knew or should have known that both ███████████████

████████████████████████████████

████████████████████████████

████████ *See, e.g.*, *W. Short Home, LLC v. Graeser*, No. 1:22-CV-499, 2023 WL 2504759, at \*12 (M.D. Pa. Mar. 14, 2023) (pending publication) (citation omitted) (recognizing that a plaintiff may not know which trade secrets were misappropriated without discovery). And, in fact, ██████████████████

---

[8] Mr. Yang and Mr. Linfeng left CommScope in March 2016 and January 2016, respectively; this litigation was filed in August 2019.

█████████████████████████████████████. Defendants were obligated, before discovery closed, to provide that information to CommScope, regardless of whether the information was revealed by negotiated search terms or by direct investigation. *See Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 709 (D.N.J. 2015) (The "obligation on parties and counsel to come forward with relevant documents requested during discovery is 'absolute'."). Having failed to do so, Defendants cannot now avoid production based on the fact that the negotiated search terms did not happen to hit on documents that Defendants otherwise knew about.

Moreover, CommScope's request does not "materially expand" discovery. CommScope is asking for precisely the type of targeted collection that the Court authorized in the past for design files and similar information, and which Defendants expressly agreed, but failed, to do.[9] (*See, e.g.*, Ex. 3, March 3, 2021 Joint Dispute Statement at 44 (stating that Rosenberger would "conduct targeted collections from other custodians as appropriate"); Dkt. 474, Sept. 21, 2021 Hr'g Tr. 40:8-41:13 ██████████████████████████████████████ ██████████████████████████████ And this discovery is consistent with a party's

---

[9] Defendants claim in a footnote to have "conducted targeted searches" for these documents, but that is plainly not the case given Defendants' knowledge of the CommScope design files and their failure to produce them. Notably, Defendants do not claim (nor could they claim) to have conducted targeted collections from Mr. Linfeng's Rosenberger-issued devices and accounts or from Mr. Linfeng's or Mr. Yang's personal devices and accounts.

obligation to produce relevant information even if the information was not discovered through ESI search terms, as well as Defendants' representations that they would perform targeted collections. *See Younes*, 312 F.R.D. at 709 ("[Defendant] had an independent duty to produce relevant and responsive discovery even if plaintiffs did not specifically list [the relevant topic] in their list of ESI search terms.").

> **b.   Information Defendants' employees used for their work is within Defendants' possession, custody, and control.**

Defendants appear to argue that any information on any employee's personal device or email is not within Defendants' possession, custody, or control. They are wrong on both the law and the facts.

Before addressing personal devices, there is no question that Mr. Linfeng's files *on his Rosenberger-issued work computer* and *Rosenberger email account*, which were not previously searched, are within Defendants' control. Defendants do not argue otherwise and are apparently willing to search these sources, but only if *CommScope* bears the cost. But the additional cost of searching for CommScope design files on Mr. Linfeng's work computer and email account, which Defendants contend is approximately ███, is an expense that is of Defendants' own making. Had Defendants searched for and produced these documents before they were placed into archives—as Defendants were obligated to do—Defendants could have avoided this expense altogether.

13

Moreover, cost-shifting is potentially appropriate only when data is *inaccessible* to the responding party, such as when it is stored on backup tapes. *See Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, No. 12-3427 (JLL), 2013 WL 541972, at *3 (D.N.J. Feb. 11, 2013). Mr. Linfeng's archived work files are still accessible to Defendants, which makes cost-shifting inapplicable. *See id.* ("[O]ffline storage/archives are typically identified as 'accessible' electronic data."). And even assuming Mr. Linfeng's work files were inaccessible (they are not), the factors considered for cost-shifting—which Defendants have the burden to prove—fall in CommScope's favor. *See id.* at *3-4 (setting forth responding party's burden and the factors considered). CommScope seeks narrowly tailored, highly relevant discovery that is not available from any other source. The additional cost of searching for CommScope design files on Mr. Linfeng's work computer is not unreasonable in light of the scope and significance of this litigation. *See Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 288 (S.D.N.Y. 2003) (stating that cost of $165,954.67 to restore data "is surely not 'significantly disproportionate' to the projected value of this [multi-million dollar] case"); *see also* Ex. 11, CommScope, Inc.'s 13th Am. Resp. to 4th Set of Interrogs. at 292 (dated July 3, 2023) (claiming damages in excess of $500 million).

