

Cullen and Dykman LLP
Continental Plaza
433 Hackensack Avenue
Hackensack, NJ 07601
T: 201.488.1300
F: 201.488.6541

DANIEL S. EICHHORN
PARTNER
deichhorn@cullenllp.com

February 12, 2025

**Via ECF**
The Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

**Re: CommScope, Inc., *et al.* v. Rosenberger Technology (Kunshan) Co. Ltd., *et al.***
**Civil Action No. 2:19-cv-15962-JXN-LDW**

Dear Judge Wettre:

We write on behalf of all parties regarding the Court's November 12, 2024, order to submit concise status letters to the Court no later than one week in advance of the status conference to take place on February 19, 2025. ECF 609.

Plaintiffs' Status Update:

Amphenol Transaction. As the parties previously told the Court, CommScope announced on July 18, 2024, that it entered into a definitive agreement to sell its Outdoor Wireless Networks segment to Amphenol Corporation ("Amphenol"), among other business lines. (ECF No. 606.) That transaction closed on January 31, 2025, and was announced publicly the following Monday, February 3, 2025.[1]

Thus, CommScope has now sold its Outdoor Wireless Networks segment to Amphenol. As the Court knows, base station antennas are the technology at issue in this case. CommScope's base station antenna business is a component of its Outdoor Wireless Networks segment. As the Purchase Agreement we have provided to counsel for Defendants shows, [REDACTED] .

Given this development, CommScope anticipates filing a short letter motion to substitute Amphenol Corporation and OWN LLC as plaintiffs pursuant to Federal Rule of Civil Procedure 25(c), [REDACTED]

[1] *See* CommScope Press Release, "CommScope Completes Divestiture of Outdoor Wireless Networks and Distributed Antenna Systems Businesses to Amphenol Corporation" (Feb. 3, 2025), https://www.commscope.com/press-releases/2025/commscope-completes-divestiture-of-outdoor-wireless-networks-and-distributed-antenna-systems-businesses-to-amphenol-corporation/.

[REDACTED]. This substitution would be merely a procedural device and would not alter any party's claims or defenses. See, e.g., Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 71 (3d Cir. 1993) (Rule 25(c) "is merely a procedural device designed to facilitate the conduct of the case" and does not "alter the substantive rights of the parties").

Defendants have not consented to the substitution, but their position below illustrates why substitution is proper: "[REDACTED]" (Infra at 5.) On a meet and confer the morning this letter was filed, February 12, 2025, Defendants requested for the first time that Plaintiffs agree to certain conditions to obtain their consent, including providing discovery into damages-related topics. But their discovery demands simply cannot form the basis to deny the procedural substitution of parties after [REDACTED]

Defendants' position has also created practical constraints (in Plaintiffs' view unnecessarily) on Plaintiffs' representation in this matter: Defendants have taken the position that, unless and until the substitution takes place, Amphenol is not a party to the litigation and therefore cannot receive information designated by Defendants under the Discovery Confidentiality Order. (ECF No. 22.) As a result, [REDACTED]. Resolving the substitution is therefore important to Plaintiffs' ability to conduct the case, and Plaintiffs intend to move for substitution promptly.

Defendants' Request for Additional Discovery.

As the Court knows, fact discovery was substantially complete on November 17, 2023, and was fully complete on June 28, 2024, after being extended for narrow, Court-ordered purposes. (ECF Nos. 530, 581.) Thus, fact discovery has been substantially complete for well over a year. Yet Rosenberger is now taking the position that the Court should re-open fact discovery for a period of four to six months to address issues that are primarily damages-related. That is not appropriate at this stage in the litigation. If narrow damages-related discovery is appropriate, pre-trial supplementation, not a wholesale reopening of discovery, is the proper vehicle. See, e.g., Everlight Elecs. Co. v. Nichia Corp., No. 12-CV-11758, 2015 WL 412184, at *2 (E.D. Mich. Jan. 30, 2015) (ordering supplemental production of certain damages-related discovery prior to trial); Fair Isaac Corp. v. Fed. Ins. Co., 337 F.R.D. 413, 419 (D. Minn. 2021) ("For example, in patent and trademark infringement litigation it is well understood that information regarding sales of allegedly infringing products may necessarily require supplementation up to the eve of trial. Seasoned litigation counsel know and expect this to be the case, often agreeing in advance to a regular schedule of supplementation on a periodic basis.").

