```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

COMMSCOPE, INC., et al.,          .
                                  .
        Plaintiffs,               .
                                  . Case No. 19-cv-15962
vs.                               .
                                  . Newark, New Jersey
ROSENBERGER TECHNOLOGY            . February 19, 2025
KUNSHAN CO., LTD., et al.,        .
                                  .
        Defendants.               .


                      TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE LEDA DUNN WETTRE
                 UNITED STATES MAGISTRATE JUDGE
```

This transcript has been **SEALED (AVAILABLE FOR PARTIES; NOT AVAILABLE FOR THE PUBLIC)** pursuant to Loc. Civ. R. 5.3(c)(2).

This transcript has been reviewed and revised in accordance with L. Civ. R. 52.1.


APPEARANCES (the parties appeared via video conference):

```
For the Plaintiffs:    STEVEN A. KARG, ESQ.
                       Norris McLaughlin, PA
                       400 Crossing Boulevard, 8th Floor
                       PO Box 5933
                       Bridgewater, NJ 08807-5933
                       (908) 252-4276
                       sakarg@norris-law.com




Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES, LLC
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ  07457
                          (973) 237-6080
```

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

```
 1   (APPEARANCES continued)

 2   For the Plaintiffs:      HARMONY A. MAPPES, ESQ.
                              Faegre Drinker Biddle & Reath LLP
 3                            300 N. Meridian Street
                              Suite 2500
 4                            Indianapolis, Indiana 46204
                              (317) 237-8246
 5                            harmony.mappes@faegredrinker.com

 6                            ANNA E. SALLSTROM, ESQ.
                              Faegre Baker Daniels LLP
 7                            2200 Wells Fargo Center
                              90 South Seventh Street
 8                            Minneapolis, Minnesota 55402
                              (612) 766 7614
 9                            anna.sallstrom@FaegreBD.com

10                            RANDALL KAHNKE, ESQ.
                              Faegre Drinker Biddle & Reath LLP
11                            2200 Wells Fargo Center
                              90 South Seventh Street
12                            Minneapolis, Minnesota 55402,
                              (612) 766-7658
13                            randall.kahnke@faegredrinker.com

14                            TRACEY SALMON-SMITH, ESQ.
                              Faegre Drinker Biddle & Reath LLP
15                            600 Campus Drive
                              Florham Park, New Jersey 07932
16                            (973) 549-7038
                              Tracey.salmonsmith@faegredrinker.com
17
                              BRYAN K. WASHBURN, ESQ.
18                            Faegre Baker Daniels LLP
                              2200 Wells Fargo Center
19                            90 S. Seventh Street
                              Minneapolis, Minnesota 55402
20                            (612) 766-8014
                              Bryan.washburn@faegredrinker.com
21

22   For the Defendants:      SY KIM, ESQ.
                              Cullen and Dykman LLP
23                            433 Hackensack Avenue
                              Hackensack, NJ 07601
24                            (201) 442-2733
                              SKim@cullenllp.com
25
```

```
 1  (APPEARANCES continued)

 2  For the Defendants:     NICHOLAS PELLEGRINO, ESQ.
                            King & Wood Mallesons
 3                          500 Fifth Avenue, 50th Floor
                            New York, NY 10110
 4
                            VINCENT FILARDO, JR., ESQ.
 5                          King & Wood Mallesons
                            500 Fifth Avenue, 50th Floor
 6                          New York, NY 10110
                            (212) 319-4755
 7                          Vincent.filardo@us.kwm.com

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1              (Commencement of proceedings)

 2

 3              THE COURT:  Okay.  Good afternoon.  We are on the

 4    record in CommScope Inc. versus Rosenberger, et al.,

 5    19-cv-15962.

 6              This is Magistrate Judge Wettre.  We're here for a

 7    status conference.

 8              And may I have appearances starting with the

 9    plaintiff's counsel.

10         (Simultaneous conversation)

11              MS. SALMON-SMITH:  Good afternoon, Your Honor --

12         (Simultaneous conversation)

13              MALE SPEAKER:  Go ahead, Tracey.

14              MS. SALMON-SMITH:  Good afternoon, Your Honor.

15    Sorry.

16              Tracey Salmon-Smith as local counsel for plaintiff.

17              THE COURT:  Good afternoon.

18              MR. KARG:  Good afternoon, Your Honor.  This is

19    Steve Karg from Norris McLaughlin, local counsel for

20    plaintiffs.

21              THE COURT:  Okay.  And I'll reserve my greetings to

22    you all until the end.  Go ahead.

23              MR. KAHNKE:  All right.  This is Randy Kahnke on

24    behalf of the plaintiff.

25              MS. MAPPES:  This is also Harmony Mappes from

1    Faegre on behalf of plaintiff.