At the same time, limiting searching to only the custodian documents on Defendants' servers, as Defendants have done for Mr. Yang, is insufficient.

Deposition testimony has revealed that 

(*See, e.g.*, Ex. 4, C. Lishao Tr. 82:24-84:1.) As a result,

.[11]

Thus, searching the devices and email accounts from which these two custodians stored and accessed CommScope design files will provide further evidence of the CommScope information that was available to Defendants.

Whether information on employees' personal devices and email accounts is within Defendants' control depends on whether Defendants have "the legal right, authority, or ability" to gather those documents. *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991). This test is construed "very broadly." *Id.* Thus, a company's "ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigating corporation's control." *Id.* at 443.

,

---

[10] *See* Ex. 8, C. Yang Tr. 217:6-7, 228:1-3, 249:10-250:12; Ex. 9, G. Chen Tr. 178:13-180:15; Ex. 6, T. Jiang Tr. 208:16-209:17, 245:3-246:17, 250:21-251:22.

[11] *See* Ex. 8, C. Yang Tr. 229:6-10, 230:14-23, 242:19-243:2, 246:2-11, 252:18-253:4, 267:11-16.

████████ *See In re Skanska USA Civ. Se. Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 WL 4953239, at *3 (N.D. Fla. Aug. 5, 2021) ("[A]n employer has 'control' of a current employee and the legal right to obtain business communications from a current employee *regardless* of whether the communication is located on a personal cell phone" (citing *State Farm Mut. Automobile Ins. Co. v. Precious Physical Therapy, Inc.*, No. 19-10835, 2020 WL 7056039, at *5 (E.D. Mich. Dec. 2, 2020)).[12] In addition, during the meet-and-confer process, Defendants' counsel represented that Defendants asked Mr. Yang to preserve his personal computer and emails, and that he agreed to do so, which further undercuts the notion that Defendants lack possession, custody, or control of these documents.

████████████████████████████████████████████

████████████████████████████████

████████ *See In re Skanska USA,* 2021 WL 4953239, at *4 (collecting cases ordering parties to collect relevant information from employee-owned cell phones).

---

[12] In one of the cases cited by Defendants, a subsidiary company was found to have control over documents held by its parent, because it could receive those documents as part of its business. *Camden Iron*, 138 F.R.D. at 443-44. That is analogous to this case. The other cases cited by Defendants are not analogous, holding that a lawyer serving as local counsel does not have the right to obtain documents from lead counsel, *Insignia Sys., Inc. v. Edelstein*, No. 09-4619 (AET), 2009 WL 3521796, at *3 (D.N.J. Oct. 22, 2009), or that a government entity was not shown to have the right to demand copies of x-rays from a medical contractor, *Washington v. Ellis*, No. 3:17-CV-7243-PGS-TJB, 2022 WL 3226630, at *1 (D.N.J. July 20, 2022).

16

Notably, Defendants' Rule 30(b)(6) witness testified that ███████████████

████████████████████████████████████████████

████████████████████████ (*See* Ex. 12, S. Hong Rough Tr. 213:3-13.)

Mr. Yang also testified that █████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ (Ex. 8, C. Yang Dep. Tr. 12:15-13:3, 19:16.) And, critically, as the

engineer identified as the "Designer" on many Rosenberger design files, Mr. Yang

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████ *see also, e.g., id.*

229:6-10, 230:14-23, 242:19-243:2, 246:2-11, 252:18-253:4).) Defendants'

suggestion that there is no record evidence supporting the use of personal devices

and accounts at Rosenberger simply ignores these facts.

Defendants attempt to obfuscate the issue by contending that the employees

should not be "compel[led] . . . to produce their personal information to their

employer." (*Infra* at 24.) But CommScope is not asking that they produce personal

information. Rather, it is seeking a targeted collection of CommScope design files

maintained on personal devices and email accounts.[13] *See In re Skanska USA,* 2021 WL 4953239, at *4 (distinguishing between demand for work-related information and personal information on personal devices).