Regarding Defendants' specific requests, CommScope searched for and produced the responsive documents agreed-to by the parties. Defendants do not need a deposition to confirm that representation. Indeed, in their portion of the letter, Defendants claim for the first time (several months after the last document was produced) that they have determined CommScope's production is somehow deficient and therefore Defendants need a deposition. The Court should see through Defendants' post-hoc justifications for seeking additional





discovery they never meaningfully sought in the months-long negotiations over discovery from July to November on the Amphenol transaction.

Regarding Defendants' requests for broader discovery, Defendants have identified no basis for additional discovery about the Amphenol transaction or demonstrated the good cause necessary to reopen fact discovery. From July to November, the parties conferred on discovery regarding the Amphenol transaction. During those several months, the parties negotiated the scope of the search, and, based on those negotiations, CommScope conducted searches for documents related to the Amphenol transaction. (See Ex. A, Aug. 30, 2024 Kahnke Ltr. (outlining the agreed scope of mutual supplementation for expert reports); see also Ex. B, Nov. 1, 2024 Kahnke Ltr. (outlining additional discovery CommScope searched for and produced regarding the Amphenol transaction).) As part of that production, CommScope produced documents like the ones Defendants are calling the Closing Documents. Those documents are not, as Defendants contend, [REDACTED]. Indeed, CommScope repeatedly has told Defendants that, based on a reasonable investigation, it [REDACTED] Thus, the Closing Documents—like CommScope's tax allocation decisions and solvency opinions—rather than being highly relevant, are tangentially relevant at best. Defendants quote below a portion of the purchase agreement regarding the tax allocation process. [REDACTED]. Again, and as CommScope has repeatedly explained to Defendants, [REDACTED]

But the Court need not resolve this issue now. To the extent additional documents (including the Closing Documents) need to be produced, it should be through an agreed-to mutual supplementation prior to trial as explained above, which is precisely what CommScope proposed to Defendants in November. Indeed, while Defendants claim that these documents will be relevant for summary judgment, everything they describe is remedies-related and not related to the liability issues that will be the subject of summary judgment. Thus, the Court should simply wait to resolve this issue as part of mutual supplementation before trial.

Anticipated Motions. CommScope does not currently anticipate seeking leave to move for summary judgment on any issues. Defendants have indicated their intent to seek leave to file a summary judgment motion. Defendants have nonetheless refused to describe the basis for the motion in writing, despite fact discovery having been substantially complete for more than a year. (ECF Nos. 530, 581.) Given the overwhelming evidence in this case, CommScope respectfully suggests that the Court's limited resources should not be spent considering such a motion. If, however, the Court decides to permit such a motion, then, given the age of the case and the long-distant close of fact discovery, CommScope would request that the opening brief be filed within two weeks of the close of expert discovery.

As the Court knows, during the preliminary injunction phase of the case, CommScope moved for sanctions based on Defendants' spoliation of evidence. (ECF No. 183.) We intend to seek leave to renew CommScope's sanctions motion. The renewed motion would add information learned in the course of discovery and seek appropriate relief, such as an adverse inference to be applied at summary judgment and an adverse inference jury instruction at trial, among other relief. We also oppose Defendants' anticipated sanctions motion.





See Jan. 25, 2024 Hr'g Tr. at 91:23-24 ("[T]o the extent there are shades of spoliation here, it's not – that dog won't hunt").

We are assessing whether to bring any Daubert motions, based on our ongoing review of the responsive expert reports (which were exchanged on February 10, 2025) and the upcoming expert depositions (which are set to be completed by April 11, 2025) (ECF No. 609).

Defendants' Requested Schedule Extension. Defendants have requested a five-week extension of the expert discovery deadline for the reasons explained in their portion of this submission. We are willing to accommodate this request, but do not want it to slow down the progress of the summary judgment motion Defendants have indicated they plan to bring. Thus, we continue to request that if the Court grants Defendants leave to file a summary judgment motion, it should be filed promptly after the completion of expert depositions, as we have proposed above.