2              MS. SALLSTROM:  Anna Sallstrom also on behalf of

3    plaintiff.

4              MR. WASHBURN:  And Bryan Washburn from Faegre on

5    behalf of plaintiffs.

6              THE COURT:  Okay.  Is that all for plaintiff?

7              MR. KAHNKE:  Yes.

8              THE COURT:  Okay.  Good afternoon to all of you.

9              And may I have appearances from defendants?

10             MR. KIM:  Sy Kim from Cullen & Dykman, local

11   counsel for defendants.

12             MR. FILARDO:  Vincent Filardo Jr. from King & Wood

13   Mallesons on behalf of defendants.

14             MR. PELLEGRINO:  And Nicholas Pellegrino from

15   King & Wood Mallesons on behalf of defendants.

16             THE COURT:  Okay.  That's everyone for defense?

17             MR. FILARDO:  Yes, it is, Your Honor.

18             THE COURT:  Okay.  And good afternoon to all of

19   you.

20             So I did receive your joint letter of

21   February 12th, 2025, which is under seal at ECF 611.

22             I'm going to provisionally seal this transcript at

23   this time subject to unsealing certain parts that may not be

24   confidential, you know, down the road once counsel have a

25   chance to review the transcript.

1              (Proceedings sealed)

2              THE COURT:  All righty.  So I did review the letter

3    of February 12th.  And before we get into some of the issues

4    raised in it, I wondered if, first, plaintiff's counsel, then

5    defense counsel could give me an update on where things stand

6    relative to the discovery schedule that was set.  And, for

7    instance, I'm looking to learn from counsel whether they, in

8    fact -- all expert reports have now been served.

9              So we'll start with plaintiff's counsel.

10             MR. KAHNKE:  Yes, all expert reports have been

11   served, Your Honor.

12             THE COURT:  Okay.

13             And, Defense Counsel, same for you?

14             MR. FILARDO:  Yes, Your Honor, that's correct.  All

15   have been served.

16             THE COURT:  Okay.  And then is it also correct that

17   none of the experts' depositions have yet been taken?

18             MR. KAHNKE:  That is correct.

19             THE COURT:  Okay.

20             Defense same?

21             MR. FILARDO:  Correct, Your Honor.

22             THE COURT:  Okay.

23             MR. FILARDO:  Yup.

24             THE COURT:  So to the extent an extension is being

25   sought, it's to depose experts; is that correct?

 1              MR. FILARDO:  Your Honor, this is Vincent Filardo

 2    on behalf of defendants.

 3              That is correct.  That's -- the basis for it is in

 4    our papers.  I'm happy to discuss it.  But that's correct,

 5    just for the depositions of experts.

 6              THE COURT:  Okay.  And then this is touching on

 7    some of the issues in the letter, but I know there's a

 8    request from defendants for certain valuation-related

 9    documents in the transaction between the previous plaintiffs

10    and then prospective new plaintiff.

11              Does defendant anticipate that if they received

12    certain responsive materials, they might have to amend any of

13    their expert reports?

14              MR. FILARDO:  Your Honor, that is -- that is

15    possible.  We may have to supplement our expert reports.

16              THE COURT:  Okay.  And which -- how many of your

17    expert reports might that affect?  I mean, I imagine some are

18    unrelated to valuation issues.

19              But you tell me how -- approximately how many of

20    your experts might be impacted by responsive information that

21    may be produced?

22              MR. FILARDO:  I think it may be as many as three:

23    valuation; security, which touched on a number of issues; and

24    some technical issues as well.  So --

25         (Simultaneous conversation)

|Hearing
|19-cv-15962, February 19, 2025
|SEALED (available for parties; NOT available for the public)

8

1        MR. FILARDO:  -- three reports.

2        THE COURT:  Okay.  And how many other experts do

3  you have?

4        MR. PELLEGRINO:  Hi, Your Honor, this is Nick

5  Pellegrino.  We have five experts.

6        THE COURT:  Okay.  Out of a total of five.  Okay.

7  Three of defendants' five experts.

8        All right.  So that overview is helpful.

9        Now let me just turn it over -- not to get

10  heavy-duty into any of the issues in the letter because we'll

11  do that topic by topic.

12        But is there anything, Mr. Kahnke, you or your

13  colleagues would like to raise with the Court or provide by

14  way of a general update?

15        MR. KAHNKE:  Sure.  I would just say, Your Honor,

16  we have produced -- this deal, this transaction, where

17  Amphenol acquired the relevant portion of CommScope's

18  business, was announced last July, and we've produced a

19  substantial volume of documents.  The expert reports have

20  been -- the deadlines have been extended substantially.

21  We've effectively had an additional six months of discovery

22  if we go back and look at even before -- beyond the dates

23  that are mentioned in the letters.

24        And we just want to keep moving -- we would like to

25  keep things moving forward.

|Hearing
|19-cv-15962, February 19, 2025
|SEALED (available for parties; NOT available for the public)

9