For these reasons, CommScope was not required to seek these documents through a Rule 45 subpoena (if one even would be effective to obtain documents from these witnesses in China). Again, CommScope is not seeking broad discovery of personal information maintained by Mr. Yang and Mr. Linfeng. Rather, it is seeking a targeted production of CommScope design files it recently learned both individuals provided to Rosenberger and used for work with Rosenberger during their course of employment. This makes those documents within Defendants' control and subject to discovery directly from Defendants.

### c. Information on CommScope's servers does not show what documents employees brought to Rosenberger.

Defendants also argue that CommScope already knew (or should have known) that Mr. Yang and Mr. Linfeng took CommScope design files with them to Rosenberger, because CommScope ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████ But ███████████████████████████████████

---

[13] Whether CommScope employees sent emails to their personal email accounts has no bearing on whether the information at issue here is in Defendants' possession, custody, or control.

████████████████████████████████████████████

██████████ is a far cry from CommScope knowing that specific former

employees took CommScope information *to Rosenberger*. Indeed, these former

CommScope employees had continuing confidentiality obligations and the

obligation to return or destroy any CommScope information when they left their

employment. Accordingly, even assuming ███████████████████████

████████████████████████████████████████

████████████████████████████████████████████,

that does not tell CommScope what information those same employees retained

and brought to Rosenberger in violation of those duties.

      **d.**    **CommScope's request for depositions is appropriate.**

Defendants' only argument against additional deposition time is that

CommScope has scheduled 13 depositions, which Defendants claim makes these

additional depositions excessive. But in fact, the parties agreed to 15 depositions

per side (many fewer than CommScope initially requested), and several of the

anticipated defense witnesses were not deposed because they have become

unavailable. Neither the number of prior depositions nor the length of those

depositions justify refusing to permit CommScope to follow up on information that

it just learned in depositions and on documents that were not available at the time

of those depositions.

\*      \*      \*

For these reasons, the Court should Order Defendants to produce the CommScope design files that Charles Yang and Sheng Linfeng have on their personal computers or emails, as well as any CommScope design files on Mr. Linfeng's Rosenberger-issued computer and email. The Court should also Order Defendants to make Mr. Linfeng available for deposition and, based on the additional design files Defendants produce, provide additional deposition time with Mr. Yang and/or Defendants' Rule 30(b)(6) witness.

## B.   Defendants' Position

In January 2021, the Court entered a Stipulation and Order related to the production of electronically stored information ("ESI Order"). (*See* Dkt. No. 368.) The ESI Order requires the parties to "confer in good faith to prepare a list of agreed custodians and search terms." (*See* Dkt. 368, p. 5.)   The ESI Order requires the parties to review documents "in their respective possession, custody or control." (*Id.* at p. 4.)

Plaintiffs' application ignores the stipulation and agreement and instead seeks to materially expand the scope of the ESI Order and Defendants' discovery obligations by requiring two of Defendants' China-based employees—Charles Yang and Sheng Linfeng—to turn over their personal laptops and personal email accounts.

20

The Court should not permit Plaintiffs to unilaterally alter the agreed discovery obligations and compel Defendants to search these personal devices.

This request is improper because Defendants are not in custody, possession, or control of these records, and compelling production would infringe on the privacy rights of these employees.  In addition, this request would be unduly burdensome at this stage of the litigation, in particular because Plaintiffs could have obtained this information *years ago* by searching their own servers.

As for Mr. Linfeng, Plaintiffs alternatively request that Defendants search his work laptop for CommScope-related design files.  Defendants have agreed to complete this search if Plaintiffs will pay the costs necessary for Defendants data collection vendor to restore the records.  Mr. Linfeng's work data is currently archived and will cost ███████ to restore.  It would be unduly burdensome to require Defendants to bear this excessive expense.  Plaintiffs have refused this offer.  Plaintiffs also request that they be given additional deposition time with three witnesses.  There is no need for this.  By the time depositions have concluded later this month, Plaintiffs will have deposed 13 witnesses (including two separate 30(b)(6) depositions) and taken 22 days of deposition testimony (with most witnesses having been deposed for 13 hours each on the record).

**1.  Plaintiffs Have Not Established that Defendants Have Possession, Custody or Control of Employee Personal Devices.**

Plaintiffs ask that the Court compel production of the *personal* laptop and *personal* email account of employees Charles Yang and Sheng Linfeng.[14]  There is no basis for this demand.