Defendants' Status Update:

Plaintiffs' Production of Closing Documents from the Amphenol Sale. Prior to Closing, CommScope produced documents concerning the sale of its Outdoor Wireless Networks ("OWN") business to Amphenol Corporation ("Amphenol Sale"). Plaintiffs assert that CommScope searched for and produced all existing responsive documents agreed between the parties, but our review of those documents indicates substantial missing related documents that Defendants have been unable to confirm without taking depositions.

The Purchase Agreement between CommScope and Amphenol provides



After significant efforts to negotiate the productions of these documents, Defendants agreed with a reservation of rights, upon further objection of CommScope, to renew these requests after closing when the documents would purportedly be completed. (See Ex. C, Nov. 6, 2024 Sklar Ltr., at 1 ("agree[ing] to address [] request [for closing] documents at a later date" and that Defendants "disagree that a discussion regarding the production of these documents should wait until 'before trial'").)

Following the Amphenol Sale's closing on January 31, 2025, Defendants immediately renewed their requests and sought an update on the status of the production of the Closing Documents. Plaintiffs have not responded to this request, including when asked again today during the parties' teleconference to discuss and attempt to resolve the issues presented in this submission. Defendants maintain that these new documents must be produced upon creation.





[redacted]. The Purchase Agreement and its disclosures, however, specifically state [redacted]

[redacted]

(See Ex. D, Schedule 3.3.)

[redacted]. The relevance of these materials cannot be overstated.

Plaintiffs mislead the Court by claiming that discovery was completed by June 28, 2024. Defendants did not learn of the Amphenol Sale until it became public on July 18, 2024. Moreover, supplementation of records related to the Amphenol Sale prior to trial will be insufficient to cover these issues and produced too late to be considered on summary judgment. Plaintiffs' cited case law is inapposite to the factual circumstances here. This is not a matter where Defendants are seeking only that Plaintiffs supplement sales records made after the close of discovery. See Everlight Elecs., 2015 WL 412184, at *1; Fair Isaac, 337 F.R.D. at 419.

Defendants are entitled to the documents created in connection with the Amphenol sale – which is the predicate for Plaintiffs late request for substitution – that are relevant to the claims in this action. CommScope has sold the exact business at issue in this lawsuit to a direct a competitor. This includes the alleged trade secrets, which CommScope claims justify $2 billion in damages and require a permanent injunction be placed upon Defendants. [redacted]. It likely has a view of the purported trade secrets in this case which runs contrary to outlandish positions CommScope has taken. Plaintiffs' protestations to the production are telling and indicate the necessity for ordering the complete production of all relevant materials relating to the Amphenol Sale, including valuations and other materials in the possession of Amphenol should it be allowed to substitute into this case.






Amphenol & OWN's Substitution. Amphenol's agreement to purchase CommScope's BSA division and its alleged trade secrets is a significant development that will require discovery to be taken from Amphenol and its relevant witnesses if Amphenol is allowed to substitute into this case. To date, no discovery has been taken of Amphenol. While CommScope states above that it has [REDACTED] Amphenol has made no such representation. Indeed, it would be remarkable if Amphenol did not create [REDACTED].

Defendants would submit targeted requests addressing Amphenol's valuations of the alleged trade secrets and CommScope's BSA division, ownership of the alleged trade secrets (i.e., which Amphenol-related entity actually owns the trade secrets)2, Amphenol's knowledge and positions with respect to CommScope's relevant market share in the BSA industry, Defendants' alleged effect on that market share, the existence and efficacy of CommScope's alleged trade secrets, and Amphenol's knowledge and consideration of this lawsuit prior to purchasing CommScope's relevant assets, none of which if shared with CommScope can be privileged or otherwise protected from disclosure. Defendants would also ask that all relevant witnesses be identified with knowledge of the Amphenol Sale so they may be deposed in preparation for summary judgment and, if necessary, trial.