```
 1              I will just say that there is -- I take your

 2      guidance that we don't want to get too much into the

 3      letter -- you'll take that issue by issue.  But I think

 4      there's an assumption that there were certain types of

 5      valuations done; the defendants are making those assumptions.

 6      And if we could provide to the Court a declaration from

 7      Amphenol, that might lay this to rest such that there is --

 8      we have clarity around this and we can move forward.

 9              They want an extension.  We're saying, fine.  We're

10      happy to accommodate the extension; if opposing counsel needs

11      it, so be it.  We want to be accommodating in that regard.

12              But we really do need to keep the summary judgment

13      moving forward.  Discovery has been substantially complete

14      for over a year -- fact discovery.

15              And, boy, we just really need to keep the things

16      moving forward here.  That's what I would say by overall

17      update, Your Honor.

18              THE COURT:  Okay.  Thank you.

19              And, Defense Counsel, anything general you want to

20      say?

21              MR. FILARDO:  Your Honor, all this additional

22      discovery is not due to any request of defendants.  You know,

23      it's all -- they come as part of the record because of the

24      change in situation, the sale of the OWN, business -- that's

25      the outdoor wireless network business of CommScope, and
```

 1  because of CommScope's expansion generally of the claims in

 2  this case.  We've just reacted out of, you know, a need to

 3  have discovery in order to put forth our defenses.

 4          This particular discovery, which, by and large,

 5  we're close to finishing, is just the close -- the end of the

 6  closing documents that are called out literally, expressly in

 7  the actual sale document.  So we can get into that, as

 8  Your Honor has pointed out.  But that's where our requests

 9  come from.  It's not out of, you know, a desire to just

10  extend this case any longer than necessary.

11          THE COURT:  All right.  Well, let me jump a little

12  bit out of order into one of the issues which touches on what

13  you're talking about, which I'm wondering if defendants -- I

14  know there's arguments about getting any valuated --

15  valuation-related transactional documents from the

16  plaintiffs.

17          But has a formal discovery request for such

18  documents been served on plaintiffs?

19          MR. FILARDO:  Previously, Your Honor.  This goes

20  back to when we were first before Your Honor asking for an

21  extension on the expert reports; that is when we discussed,

22  you know -- propounded our discovery requests to the

23  plaintiffs related to these materials.

24          And then we've had meet and confers, several --

25  probably at least four or five -- on these particular issues

1  with respect -- and what I mean by "these particular issues"

2  are our document requests.

3          THE COURT:  Okay.  So does that mean you received

4  ambiguous responses to the requests?  For instance,

5  plaintiffs did not respond "none" but they asserted

6  objections and you just couldn't tell if there were

7  responsive documents that were being withheld?

8          What generally -- give me the flavor of the

9  responses you got back.

10          MR. FILARDO:  Well, no formal written responses

11  other than our own letters back and forth with respect to --

12          THE COURT:  Okay.  Well, that's one item of cure.

13  I mean, I don't need plaintiffs filing declarations on the

14  docket about discovery.

15          That's -- Mr. Kahnke, to the extent your client is

16  willing to say that no documents exist, that should be done

17  in response to their discovery demands.

18          MR. KAHNKE:  There are no formal discovery

19  requests, Your Honor.

20          THE COURT:  I thought Mr. Pellegrino or Mr. Filardo

21  just told me a moment ago that they did propound discovery

22  requests.

23          MR. FILARDO:  All in letters, Your Honor.  All --

24  written --

25          THE COURT:  Okay.

|Hearing
|19-cv-15962, February 19, 2025
|SEALED (available for parties; NOT available for the public)

12

```
 1              MR. FILARDO:  -- in written letters.