Under the Federal Rules of Civil Procedure, a party may seek discovery of a document in the responding party's "possession, custody, or control."  *See* Fed. R. Civ. P. 34(b)(1); *see also Washington v. Ellis*, No. 3:17-CV-7243-PGS-TJB, 2022 WL 3226630, at *1 (D.N.J. July 20, 2022), *appeal withdrawn*, No. 22-2473, 2022 WL 4373436 (3d Cir. Sept. 19, 2022) (denying plaintiffs request for documentation that was "not in [Defendants'] possession and . . . which Defendants do not have a right to obtain from a third party on demand"); *Camden Iron & Metal, Inc. v. Marubeni America Corp.,* 138 F.R.D. 438, 331 (D.N.J. 1991).[15]  The party seeking the records "bears the burden of establishing that [r]espondents have control over

---

[14] For Mr. Linfeng, CommScope requests *either* "CommScope design files that he has on a personal computer or in his personal email account *or* that are on his Rosenberger-issued accounts."  *See supra* p. 2 (emphasis in original).  As mentioned, Defendants have offered to search his work data, which was collected and is currently archived, but submit that Plaintiffs should bear the cost to restore this information.

[15] Contrary to Plaintiffs' contention, the facts of *Camden Iron* are not at all "analogous" to this case.  *See supra* p. 16, n. 11.   *Camden Iron* dealt with two corporate entities and whether a wholly-owned subsidiary could possess its parent company's records.  This is not comparable to the present situation where Plaintiffs argue a company should be able to demand access to an employee's personal laptop and personal email account.  Even more significantly, Plaintiffs' argument completely ignores the privacy implications presented by Plaintiffs' demands.

the documents sought." *See Insignia Sys., Inc. v. Edelstein*, No. CIV.A. 09-4619 (AET), 2009 WL 3521796, at *4 (D.N.J. Oct. 22, 2009).

Plaintiffs' statement fails to demonstrate that Defendants are in custody, possession, or control of their employees personal laptops and email accounts. *See In re Pork Antitrust Litig.*, No. 18-cv-2022, 2022 WL 972401 (D. Minn. Mar. 31, 2022) (concluding a corporate defendant could not be compelled to produce data from the personal devices of its non-party employees). Although Plaintiffs claim that Mr. Yang and Mr. Linfeng used their personal devices within the scope of their employment at Rosenberger, they do not cite any evidence on the record to support their statement.[16] In addition, requesting that Mr. Yang preserve his laptop and email does not give Plaintiffs' the right to access employee personal devices *on demand*. In sum, Plaintiffs do not set forth any basis to demonstrate Defendants are in custody, possession, and control of its employees personal devices.

If Plaintiffs wanted to obtain the personal device of a non-party, they should have followed third-party procedure and issued a proper, narrowly tailored subpoena to Mr. Yang or Mr. Linfeng. *See Korotki v. Cooper Levenson, April, Niedelman &*

---

[16] Plaintiffs' conflate the potential use of personal devices by other employees prior to 2019 with Mr. Yang and Mr. Linfeng currently using their personal devices and emails for work. *See supra* at p.17. No deponent testified that Mr. Yang or Mr. Linfeng has ever used their personal email or devices for work. Further, ███████ ████████████████████████████████████████████████████████. Ex. 12, S. Hong Rough Tr. 213:8-9.

*Wagenheim, P.A.*, 2022 WL 2191519, at *6-7 (D.N.J. June 17, 2022) (quashing a "patently overbroad" subpoena for an individual's personal laptop and cell phone where the subpoena's requests "threaten[ed] to sweep in substantial irrelevant information"). They did not do so. Plaintiffs cannot forgo this procedure and compel these employees to produce their personal information to their employer. Permitting otherwise would set a dangerous precedent by ignoring a non-party employee's privacy interests in his personal devices. These devices should not be subject to search and seizure without a reasonable basis to seek such documents and under formal rules of procedures enacted to regulate such discovery and protect the privacy rights of third parties. *See Korotki*, 2022 WL 2191519, at *5 ("courts have recognized the need to guard against undue intrusiveness and to be cautious in requiring the inspection of electronic devices, in order to protect privacy interests").