The parties also discussed today Plaintiffs' request that Defendants consent to Amphenol and OWN's substitution. Defendants explained their concern about the potential impact of the substitution, including as it relates to Defendants' defenses in this matter and a potential conflict for Defendants' counsel. Plaintiffs' counsel asked for further information about Defendants' counsel's representation of Amphenol in Australia, and Defendants' counsel agreed to seek and provide the Amphenol client contact name for those Australian matters. We expect to have that by the end of the week and will provide it as requested.

Any proposed substitution of Amphenol should not affect Defendants' existing defenses including those with respect to questions of ownership of the alleged trade secrets and lack of irreparable harm, and the aforementioned discovery should be produced. The substitution also cannot create in favor of Amphenol any conflict of interest with counsel. The parties discussed these issues during a teleconference today. Defendants believed the parties were in agreement that if the Court allowed Amphenol's substitution, it would be stepping into the shoes of CommScope, and that substitution would not affect the factual and legal positions that existed prior to substitution. However, Plaintiffs now appear to change their position as stated above

Summary Judgment & Daubert Motions. Defendants anticipate requesting leave from Judge Neals to file summary judgment motions at a time following the conclusion of expert discovery and any discovery the Court permits Defendants to take regarding Amphenol. Defendants also anticipate moving for sanctions based on Plaintiffs' spoliation of evidence learned over the course of discovery, including information learned after the Court's hearing on January 25, 2024. Defendants will seek appropriate relief, such as an adverse inference to be applied at summary judgment and an adverse inference jury instruction at trial, among other relief.

---

[2] The plain language of the Defend Trade Secrets Act limits a cause of action under that statute to an owner of a trade secret. *See* 18 U.S.C. § 1836(b)(1).






As the Court is aware, the record in this case is vast. Significant attention will be required to complete Defendants' various summary judgment and Daubert motions. This cannot be completed in the mere two weeks following expert discovery, curiously proposed by Plaintiffs. This is far too short a timeframe and, in any event, does not comport with Judge Neals' individual rules requiring that leave to file first be sought. Further, when the parties' previously proposed schedules for summary judgment and Daubert motions earlier in the case, and before Plaintiffs had decided not to file their own summary judgment motion, Plaintiffs did not take such a draconian position as to timing. They previously proposed that the parties meet and confer three (3) weeks after the close of expert discovery regarding dispositive motion pre-hearing as well as a schedule for submissions. (See ECF 529.) Plaintiffs' position now, after it has decided not to file its own dispositive motion is clearly gamesmanship intended to acquire an unfair and unwarranted advantage in this case.

Although there is no basis for Plaintiffs' demand that Defendants explain their summary judgment or Daubert arguments ahead of time or before seeking leave to file from Judge Neals, Defendants participated in a meet and confer with Plaintiffs' counsel on February 12, 2025 and responded to their questions about Defendants' anticipated arguments and motions. These arguments are still being formulated through expert discovery. Further, Plaintiffs' mentioning of "overwhelming" evidence against "Defendants" is also misstated. If this were the case, then Plaintiffs would be seeking summary judgment. But the record has not borne out in Plaintiffs' favor.

Expert Discovery Schedule. The parties exchanged affirmative reports on October 18, 2024, and responsive expert reports on February 10, 2024, in compliance with the Court's Amended Scheduling Order. ECF 609. In total, there are 11 experts that will be deposed.

The Court's schedule currently provides until April 11, 2025 to complete expert depositions. Based on the number of experts and their placement across the U.S., and KWM lead counsel and other attorneys representing Defendants in this action traveling to and in China for other matters in late-March and early-April, Defendants respectfully request a short extension to ensure that the parties have sufficient time to complete expert depositions. Defendants originally asked if Plaintiffs would consent to a 5-week extension, but they declined to consent. Defendants now ask that a 3-week extension be granted by the Court to ensure that the parties have sufficient time to complete depositions

In accordance with the Court's prior order (ECF 581), Defendants believe that manifest injustice will result in the event the below requested extension is not granted. Further, this issue could not have been raised prior to the parties' exchange of expert reports.





The parties thank Your Honor for your continued time and attention to this matter.

Very truly yours,

**CULLEN AND DYKMAN LLP**

*/s/ Daniel S. Eichhorn*

DANIEL S. EICHHORN

DSE/rc
cc: All Counsel of Record (via ECF)