 2              THE COURT:  Okay.  So this is what we're going to

 3    do because I think the federal rules are the best way to

 4    handle this.

 5              So you're going to propound a set of RFPs detailing

 6    what you want, and those are going to be extremely discrete;

 7    just as to any valuation-related transactional documents, as

 8    I understand it.

 9              And then CommScope shall have 14 days to respond to

10    it.

11              And then that should lend some clarity.

12              How does that sound?

13              MR. FILARDO:  That's fine for the CommScope-related

14    documents, Your Honor, yes.

15              THE COURT:  All right.

16              So, Defendants' Counsel, when do you want to -- how

17    soon can you serve your RFPs on that topic?

18              MR. FILARDO:  Next Wednesday?

19              THE COURT:  Okay.

20              And I have that as the 26th.

21              And I'll give plaintiff 14 days to respond to that.

22    And if it's as simple as no documents in those categories

23    exist, we'll close out the issue.  I mean, I don't mean to be

24    overly simplistic.

25              Where do you think that could run into problems?
```

 1          MR. FILARDO:  Your Honor, I think that's fine.  I

 2  think we're following -- you know, that's provided under the

 3  federal rules.  That's fine.  If we have a -- you know, any

 4  issue with their response, we'll seek a meet and confer with

 5  them.

 6          THE COURT:  Okay.  You've got to bring it to me

 7  quickly if there is a problem with that.

 8          So why don't I say -- all right.  So February 26th,

 9  they will be propounded.

10          And then March 12th or 13th, there will be a

11  response, and any remaining issues as to this shall be raised

12  with the Court by joint letter on or before March 21st.

13          Okay?

14          All right --

15      (Simultaneous conversation)

16          THE COURT:  Yeah, okay.  All right.  And I

17  thought -- I think it was Mr. Pellegrino, did you qualify

18  when you played back what I said about serving discrete

19  document requests?  Did you say, that will be fine as to

20  CommScope, but was there something else that you're wishing

21  to propound?  Or some other category of documents?

22          MR. FILARDO:  Oh, Your Honor -- this is Vincent

23  Filardo.  That was me.

24          THE COURT:  Okay.

25          MR. FILARDO:  That was -- the documents we're all

|Hearing
|19-cv-15962, February 19, 2025
|SEALED (available for parties; NOT available for the public)

```
 1    talking about are documents that we've requested of

 2    CommScope.  That's why I qualified --

 3               THE COURT:  Okay.  Okay.  I got you.

 4               All right.  I just wanted to make sure I wasn't

 5    missing something.

 6               All right.  So let's talk about the substitution of

 7    the new plaintiff for the CommScope entities.  I'm wondering

 8    whether you all can just have a stipulation if it is the case

 9    that the new plaintiff is standing one hundred percent in the

10    shoes of the old plaintiff or plaintiffs with respect to

11    claims, defenses, and everything else concerning the lawsuit.

12               Mr. Kahnke, what do you say to that?

13               MR. KAHNKE:  Yeah, I think that's reasonable,

14    Your Honor.  And we -- I mean, that's effectively what we

15    understand Rule 25 does by operation of the rules.  And we

16    have, in fact, proposed a stipulation to the defendants that

17    I think is in step with what you just described.

18               THE COURT:  All right.

19               So what -- what is defense counsel still worried

20    about?