Plaintiffs' argument is also contradicted by Plaintiffs' own actions in this case. Ironically, ███████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████ Plaintiffs have produced ████████████████████████



. (*See* Ex. 14, COMM05889377-78.)

(*See* Ex. 15, F. Firouzbakht 2020-1-15 Tr., 245:19-247:12.)

(*See, e.g.,* Ex. 16, COMM01523892-97; Ex. 17, COMM01524059; Ex. 18 COMM01524461

Notably,

. (*Id.*) This demonstrates that Plaintiffs would send and use allegedly sensitive business information outside of CommScope's internal system, even though such information may cause harm if disclosed.

Plaintiffs' request for the personal laptops and personal emails of Messrs. Yang and Linfeng should be denied because these emails are not within Plaintiffs'

possession, custody, and control.  If Plaintiffs wanted to obtain information from personal devices, they should have issued a formal subpoena.  The Court should not excuse Plaintiffs' failure to act in accordance with the Federal Rules.

### 2.  Charles Yang

Plaintiffs' request for information from Mr. Yang's personal devices should be denied because it is untimely.   Plaintiffs could have sought the information several years prior to the close of document discovery. More importantly, it could have been obtained from Plaintiffs' own servers.  Plaintiffs claim they believed in 2018 that former employees had brought files to Rosenberger. At that point,  during the course of their Rule 11 investigation, they should have preserved all records, but

 Indeed, ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████  *id*. at 125

████████████████████████████████████████████████

████████████████████████████████████████████████

Plaintiffs should not be permitted to request this information now, several months after the close of document discovery.

### a.  Plaintiffs' Demand for Documents from Charles Yang's Personal Devices is Untimely and Waived.

Plaintiffs argue that they just learned during Mr. Yang's deposition that he sent emails from his work email address to his personal email address while he was a CommScope employee to facilitate his ability to work from home. That assertion is contradicted by prior deposition testimony and Plaintiffs' own discovery responses.

Deposition testimony from former CommScope employees establishes that ███████████████████████████████████████████████████ ███████████████████████████████████████ Several witnesses testified to this fact—more than three years ago—explaining that they would send themselves documents so they could work remotely. (*See, e.g.*, Ex. 25, C. Lishao 2020-01-03 Tr., 34:20-35:5 (testifying he sent CommScope software to his personal laptop when he was on a business trip and had to use his personal computer); Ex. 20, R. Cameron 2020-01-17 Tr., 170:14-18 (stating he "used [his] personal computer to back up [his] work laptop"); Ex. 21, Q. Hanyu 2020-01- 11 Tr., 36:8-37:3 (explaining he sent AAAP to his personal computer to use when he worked from home).) And ████████████████████████████████████████ ███████████████████████████████ (*See* Ex. 13, M. Zimmerman 2023-11-10 Rough Tr., 229:3-230:7.)

Despite knowing ████████████████████████████████ ████████████████████████████████████████████████████

███████████████████████, Plaintiffs apparently did not search for any such documents prior to or during the course of this litigation.  This was made clear during the meet and confer held with respect to this dispute, in which Plaintiffs' counsel could not confirm whether the requested documents were still in CommScope's possession, custody, and control.  Of course, Plaintiffs belated demand and surprising destruction of the documents at issue does not excuse Plaintiffs from searching their own email servers to determine what information was sent by and through its email servers to outside email addresses.  Indeed, to the extent Mr. Yang uploaded any documents to Defendants' computer servers, that information was collected, searched, and has been produced.

Moreover, as early as January 2020, CommScope's discovery responses ████████████████████████████████████████████████████ Thus, CommScope knew or should have known that Mr. Yang could have sent emails from his CommScope email address to his personal email address and retained that information in his personal emails.  For example, Plaintiffs' discovery responses from January 2020 allege that, ██████████████████████████████ ████████████████████████████████████████████████████ (*See* Ex. 22, CommScope, Inc.'s 3rd Supp. Resp. to Am. 1st Set of Rogs, pp. 41, 50-51 (dated January 2, 2020).)  In addition, Plaintiffs' discovery responses from April 2021  claim  that  ██████████████████████████████████

███████████████████████████████████ (*See* Ex. 23,

CommScope, Inc.'s 2nd Am. Resp. to Fourth Set of Rogs, p. 59.)  Based on this

knowledge, Plaintiffs should have searched ***its own email servers*** for Mr. Yang's

CommScope e-mails prior to the commencement of this action and, at the latest,

during the pendency of document discovery, or notified Defendants or the Court if

they were deleted (and provided clarification as to the deletion).