21               MR. FILARDO:  Your Honor, it's Vincent Filardo.

22               I think we can -- and I've discussed with

23    Mr. Kahnke that -- exactly that, consenting to it.

24               But the basis for this, even under the case law,

25    relevant case law, is that there shouldn't be any prejudice
```

 1  that's visited upon defendants as a result of the actual

 2  substitution.  And I think there -- there may be -- because

 3  we haven't seen a number of issues related to our defenses

 4  with respect to ownership of the trade secrets, how that's

 5  changing or not changing and if that's going to affect our

 6  defense on that line and then also with respect to a

 7  potential conflict of interest that I raised with Mr. Kahnke

 8  with respect to my firm and one that may, indeed, even exist

 9  with respect to his firm, given the fact that Amphenol is a

10  direct competitor of CommScope and they're opposite each

11  other on this deal and post-closing issues happen -- I am not

12  suggesting that those things can't be overcome.  I think they

13  can be -- even -- you know, to the extent that there's just a

14  waiver, a blanket waiver that's made by Amphenol.  But if we

15  can resolve those potential issues of prejudice, then that

16  goes, you know, towards our issue of agreeing to stipulate

17  in.

18          I've also raised the fact that -- with Mr. Kahnke

19  and you've seen it in our letters that, you know, we think

20  that there is a fundamental difference between Amphenol and

21  CommScope and that's not an exact standing in the shoes.  But

22  there are going to -- because they're such a big player and

23  are such a big player in this marketplace, they are going to

24  have preexisting positions with respect to some of the issues

25  in this lawsuit.  They can't -- you know, walk away from

1    those.  And we're entitled to inquire into them, especially

2    if they're going to be a plaintiff in this action, they're

3    going to be subject to an appearance at trial.

4              So that was a separate issue that I raised.

5              But the primary one was prejudice as a result of

6    the substitution.

7              THE COURT:  Hmmm.  Okay.

8              Mr. Kahnke, any response?

9              MR. KAHNKE:  Yeah.  It is not -- I think Rule 25

10   addresses that.  That is the purpose of Rule 25.

11             And the stipulation is clear and tracks Rule 25 --

12   and I think tracks what Your Honor outlined.  I think it says

13   that the substitution will not -- you know, everyone will

14   preserve all of their claims and defenses.  The substitution

15   is not going to -- it's merely a procedural device to get the

16   proper party before the Court.

17             I think that the --

18             THE COURT:  But say the new --

19       (Simultaneous conversation)

20             MR. KAHNKE:  -- clear on that.

21             THE COURT:  But take note, Mr. Pellegrino's [sic]

22   point.  Say the new plaintiff has made statements and, you

23   know, representative statements, under-oath statements or

24   representations, that would constitute admissions against

25   interest in this case.  Shouldn't -- shouldn't the defense be

1    able to take advantage of those, inquire about them, get them

2    on record?  I mean, they are different companies.

3         MR. KAHNKE:  Yeah, I -- let's just assume, I guess

4    for the sake of the discussion, that such things exist, which

5    is a significant assumption.  None of that -- to start, there

6    are a number of different companies that participate in this

7    industry, including Amphenol and CommScope.  And discovery of

8    that sort was never sought during the years-long discovery

9    phases of this case.

10        And so I just -- I just don't see -- and I -- can I

11   say -- I ████████████████████████████████████████

12   ████████████████████████     So, for example, if we look

13   at the letter to Your Honor on page 5, defendants' portion,

14   right in the middle of the page, it says:  [As read]

15   Evidently a, quote, ████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████

18   ████████████████████████

19        That's just -- and representing now as an officer

20   of the Court, Your Honor -- that is just inaccurate.  I mean,

21   that's an assumption that they're making.  ████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████     And we also have said that there is --

24   ████████████████████████████████████████████

25   ████████████████████     It simply did not occur.

|Hearing
|19-cv-15962, February 19, 2025
|SEALED (available for parties; NOT available for the public)



11    So when I say that there's a significant assumption

12  when we talk about admissions or something of that nature, I

13  think that the assumptions simply do not apply here.  And, of

14  course, they never sought third-party discovery of other

15  companies in the industry during the extensive discovery

16  phase.

17    So -- and I don't see how that relates to

18  substitution.

19    THE COURT:  All right.  Well, I mean, I -- I can

20  understand why they would want the discovery.  I mean,

21  even -- and I can think of circumstances where counsel -- and

22  I am not sure that would be privileged across transactional

23  parties -- could have, without specifying any of the

24  confidential information, still have opined on the value of

25  this case based upon what they have seen and not disclosed in

 1   detail.

 2          So, I mean, I can definitely see why the defendants