Plaintiffs have failed to confirm these details, even though they should have

done so as part of their Rule 11 investigation prior to commencing this lawsuit and

in an effort to determine how allegedly trade secret information could have been

taken outside of CommScope. Moreover, Plaintiffs could have issued a Rule 45

subpoena to Mr. Yang—as well as any other former CommScope employee—

seeking documents stored on their personal devices years ago, yet they decidedly

chose not to do so.  They should not be allowed to now demand these materials—

and certainly not do so outside of Rule 45.

These types of emails sent from CommScope employee accounts to non-

CommScope accounts should have been produced in discovery. If Plaintiffs

regularly allowed employees to send CommScope information to non-CommScope

email addresses, this would provide significant support to Defendants' position that

Plaintiffs did not safeguard their alleged trade secrets. Plaintiffs, however, chose not

to produce all of these emails, even for employees that remain at CommScope.  To

date, Plaintiffs have only produced a few examples. (*See, e.g.*, Ex. 24,

COMM00291633-34 ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ Ex. 16 COMM01523892-97; Ex. 17

COMM01524059; Ex. 18 COMM01524461.)   Plaintiffs should likewise not be

permitted to compel production of Mr. Yang's emails that benefit Plaintiffs'

misappropriation claims, while destroying and refusing to produce emails that

support Defendants' defenses. Discovery cannot be used as both a sword and shield.

### b. Defendants Have Complied with their Discovery Obligations.

Plaintiffs argue that their requests will produce documents that Mr. Yang

brought to Rosenberger.  This premise is faulty.  At best, the search of Mr. Yang's

emails may only indicate the identity of documents that Mr. Yang may have sent to

his personal email address and/or kept on his personal computer.   The documents

Mr. Yang may have brought to Rosenberger can be established through a search of

his Rosenberger work emails and files—which has already been done.

Defendants conducted a thorough search of all Mr. Yang's custodial

documents on its servers, including Mr. Yang's work laptop and work email, and

produced all non-privileged information responsive to Plaintiffs' document requests.

In total, over 142 gigabytes of Mr. Yang's employee data was searched, and Mr.

Yang is listed as a custodian on over 7,400 documents.  Accordingly, Defendants have fully complied with their discovery obligations, conducted a thorough search that is proportional to the needs of the case, and produced all responsive information within its custody and control.[17]

### 3.  Sheng Linfeng

Plaintiffs also ask that the Court compel Defendants to search Sheng Linfeng's work and/or personal computer and email for CommScope "design files." As set forth in Defendants' Section 1 above, Plaintiffs' request for Mr. Linfeng's personal computer and email must be denied. These records are outside of Defendants' custody, possession, or control. In addition, there is no evidence on the record that Mr. Linfeng even has CommScope records on these personal devices.

As for Mr. Linfeng's work computer, Defendants have agreed to search these materials, so long as Plaintiffs pay the cost to restore the records.  Given the large dataset that was imaged, the ongoing cost of hosting all data for this case was well over ███████    ████████   In order to significantly reduce these costs, Defendants requested that their data collection vendor take unused information offline and keep it in its archives following the close of document discovery.  Mr. Linfeng's files are within this archived data and will cost over ████████ to restore in a form that can be

---

[17] Plaintiffs' unfounded claims that Defendants have not conducted targeted searches is blatantly false.  Defendants conducted targeted searches as agreed and complied with all discovery orders and obligations in this matter.

searched.   (*See* Ex. 25, Letter from FTI Consulting.) A district court has "discretion

. . . to grant orders protecting [a responding party] from undue burden or expense"

in responding to discovery.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358

(1978) (citing Fed. R. Civ. P. 26(c)). A district court may therefore issue an order

under Rule 26(c) that protects the responding party from undue burden or expense

by "conditioning discovery on the requesting party's payment of the costs of

discovery." *Id*.