 3   want to make sure that there's no "there" there.

 4          So -- but I think with that, we start with the set

 5   of RFPs -- now we're talking about the substitution.  I think

 6   you all have to kick it around some more and meet and confer

 7   and see if plaintiff can address whatever legitimate concerns

 8   the defendants have.

 9          And if they can't -- and maybe that can't be

10   decided until after responses to the RFPs are due.  So there

11   is going to be some delay.  The new party is not going to get

12   right in under the protective order.  And, you know, I think

13   we have to look before we leap.

14          And, you know, that's -- I know they're probably

15   chomping at the bit to get substituted, but we're going to

16   make sure it's done carefully and correctly.

17          So I think you need to talk about whether there

18   needs to be a motion for substitution under Rule 25 or you

19   can reach a stipulation.  I think that's going to ride a

20   little bit until at least around the March 21st time when

21   you'll send me a joint letter.  Maybe you'll fold that in if

22   there's still an issue.

23          I'm happy to hear you in response to that.  That's

24   just my thoughts.

25          MR. KAHNKE:  No.  I think -- Randy Kahnke here.

 1                    Oh, I'm sorry.  Go ahead, then.

 2                    MR. FILARDO:  No, Your Honor, I was just going to

 3      say that's fine with defendants.  If I may -- I mean, just to

 4      respond to some of these points that Mr. Kahnke raised

 5      earlier and Your Honor really addressed them, but, plain and

 6      simple, Amphenol's not a third party anymore.  They're going

 7      to be a plaintiff if they're allowed in by the Court.

 8                    And our, you know, statements in letter had to do

 9      with literally documents that were identified to be produced.

10      And I hear Mr. Kahnke ███████████████████████.  But

11      that doesn't mean those closing documents wouldn't have other

12      relevant information ██████████████████ █

13      ██████████████████████████████

14      ████████████████████████████████

15      ███████████

16                    I mean, ████████████████████████

17      ██████████████████████████████████████

18      ████████████████████.

19                    So these are important for us to really fill out,

20      you know, the whole -- you know, deal as it's been presented.

21      Seems like it would have all this stuff in it or at least

22      statements with respect to why they're not in there.

23                    THE COURT:  Okay.  Well, I certainly think you are

24      entitled to explore that.  And so you'll start with your

25      federal rules requests.

 1          And if it has to go further than that, it's -- I'm

 2   going to have to -- I'll have to rule on that.  Okay?

 3          MR. FILARDO:  Okay.

 4          THE COURT:  That follow-up deposition is in order

 5   and the like.  But let's take -- let's take it one step at a

 6   time.

 7          And that --

 8          MR. FILARDO:  Thank you.

 9          THE COURT:  And I hear you, Mr. Kahnke, on wanting

10   to move the case now.  But things have happened along the

11   way.  And I never got the impression that anyone was in a

12   particular "hair on fire" hurry in this case.  And then

13   things closed down in China for a year.  So I think this is a

14   worthwhile pause to make sure that the defendant's not

15   prejudiced by, you know, a pretty big change in the case.

16          All right.

17          I already touched on -- I think the expert

18   schedule's going to have to hold a little bit because if, in

19   fact, experts have to amend their reports, then, you know,

20   it's going to have to play out based upon what's produced by

21   the plaintiff.  And so I'm going to hold -- I'm going to hold

22   the schedule.

23          I'll put something to keep you from panicking.  So

24   the -- why don't I put the expert -- the conclusion of expert

25   depositions, the deadline -- or conclusion of expert

|Hearing
|19-cv-15962, February 19, 2025
|SEALED (available for parties; NOT available for the public)

1    depositions will be reset by the Court after the foregoing --

2    which, in my order, will be the details about RFPs and joint

3    letters and all that.

4              All right.  Anything further on that?

5              MR. KAHNKE:  Not from the plaintiff, Your Honor.

6              MR. FILARDO:  Not from defendants, Your Honor.

7              THE COURT:  Okay.

8              And then I had kind of thoughts that nobody would

9    like about could summary judgment on liability proceed while

10   the valuation expert reports were in flux.

11             So I'll throw it out to you.

12             Why don't I ask defendants that question.

13             MR. FILARDO:  On liability, Your Honor?  I think

14   twofold:  Number one, there could be issue -- there may be

15   issues that are raised in these documents and/or once -- or

16   if Amphenol comes in and we have an opportunity to inquire

17   into their documents, that would affect the actual substance

18   on liability.  Obviously, lack of damages is an element to

19   all of these claims, to the extent that there is an issue

20   there, which we think there is based upon our expert reports.

21   And we do intend to file simultaneous Daubert motions which

22   are going to tie in with the summary judgments.  They're

23   necessary, really, to file together.  So we can't do that