Further, the relevant cost shifting factors fall in Defendants' favor. Indeed, in

the Plaintiffs' cited caselaw (*see supra* at 14), *Juster Acquisition Co., LLC,* 2013 WL

541972, the Court discussed a seven-factor test to determine whether discovery costs

should be shifted, "which are weighted more-or-less in the following order: 1) the

extent to which the request is specifically tailored to discover relevant information;

(2) the availability of such information from other sources; (3) the total cost of

production, compared to the amount in controversy; (4) the total cost of production;

(5) the relative ability of each party to control costs and its incentive to do so; (6) the

importance of the issues at stake in the litigation; and 7) the relative benefits to the

parties of obtaining the information." *Id*. at *4 (citation omitted).

Here, all the above factors weigh in favor of Defendants. The request is not

narrowly tailored in the least – Mr. Linfeng was not a Radio Frequency engineer at

CommScope who would have relevant files and he has never been a Radio

Frequency engineer at Rosenberger. Mr. Linfeng would therefore not have relevant documents and would not have been able to use relevant documents at Rosenberger. The information was also available from Plaintiffs own files before they allegedly deleted it themselves, in violation of their Rule 11 obligations. The total cost to re-upload and search the documents is at least over ███████ which is disproportionate to the unlikelihood of any responsive evidence being produced. The request makes it extremely difficult to control costs in a prolonged and already costly litigation in which Defendants have already produced over 900,000 documents. The Plaintiffs at best grossly misrepresent the importance at issue. Lastly, there are no benefits to Plaintiffs in ordering Defendants to search for irrelevant documents that may or may not exist, and only costs for Defendants.

Moreover, Plaintiffs citation to *Juster Acquisition Co., LLC,* 2013 WL 541972, at *3 ignores applicable analysis for a simplified and narrow approach. *Supra* at 14. When defining whether documents were inaccessible, the Court in *Juster Acquisition Co.* looked to *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 320 (S.D.N.Y. 2003)). When looking to the original analysis in *Zubulake*, the Court found accessible information could be used to respond to a request "cheaply and quickly," while inaccessible information would require a "costly and time-consuming process" where it is "appropriate to consider cost shifting." *Zubulake*, 217 F.R.D. at 320. Here, the data is anything but accessible. As stated in the letter

from Defendants document vendor (Ex. 25), it may take weeks to restore the data, and it will cost at minimum ███████ to restore the data if the data is able to be re-archived and searched within two months, otherwise, the costs will be at least ████████████████ afterwards. Further, the above prices do not include attorney time to review the data on an accelerated basis so that Defendants may re-archive the data within the two month window.

Given the significant expense of producing Mr. Linfeng's data and the unlikelihood that any relevant evidence will be produced, Plaintiffs' should be instructed to pay the costs to restore Mr. Linfeng's records, or this request should be denied. If Plaintiffs believe that this search is of paramount importance to their case, then they should not have an issue paying this expense.

### 4. Plaintiffs' Request for Additional Deposition Time is Improper.

Plaintiffs' also request that "Defendants make Mr. Linfeng available for deposition and, based on the additional design files Defendants produce provide additional deposition time with Mr. Yang and/or Defendants' Rule 30(b)(6) witness."

There is no need for additional depositions. Plaintiffs have already had sufficient time to take depositions.  During "Full Merits Discovery, Plaintiffs had 13

hours of translated deposition time with Charles Yang; 40 hours of 30(b)(6) deposition time; and in total have had 22 days of depositions. Plaintiffs have also deposed 10 witnesses of Defendants, including the former individual defendants, during the preliminary injunction stage of this litigation. There is simply no justification for any more depositions. They would only serve to prolong discovery and unreasonably increase Defendants' costs and expenses.[18] At best, this request is premature because the Court has not ruled on Plaintiffs' Motion and, even if granted, no documents have been searched or produced.

Accordingly, Plaintiffs' requests for additional deposition time must be denied.

---

[18] These depositions would be particularly expensive because the witnesses that Plaintiffs identified are located in Hong Kong. In fact, Mr. Yang was deposed in Hong Kong originally. The expenses related to these depositions would be immense and are not proportional to the needs of this case.