24   until after the expert depositions are closed.

25             And there is a lot here to go through and prepare

|Hearing
|19-cv-15962, February 19, 2025
|SEALED (available for parties; NOT available for the public)

1    for after the close of all expert discovery.  I mean, we

2    think we can do it on a reasonable schedule but not the

3    schedule proposed by plaintiffs, you know, in their recent

4    letter.  I mean, we haven't even formulated all of our issues

5    yet.  You know, we --

6         (Simultaneous conversation)

7              MR. FILARDO:  -- the plaintiffs, but not all.  And

8    those may change.

9              THE COURT:  Okay.

10             Does plaintiff's counsel want to comment on that

11   subject?

12             MR. KAHNKE:  No -- I do like this idea of moving

13   forward with summary judgment.  I mean -- I mean, fact

14   discovery has long been closed.  Yes, there's been a sale of

15   the company.  But I really think that there's not been a

16   material change in what the facts are underlying this case.

17             And I guess -- and I hear defense counsel saying

18   that we need to get the Dauberts on damages before the Court

19   at the same time as our ex- -- they're going to demonstrate

20   that there are zero damages.

21             With respect, that is not going to happen.  If --

22   there are -- it's over a billion dollars that are issue.

23   The -- we've got a report that runs to nearly a hundred pages

24   from a University of Chicago-trained Ph.D. who is well-known

25   and well-respected by the federal courts across the country,

 1  and we're not talking about novel legal issues here, novel

 2  theories.

 3          I think that it's a good idea to have summary

 4  judgment go forward on liability.  They've got a whole series

 5  of bases that they've identified for us verbally that are --

 6  that go to liability that are independent of the damages

 7  issues.  And I think we could make progress on those with

 8  some --

 9          THE COURT:  Well, why don't we hold on that until

10  at least later in March when we see which way the other

11  issues are going because if there is no additional

12  valuation-related information and that can be demonstrated

13  and then there's no need to have new expert reports, then I

14  can set summary judgment in good conscience for everything.

15  So let's just hold a little bit on that.  I hear what both

16  sides are saying.

17          And then when you ultimately do seek to move for

18  summary judgment and on spoliation grounds, you'll file

19  premotion letters on the docket, but you can address those to

20  me.  You could address those to Judge Neals and me, but

21  between the two -- he usually weighs in on Rule 12 motions in

22  lieu of answer with premotion leave.  And I usually handle

23  the later motions to eyeball them and make sure they're ripe

24  for filing.

25          So -- but we're not there yet.  Let's just hold on

|SEALED (available for parties; NOT available for the public)

 1    the dispositive motions.

 2              And also I'm going to have to confer with him

 3    because some of the district judges don't want spoliation

 4    motions until trial, and they're adamant about it.  Others

 5    treat it as, you know, a discovery sanction and will let the

 6    magistrate judge do at least an R&R on whether there should

 7    be adverse inference if there is -- spoliation is found.

 8              So I'm not really sure where Judge Neals stands on

 9    that.  So give me a little bit of time to investigate that

10    with him.

11              All righty.  So I think I got through the topics in

12    the letters.

13              Is there anything that I missed that either side

14    wants to raise?

15              And I'll turn to plaintiffs first.

16              MR. KAHNKE:  No.  We appreciate the Court's time

17    and understand the guidance you are providing, Your Honor,

18    about taking this step by step.  I think you understand our

19    position about the desire to move this forward.  And we will

20    follow your direction here and make sure that we're doing

21    everything to make sure that we are moving it forward from

22    our side.

23              THE COURT:  Okay.  Very good.

24              And, Defense Counsel?

25              MR. FILARDO:  Thank you, Your Honor, for your time

|Hearing
|19-cv-15962, February 19, 2025
|SEALED (available for parties; NOT available for the public)

1    today.

2            We have nothing further to add.  And I have nothing

3    further to say in response to Mr. Kahnke with respect to his

4    characterization.  I'll leave that for our meet and confers.

5            THE COURT:  Okay.  So what I'm going to do, don't

6    hang up.  I'm going to take us off the record because I do

7    want to have a closing discussion with you about something

8    else.  Okay?

9            MR. KAHNKE:  Understood.

10           THE COURT:  All right.  Thanks.  Hold on.

11                   (Conclusion of proceedings)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|Hearing
|19-cv-15962, February 19, 2025
|Certification

1                          Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 27 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    S/ *Sara L. Kern*                    21st of February, 2025

19    _____    _____
      Signature of Approved Transcriber              Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services, LLC
      3 South Corporate Drive, Suite 203
23    Riverdale, NJ  07457
      (973) 237-6080

24

25