# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Amphenol Corporation and Outdoor Wireless Networks, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Rosenberger Technology (Kunshan) Co. Ltd., Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG, Northwest Instrument, Inc., and CellMax Technologies AB <br><br> Defendants | ) Civil Action No. 19-cv-15962-JXN LDW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **FILED UNDER SEAL** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS AMPHENOL CORPORATION AND OUTDOOR WIRELESS NETWORKS, LLC FOR SPOLIATION OF EVIDENCE**

# Table of Contents

**PRELIMINARY STATEMENT** ...................................................................1

**STATEMENT OF FACTS** ........................................................................5

   **I.** **CommScope's Cease and Desist Letters.**...............................5

   **II.** **CommScope Deletes** ████████████████ **Prior To Commencing This Action.** ........................................................9

     *a.* *CommScope Deletes its* ████████████ ████████ ██████████ ....................................................9

     *b.* *CommScope Deleted* █████████████████ ██████ ...............................................................11

   **III.** **CommScope Deleted** ████████████████ ██████████████████ ...............................12

   **IV.** **CommScope Commenced This Action On July 29, 2019** .........19

**LEGAL STANDARD** ............................................................................21

**ARGUMENT** .......................................................................................25

   **I.** **CommScope's Deletion Of** ████████████ **Requires That Its Claims Be Stricken**.............................................25

     *A.* *CommScope Committed Sanctionable Spoliation By Deleting* ████ ██████████ .............................25

     *B.* *CommScope's Spoliation Was Intentional, Willful, And Made In Bad Faith* .........................................28

     *C.* *Plaintiffs Have Prejudiced Defendants And Any Sanction Lesser Than Dismissal Will Not Cure That Prejudice* .........................33

   **II.** **CommScope Committed Spoliation By** ████████████ ██████████ .........................................................37

**CONCLUSION** ....................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Donofrio v. Ikea US Retail, LLC*,
No. CV 18-599, 2024 WL 1998094 (E.D. Pa. May 6, 2024)............................36

*EBIN New York, Inc. v. SIC Enterprise, Inc.*,
No. 19-CV-1017 (PKC) (TAM), 2022 WL 4451001 (E.D.N.Y.
Sept. 23, 2022) ...............................................................................................22

*FinancialApps, LLC v. Envestnet, Inc.*,
No. CV 19-1337-JLH, 2025 WL 2399303 (D. Del. Aug. 7, 2025)..............24, 40

*In re Frontier Communications Corp.*,
666 B.R. 260 (S.D.N.Y. 2025) .........................................................................26

*GE Harris Ry. Elecs., L.L.C. v. Westinghouse Air Brake Co.*,
No. CIV.A. 99-070-GMS, 2004 WL 5702740 (D. Del. Mar. 29,
2004) ...............................................................................................................28

*Gentex Corp. v. Sutter*,
827 F. Supp. 2d 384 (M.D. Pa. 2011)..........................................................24, 34

*IOENGINE LLC v. PayPal Holdings, Inc.*,
No. CV 18-452-WCB, 2022 WL 1443867 (D. Del. May 3, 2022)....................28

*IQVIA, Inc. v. Veeva Sys., Inc.*,
No. 2:17-CV-00177-CCC-MF, 2021 WL 12319551 (D.N.J. May 7,
2021) .................................................................................................26, 32, 39

*In re JMO Wind-Down, Inc.*,
No. 16-10682 (BLS), 2021 WL 665741 (Bankr. D. Del. Feb. 17,
2021) .................................................................................................25, 35, 36

*Major Tours, Inc. v. Colorel*,
No. CIV 05-3091(JBS/JS), 2009 WL 2413631 (D.N.J. Aug. 4,
2009) ...............................................................................................................22

*Manning v. Safelite Fulfillment, Inc.*,
No. CV 17-2824, 2021 WL 3557582 (D.N.J. Apr. 29, 2021)...........................22

*Mason v. Amtrust Fin. Servs., Inc.*,
848 F. App'x 447 (2d Cir. 2021) ...............................................................38

*Micron Tech., Inc. v. Rambus Inc.*,
917 F. Supp. 2d 300 (D. Del. 2013)..........................................................34

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
348 F. Supp. 2d 332 (D.N.J. 2004).....................................................*passim*

*N.V.E., Inc. v. Palmeroni*,
Civil Action No. 06-5455 ES, 2011 WL 4407428 (D.N.J. Sept. 21, 2011) ........................................................................................................23

*Nagy v. Outback Steakhouse*,
No. CV 19-18277(MAS)(DEA), 2024 WL 712156 (D.N.J. Feb. 21, 2024) ..................................................................................................23, 25

*Ogin v. Ahmed*,
No. 06-cv-350, 2008 WL 4722390 (M.D. Pa. Sept. 2, 2008) ...........................39

*Robertet Flavors, Inc. v. Tri-Form Const., Inc.*,
203 N.J. 252, 1 A.3d 658 (2010) ...............................................................34

*Stream Cos. v. Windward Advert.*,
No. 12-CV-4549, 2013 WL 3761281 (E.D. Pa. July 17, 2013) .......................35

*TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*,
No. CIV.A. 06-5359, 2009 WL 690996 (D.N.J. Mar. 11, 2009) ................21, 37

*United States Liab. Ins. Co. v. Glob. Acquisitions, LLC*,
No. 4:14 CV 1887 RWS, 2016 WL 2594067 (E.D. Mo. May 5, 2016) ........................................................................................................26

*United States v. Bayer*,
2020 WL 13189533 (D. NJ. Apr. 16, 2020).................................................24

*United States v. Rowe*,
96 F.3d 1294 (9th Cir. 1996) ....................................................................26

*Younes v. 7-Eleven, Inc.*,
312 F.R.D. 692 (D.N.J. 2015).....................................................................31

Defendants Rosenberger Technology (Kunshan) Co. Ltd. ("**Rosenberger Kunshan**"), Rosenberger Asia Pacific Electronic Co., Ltd. ("**Rosenberger Asia**"), Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG ("**Rosenberger Germany**"), Northwest Instrument, Inc., and CellMax Technologies AB (collectively "**Defendants**") by and through their undersigned counsel, respectfully submits this Memorandum of Law pursuant to Fed. R. Civ. P. 37(e) and the Court's inherent authority to issue sanctions in Support of its Motion for Spoliation Sanctions ("**Motion**") against Plaintiffs Amphenol Corporation and Outdoor Wireless Networks, LLC ("**Plaintiffs**").[1]

## PRELIMINARY STATEMENT

As early as 2015, and continuing at least through 2019, Amphenol's predecessor, CommScope, took extensive measures to intentionally and deliberately delete evidence which would likely have been detrimental to its claims in this case. This motion concerns two separate acts of spoliation committed by CommScope.

---

[1] This action was originally brought by Plaintiffs, CommScope, Inc., CommScope Inc. of North Carolina, and CommScope Technologies, LLC (collectively, "**CommScope**"). CommScope is the party that committed the spoliation described in this motion, however, the relevant assets at issue in this case, including the claims and alleged trade secrets, were purchased by Plaintiffs. *See* Dkt. No. 630. Amphenol Corporation and Outdoor Wireless Networks, LLC substituted into this action as the Plaintiffs following the closing of this transaction. *Id.* Accordingly, this Motion is properly brought against Amphenol and Outdoor Wireless Networks, LLC for the actions of its predecessor-plaintiff, CommScope.

1

CommScope's first act of spoliation concerns its ███████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████    For example, between ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████. During this same time period, Plaintiffs prepared

multiple documents at the direction of counsel[2] in anticipation of litigation.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████ (e.g., Antenna Analysis Program ("**AAAP**"), Satimo Macro

Generator, HFSS to AAF, CST to AAF, and AAAP Import Automation ("**AAAP**

---

[2] As indicated in Plaintiffs' privilege logs, ██████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████ Prior to May 2019, Defendants understand that
Plaintiffs used Chinese outside counsel to advise them as to litigation with
Defendants.

2

**Import**") (collectively, with Particle Swarm Optimization Analysis Program,[3] the "**Alleged Trade Secret Software**")). The Alleged Trade Secret Software collectively with CommScope's allegedly misappropriated design files and printed circuit board design guidelines are referred to as the "**Alleged Trade Secrets**." While investigating and preparing to file this action, CommScope soon discovered that ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

All of these acts of spoliation were intentionally and deliberately made to deprive Defendants of facts supporting reasonable defenses, including that CommScope's former employees did not wrongfully acquire any of the Alleged Trade Secrets and that Plaintiffs' Alleged Trade Secrets were not treated as confidential, but instead, were freely distributed inside and outside of CommScope, as well as to support their requests for voluminous discovery seeking to establish alleged misappropriation of over one thousand files based upon similarity to

---

[3] ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████. Defendants, however, expect Plaintiffs engaged in the same effort ████████████████████████.

Defendants' design files instead of evidence of misappropriation. By destroying these relevant files, CommScope could not—and did not—produce ███████████

████████████████████████████████████████████

████████████████████████████████

Defendants respectfully submit that Plaintiffs' acts of spoliation should not be countenanced by the Court, which would set a far-reaching detrimental precedent to the long-standing federal policy of fair and open discovery. Accordingly, for reasons more fully set forth herein and in the remainder of the record, Defendants respectfully request that the Court enter an Order (1) striking all of Plaintiffs' claims, or in the alternative, (a) excluding all evidence submitted by Plaintiffs that could have been rebutted by the spoliated documents, (b) providing an adverse evidentiary inference to be used on summary judgment; and (c) allowing instructions to be presented to the jury in this case stating that (i) the spoliated files shall serve as evidence establishing that Plaintiffs did not treat the information as trade secrets, (ii) Plaintiffs do not know to whom their Alleged Trade Secrets have been distributed and therefore they were not kept confidential, and (iii) all relevant ███████████

████████████████████████████████████████████

███████ did not undertake any misappropriation of Plaintiffs' and/or their predecessors Alleged Trade Secrets and confidential information, (2) providing that

4

Plaintiffs shall pay all Defendants' attorneys' fees and costs incurred in this action, and (3) all other and further relief that the Court deems appropriate.

## STATEMENT OF FACTS

### I.    CommScope's Cease and Desist Letters

CommScope and Defendants are market participants in the base station antenna ("**BSA**") industry. Both have manufactured many of their BSAs in China. Similar to the majority of other international technology companies (including CommScope), defendants Rosenberger Kunshan and Rosenberger Asia hired competitor employees—including ex-CommScope China-based employees—to work in their China facilities.  In response to these hirings, in 2015-2016, ███████

████████████████████████████████████████████

███████████ (Ex. 2, COMM00755869 at 70) (████████████████████████

████████████████████████████████████████████

████████████████████    ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████. *See* Ex. 3, J. Pooley, Plaintiffs' Security Expert, Oct. 18, 2024 Expert Report at 16 (referring to the below mentioned letters as ████████████████████).

CommScope's ████████████████████████████████

████████████████████████████████████████████

5



███████████ ("███████████████████████"). The letter claimed that █████

██ ███ █ ██████████ █ █████████ █████████ ██████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████ Ex. 4, COMM00752805 at -06.

CommScope's ████████████████████████████████

████████████████████████████████████████████

████████████████████████████ ("████████████████

███") . Ex. 5, COMM00752808 at -09.[4] ████████████████████ restated

that ████████████████████████████████████████

██████████ *Id.* at -10-11. However, it escalated CommScope's accusations that the

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ *Id.* at -09 (emphasis added). Moreover, CommScope's counsel ████████

████████████████████████████████████████████

---

[4] ████████████████████████████████████████████
████████████████████████████████████████ *See* Ex. 5,
COMM00752808 at -09.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████ *Id.* at -11.

CommScope's ████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ ██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

*See* Ex. 6, COMM00752796-98; *see also* Ex. 7, COMM00752799-801.

In addition to the ████████████████████, CommScope's privilege logs state

that it was preparing for this litigation years prior to filing this action.[5] For example,

CommScope created, and has withheld on grounds of attorney client privilege and

work product, ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[5] At least one privilege log entry evidences that ██████████████████████

██████████████████████████████████████████████

████. *See* Ex. 8, Plaintiffs' Jan. 14, 2022 Privilege Log at #3659 (withholding on
grounds of attorney client privilege and work product, documents and
communications from December 2013 ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████ ).



██████████████████████████████████████████████

████████████████████████████████████ *See* Ex. 8, Plaintiffs' Jan. 14, 2022 Privilege

Log at #3678-3679 (emphasis added). Then, in May and June of 2016 ████████████

████████████████████████████████████    ████████████████

██████████████████████████████████████████████

███████████████████████ *See* Ex. 1, Plaintiffs' Jan. 3, 2020 Privilege Log at #46,

#49 ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Further, in October 2016, CommScope prepared and withheld as privileged ████████

██████████████████████████████████████████████

█████████ *See* Ex. 8, Plaintiffs' Jan. 14, 2022 Privilege Log at #3680.

These purported attorney-client and work product records concerning the

intention to commence this litigation continued until this action was formally

commenced. *See, e.g.*, Ex. 9, Plaintiffs' Jan. 27, 2022 Privilege Log at #3850 ████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████ ; *see also* Ex. 1, Plaintiffs' Jan. 3, 2020 Privilege Log at #172,

185, 191-192, 197-200 █████████████████████████████████████

8

██████████████████████████████████████████████

████████████ *id*. at # 473-74, 478-79, 481-83 (███████████████████████).[6]

**II.    CommScope  Deletes  ███████████████████████  Prior  To
Commencing This Action**

At latest after CommScope engaged outside counsel to send ████████

███████, and ██████████████████████████████████ (*supra*

at 7-8) it should have immediately preserved all potentially relevant information,

including ██████████████████████████. Instead, CommScope

unlawfully destroyed those documents and files despite its anticipation of litigation.

  *a. CommScope Deletes its ██████████████████ After Sending
      the Cease and Desist Letters*

CommScope sought the production of the *personal emails* from at least two

ex-employees, Messrs. Linfeng Sheng's and Charles Yang, seeking without

justification to find evidence of trade secret misappropriation because it could find

none in the company files of these former employees ████████████

████████    *See* Dkt. No. 562.  In its discovery request filed in November 2023,

CommScope  informed  the  Court  that  ████████████████████

███████████████████████████████████████████

---

[6] Defendants have submitted with this Motion excerpts of Plaintiffs' voluminous
privilege log for 2017-2019. Additional portions will be produced upon request of
the Court.

9

███████████████████████████████████████████████████████

███████████████████ Dkt. No. 562 at 11.[7]

████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Its

attorneys made this representation in a discovery filing without a supporting

declaration. Plaintiffs' representation to the Court, however, is contradicted by the

record in this case. Mr. Sheng ████████████████████ ─ ███████

██████████████████████████ and after multiple privilege log entries ████████

█████████████████████████ *See* Ex. 47, COMM00039820 at -31. Mr.

Yang ████████████████████████████████ ████████████████

█████████ and ████████████ to sending ████████████████████████. *Id.*

CommScope was threatening Defendants with litigation when these employees left

CommScope and therefore their information should have been preserved by way of

a litigation hold and pursuant to ████████████████████████████

CommScope witnesses have provided divergent recitations of CommScope's

email retention policies. CommScope's 30(b)(6) witness testified that ██████

█████████████████████████████████████████████████ *See*

Ex. 10, M. Zimmerman Nov. 9, 2023 Dep. Tr., 223:17-224:16. CommScope's

---

[7] Although ████████████████████████████████████, it has made
no attempts to restore the information.

10

former IT Director, Kevin Volkert, testified that █████████████████████

████████████████ *See* Ex. 11, K. Volkert June 25, 2024 Dep. Tr., 36:13-37:10.

CommScope has attempted to alter Mr. Volkert's answer with his errata sheet by

███████████████████████████████████████████████████████████

█████ *See* Ex. 12, K. Volkert Errata Sheet. Mr. Volkert, however, made no such

distinction during his actual testimony. Mr. Volkert stated that ██████████████

████████████████████████████████. *Id.* at 36:13-37:3.

    *b. CommScope Deleted Other* ██████████████████
████████████████

Further, and in addition to ███████████████████████████

███████████████████████████████████████████████████████████

█████. ██████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

*See* Ex. 3, J. Pooley Oct. 18, 2024 Expert Report at 22 (citing Ex. 13,

COMM00179283-84 (2009 IT Security Standard 116), Ex. 14, COMM00732111 at

12-14 (2013 Business Solutions Policy 100), Ex. 15, COMM00179275-76 (2010 IT

Security Standard 110); Ex. 16, COMM00179242 at -50-51, 53 (2011 IT Security

Policy), Ex. 17, L. Cunyuan Jan. 15, 2020 Dep. Tr. at 154:4-156:2 ██████████

███████████████████████████████████████████████████████████

██████████████████████████████████████. CommScope's security

11

expert, based on information provided by and interviews conducted with CommScope, stated that ████████████████████████████ ████████████████████████ Ex. 18, J. Pooley Feb. 10, 2025 Expert Report at ¶ 85 ████████████████████████████ ████████████████████████ *id*. at ¶ 42 ████████████████ ████████████████████████████████████ *id*. at ¶ 92 (same); Ex. 19, COMM00755317 at -20 ████████████████

████████████████████████████████████████

████████████████████████████████

Indeed, in November 2018, CommScope ████████████████

████████████████████████████████████████

████████████████████████ *See* Ex. 20, COMM00049849 at -52.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*Id*. at -53. However, Plaintiffs have not produced any of these documents, or others, resulting from ████████████████████, which appear to have all been deleted.

**III. CommScope Deleted** ████████████████████████████ ████████████████████████████████████ _____

████████ █ █ ████ █ ████ █ ██, *see* Ex. 21, COMM06577091 (████████████████████████████████

██████████████████████████████████████████████████);

*see also* Ex. 22, Translation of COMM00729746 at -50 ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████[8] in an effort to mask their unreasonably insufficient security measures

and ████████████████████████████████.[9] ████████████████████

████████████████████████████████████████. *See, e.g.,*

Ex. 2, COMM00755869 at 70 (███████████████████████████████



---

[8] *See, e.g.*, Ex. 23, COMM00729996 at -97 ████████████████████

████████████████████████████████████████████████████

████████████████████████"). 

[9] *See, e.g.*, Ex. 24, COMM06576926 at -26 (Sept. 7, 2018 email stating ████

████████████████████████████████████████████████████

████████████████); Ex. 25, COMM00297080 at -82 (████████████

████████████████████████████████████████████████████

████ ██ ██ ███ ██ ██ ██ ██ ); *see also* Ex. 23,
COMM00729996-97 (████████████████████████████████████
████████); Ex. 26, COMM00022587 (July 26, 2018 email stating that
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████); *see also* Ex. 27, COMM00291633-34
(February 25, 2019 emails stating that ██████████████████████
████████████████████████████████████████████████).

13



*See* Ex. 28, COMM00729736 at -39 (

. *Id.* at

COMM00729736

*see also* Ex. 19, COMM00755317 at -

20 (

).

an existing tool called

System Center Configuration Manager ("**SCCM**") which inventories installed

14

applications on computers throughout an organization,[10] ██████████

████████, a tool which helps organizations automate commands over all of

its managed workstations.[11] In support of its efforts, ██████████

███████████████████████

███████████████ *See* Ex. 29, COMM06576958-59

███████████████████████

█████████████████████. In sum, from what

███████████████████████

███████████████████████

███████████████████████

███████████████████████

███████████████████. *Id.* ██

███████████████████████

███████████████████████



---

[10]   *See System Center Configuration Manager (SCCM)*, https://mindmajix.com/sccm-inventory (last visited Oct. 1, 2025) ("Microsoft Windows Users use SCCM Inventory to identify the vulnerabilities and deploy the system updates. SCCM Inventory is classified into two categories: 1) Software Inventory 2) Hardware Inventory.").

[11]   *See What is PowerShell?*, https://learn.microsoft.com/en-us/powershell/scripting/overview?view=powershell-7.5 (last visited Oct. 1, 2025) ("PowerShell is a cross-platform task automation solution made up of a command-line shell, a scripting language, and a configuration management framework. PowerShell runs on Windows, Linux, and macOS.").

███████████████████████ produced were grossly inadequate in that the above-mentioned locations are not displayed, and it is therefore impossible to determine where the above-mentioned computers were located and who had access to them. *See, e.g.*, Ex. 30, COMM00729780 at -84 (Excel titled ████████████████

████████████████████████████████████████████████████████

████████████████████████ ).

████████████████████████████████████████████████████████

████████████████████████████████████████████. *See* Ex. 31,

COMM06576912 ( ████████████ ). ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████. Ex. 11, K. Volkert June 25, 2024 Dep. Tr. at

28:10-15 ( ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ ).

This approach had its limitations. For example, ████████████████████

████████████████████████████████████████████████████████

████████████████. *See* Ex. 66, COMM00753308 at -09 ████████████████

████████████████████████████ ).  Further, this approach assumed that

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



███████. *Id.* at -12 (██████████████████████

████████); *see also* Ex. 32, COMM00297546 (September 11, 2019 email stating

that ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████); *see also* Ex. 33, COMM00729719 (explaining that

████████████████████████████████████████

██████████████████████████); Ex. 11, K. Volkert June 25,

2024 Dep. Tr. at 32:11-33:3 (█████████████████████

████████████████████).

Indeed, CommScope did not keep a log of which customers maintained

AAAP.. *See* Ex. 34, M. Zimmerman Jan. 10, 2020 Dep. Tr. at 56:2–12 █████████

████████████████████████████████████████

████████████████████████████████████████

██████████████). Instead, ████████████████

████████████████████████. *Id.* at 114:13-115:2. Based on

the limited emails available and searched in this litigation, CommScope concedes

██████████████████████████████████████████████████████████████

█████████████████████████████ *See* Ex. 35, F. Firouzbakht 30(b)(6) Nov. 15, 2023

Dep. Tr., Ex. 2 (excerpt). ████████████████████████████████████████

█████████████████████████████████████████████████. *See, e.g.*, Ex. 36,

COMM00753287 at -91 ████████████████████████████████████████

████████████████████████████████████████████████

This process of ███████████████ was methodical and comprehensive, and

months later—████████████████████████████████████████

█████████████████████████████████████ *See* Ex. 37, COMM06576920-21.

Since ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████. *See* Ex. 30, COMM00729780-84 (emphasis

added); Ex. 22, Translation of COMM00729746 at -46-48 (████████████████

████████████████████████████████████████████████

██████████████████████████████████; *see also* Ex. 38, COMM00706248

(November 13, 2018 email stating that it ████████████████████████████████

█████████████████████████████████████████████████████).

18

It is clear from documents that were produced to Defendants that

*See, e.g.*, Ex. 39, COMM00296431

(Sept. 18, 2019 email stating that 

).[12]

## IV.   CommScope Commenced This Action On July 29, 2019

On July 29, 2019, CommScope commenced this litigation against Defendants. During the course of this litigation, Defendants served several requests for production ("**RFP**") to Plaintiffs. These RFPs include several requests concerning the documents and information that Plaintiffs deleted prior to initiating this lawsuit:

- All Documents concerning actual or requested distribution of any Alleged Trade Secret to any person or entity other than a CommScope employee, including customers and contractors. As defined in the Definitions, this includes all versions of each software program. Ex. 40, Rosenberger Kunshan, Rosenberger Asia, and Rosenberger Technology LLC's Sept. 22, 2019 Amended First Set of RFPs to CommScope at No. 13.

- All Documents that CommScope contends show or otherwise relate to any use of any Alleged Trade Secret by any Defendant. *Id*. at No. 17.

- All Documents concerning the employment, resignation, and/or termination of the Individual Defendants. *Id*. at No. 20.

---

[12] Although the                                                    , and Defendants raised the             issue with the Court in 2023 (*see, e.g.*, Dkt. No. 566 at 63), Plaintiffs have made no effort to                                          .

- All Documents concerning any alleged violation by the Individual Defendants of their Employment Agreements. *Id*. at No. 21.

- To the extent not produced in response to another request, all Documents concerning any facts that evidence or otherwise support any argument, assertion, or determination that any Defendant is using or has used any Alleged Trade Secret in the development, testing, analysis, or validation of base station antennas. *Id*. at No. 23.

- All documents and communications relating to the acquisition, possession, distribution, or use of any Alleged Trade Secret by any Defendant. Ex. 41, Rosenberger Kunshan, Rosenberger Asia, and Rosenberger Technology LLC's Jan. 5, 2021 Fourth Set of RFPs to CommScope at No. 2.

- All documents and communications relating to or evidencing Defendants' alleged misappropriation of business trade secrets, including CommScope's alleged damages suffered as a result of Defendants' alleged misappropriation of business trade secrets. *Id*. at No. 23.

- All documents and communications relating to or evidencing the disclosure, sharing, distribution, or transfer of any aspect of any Alleged Trade Secret to any individual not employed by CommScope or any entity outside of CommScope, regardless of any confidentiality obligations that CommScope believes attached to that disclosure, sharing, distribution, or transfer. Ex. 42, Rosenberger Kunshan, Rosenberger Asia, and Rosenberger Technology LLC's Mar. 29, 2021 Fifth Set of RFPs to CommScope at No. 63.

CommScope, in turn, issued a request for admission and interrogatory regarding preservation of "any software programs or *copies of software programs* that are relevant to any party's claims or defenses in this case," (*see* Ex. 43, CommScope's Oct. 16, 2019 Discovery Requests to Rosenberger Kunshan at Request For Admission 1 and Interrogatory 8 (emphasis added)) and issued RFPs

20

regarding documents and communications concerning ex-employees work and the deletion of software:

- All documents you have received from any former employee of CommScope. Ex. 44, CommScope's Sept. 1, 2019 RFP to Defendants at No. 8.

- All documents and communications that constitute, use, disclose, or reference, in whole or in part, any non-public CommScope information. *Id.* at No. 9.

- All documents and communications relating to any destruction, deletion, or failure to preserve documents relevant to any party's claims or defenses that occurred on or after August 27, 2019. Ex. 43, CommScope's Oct. 16, 2019 Discovery Requests to Rosenberger Kunshan at No. 2.

- All documents and Communications you have received from former Employee or consultant of CommScope related to the former Employee's work at CommScope or any non-public CommScope information the former Employee obtained or had access to as a result of their work at CommScope. Ex. 46, CommScope's Dec. 18, 2020 RFPs and Interrogatories to Rosenberger Kunshan at No. 16.

## LEGAL STANDARD

Spoliation occurs where there is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Techs. Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004). "When spoliation occurs, courts may impose sanctions on the offending party because a litigant is 'under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably

21

foreseeable litigation.'" *TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*, No. CIV.A. 06-5359, 2009 WL 690996 at *2 (D.N.J. Mar. 11, 2009) (citation omitted).

"[T]he duty to preserve material evidence arises not only during litigation but also extends to that period before litigation 'when a party should have known that the evidence may be relevant to future litigation.'" *Major Tours, Inc. v. Colorel*, No. CIV 05-3091(JBS/JS), 2009 WL 2413631, at *4 (D.N.J. Aug. 4, 2009) (citation omitted); *see EBIN New York, Inc. v. SIC Enterprise, Inc.*, No. 19-CV-1017 (PKC) (TAM), 2022 WL 4451001, at *6 (E.D.N.Y. Sept. 23, 2022) (collecting cases where courts have found the obligation to preserve evidence arose at times months prior to the commencement of litigation, when circumstantial or direct evidence made future litigation reasonably foreseeable). "On the plaintiff's side, seeking advice of counsel, sending a cease-and-desist letter or taking specific steps to commence litigation may trigger the duty to preserve." *The Sedona Conference, Commentary on Legal Holds: The Trigger & the Process*, 11 Sedona Conf. J. 265, 271 (2010).

Rule 37(e) and the Third Circuit's three-factor test govern sanction inquiries. *Manning v. Safelite Fulfillment, Inc.*, No. CV 17-2824 (RMB/MJS), 2021 WL 3557582 at *4 (D.N.J. Apr. 29, 2021), *report and recommendation adopted*, No. 17-2824 (RMB/MJS), 2021 WL 3542808 (D.N.J. Aug. 11, 2021).

22

Rule 37(e) dictates that sanctions for spoliation include (1) measures no greater than necessary to cure the prejudice[13]; (2) a presumption that the information was unfavorable to the party who committed the spoliation; (3) an instruction to the jury that it must presume the information was unfavorable to the party; or (4) dismissal of the action or entry of a default judgment. *See* Fed. R. Civ. P. 37(e)(1)-(2); *N.V.E., Inc. v. Palmeroni*, Civil Action No. 06-5455 ES, 2011 WL 4407428, at *4 (D.N.J. Sept. 21, 2011) ("The range of potential spoliation sanctions includes dismissal of the action, exclusion of evidence, an instruction to the finder of fact allowing for an adverse inference[14], attorney's fees, and costs."); *Mosaid*, 348 F. Supp. 2d at 338 ("[N]egligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference. If a party has notice that evidence is relevant to an action, and either proceeds to destroy that evidence or allows it to be destroyed by failing to take reasonable precautions, common sense dictates that the party is more likely to have been threatened by that evidence.").

The Third Circuit's three factor test includes: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by

---

[13] These include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." *Manning, Inc.*, 2021 WL 3557582, at *10 (citing Fed. R. Civ. P. 37 Advisory Committee Notes).

[14] The terms adverse inference and spoliation inference are used interchangeably by courts in this District, and is likewise used interchangeably herein.

the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Nagy v. Outback Steakhouse*, No. CV 19-18277(MAS)(DEA), 2024 WL 712156, at *6 (D.N.J. Feb. 21, 2024) (citation omitted).

The Court further has the power to sanction parties for spoliation under the Court's inherent authority. *Mosaid*, 348 F. Supp. 2d at 335 ("This Court has the authority to impose spoliation sanctions pursuant to the Federal Rules of Civil Procedure and this Court's inherent authority."). Courts must "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 391 (M.D. Pa. 2011) (citation omitted).

"Where evidence was destroyed in bad faith, 'the burden shifts to the spoliating party to show lack of prejudice. A bad faith spoliator carries a heavy burden to show a lack of prejudice because a party who is guilty of intentionally (destroying) documents . . . should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import." *See United States v. Bayer*, 2020 WL 13189533 (D. NJ. Apr. 16, 2020) (citation omitted). "Courts in the Third Circuit often apply the preponderance standard as to whether the elements

24

of spoliation have been shown." *FinancialApps, LLC v. Envestnet, Inc.*, No. CV 19-1337-JLH, 2025 WL 2399303, at \*6 (D. Del. Aug. 7, 2025).

## **ARGUMENT**

Plaintiffs' spoliation took place in two separate and distinct acts of document and data destruction, each of which is unlawful and has prejudiced Defendants.

**I.    CommScope's Deletion Of** ███████████████ **Requires That Its Claims Be Stricken**

As discussed (*supra* at 24-25), the Third Circuit's three factor test includes: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Nagy*, 2024 WL 712156, at \*6. A spoliation sanction of dismissal is warranted where "the non-responsible party's case is severely impaired because it lacked the information that was not produced." *In re JMO Wind-Down, Inc.*, No. 16-10682 (BLS), 2021 WL 665741, at \*4 (Bankr. D. Del. Feb. 17, 2021).

*A.  CommScope Committed Sanctionable Spoliation By Deleting* ████ ██████████

CommScope's anticipation of litigation is demonstrated by (i) documents created in February 2015  ████████████████████

████████████████████████████████████

25

███████████████████ (Ex. 8, Plaintiffs' Jan. 14, 2022 Privilege Log at #3678-3679)[15], and (ii) engaging outside counsel to prepare and send ████████

███████████████████████████████████

█████████████████████████████ *See supra* at 6-8; *see also In re Frontier Communications Corp.*, 666 B.R. 260, 284 (S.D.N.Y. 2025) (collecting cases where cease and desist letters sent from plaintiff to defendants triggered a duty to preserve documents and information); *see also United States Liab. Ins. Co. v. Glob. Acquisitions, LLC*, No. 4:14 CV 1887 RWS, 2016 WL 2594067, at *1 (E.D. Mo. May 5, 2016) (receiving a cease and desist letter and hiring outside counsel establishes "a threat of litigation . . . [and] is the effective date from which [defendant] could have anticipated litigation"); *United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996) ("The hiring of outside counsel is, obviously, an indication that litigation is anticipated").

*After document discovery closed*, Plaintiffs admitted ████████████

███████████████████████████████████

which is the month *after* CommScope ████████████████████

███████████████████ , and (ii) █████████████████████████

████████████████████████ months after the ████████████████

---

[15] As discussed above (*see supra* at 8-10), CommScope's anticipation of litigation is further evidenced by other withheld communications in December 2013 with the same privilege designation.

26

was sent and ████████ to the issuance of the ████████████████████████. *See supra* at 11; *IQVIA, Inc. v. Veeva Sys., Inc.*, No. 2:17-CV-00177-CCC-MF, 2021 WL 12319551, at \*37 (D.N.J. May 7, 2021) (spoliator did not know when emails were deleted, which illustrated that they "were not subject to automatic deletion, but rather someone would have to purposefully go in and delete them"). Defendants understand that emails and files relating to the ████████████████████

████████████████████████████████████████

████████████████████████████

Moreover, Plaintiffs have withheld documents identified in relevant privilege log entries as ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ *See supra* at 8-10. There can be no doubt that CommScope's intentional and deliberate deletion of emails and other documents relevant to Defendants' defenses to the claims in this action—perpetrated after CommScope anticipated and prepared for litigation against Defendants—is spoliation. *See Mosaid,* 348 F. Supp. 2d at 335 (spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation") (citation omitted).

27

CommScope had ███████████████ under their exclusive possession and control; the files they deleted were relevant to the defenses to the claims in this action because they would contain the best and, in many respects only, direct evidence of whether misappropriation of its Alleged Trade Secrets occurred and by whom, and whether CommScope treated its Alleged Trade Secrets with sufficient protections necessary for trade secret status. In any event, CommScope's acts to hire outside counsel in 2015, ██████████████████████████████, and engage in internal privileged discussions concerning this litigation further corroborate that CommScope had long anticipated litigation against Defendants before their unlawful destruction and spoliation of critical evidence. *See supra* at 6-10. *IOENGINE LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2022 WL 1443867, at *3 (D. Del. May 3, 2022) (Spoliation occurs where: "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party.") (citation omitted).

B. *CommScope's Spoliation Was Intentional, Willful, And Made In Bad Faith*

"A party's bad faith intent speaks to that party's degree of fault and must be factored into a court's choice of sanction … The calculated destruction of documents in anticipation of potential litigation must be construed as ill-intended. Such conduct weighs in favor of imposing severe punishment." *GE Harris Ry. Elecs., L.L.C. v.*

*Westinghouse Air Brake Co.*, No. CIV.A. 99-070-GMS, 2004 WL 5702740 at *5 (D. Del. Mar. 29, 2004).

CommScope admitted that it reasonably anticipated this litigation in December 2013 and February 2015. *See supra* at 8-10. CommScope further issued its ███████████████████████████████████████████████████████, ████████████████████████████████████████████████, which specifically ████████████████████████████████████████████████████████ ████████████████. *See supra* at 6-8. ███████████████████████ ████████████████████████████—well after this case was initiated (*supra* at 11-12)—████████████████████████████████████████████ ████████████████████████████████ be preserved and available for review after CommScope commenced this lawsuit on July 29, 2019 ████████ ████████████████████████████████████████████████ ██████████████, as Mr. Zimmerman testified, and even if the Court relies on the ████████████████████████████████████████████████ ██████████████████████████ before this litigation commenced.[16] Indeed,

- ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████ (*see* Ex. 47, COMM00049820

---

[16] CommScope's former IT Director confirmed that ████████████████████████████ ████████████████████████████████████████. *See* Ex. 11, K. Volkert June 25, 2024 Dep. Tr. at 38:8-23.

29

at -31) ██████████████████████████████████████
███████████████████████████████████.[17]

- ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████.[18]

Certainly, CommScope knew as early as 2013 that ████████████
███████████



*See* Ex. 19, COMM00755317 at -20 ███████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████  *See* Ex. 48, COMM00291629 at -29-30 (████████

████████████████████████████████████████████████████).

Moreover, it is within the normal course of business at CommScope for ██

████████████████████████████████████████

---

[17] *Compare* Ex. 47, COMM00049820 at -31 (████████████████████
████████████████████), *with* Ex. 5, COMM00752808, -09 (identifying
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████).
[18] Ex. 47, COMM00049820 at -31.

30

██████████    Defendants have found dozens of examples of this practice in Plaintiffs'

document production from all levels of its management.[19]

---

[19]*See, e.g.*, Ex. 49, C. Yang Sept. 20, 2023 Dep. Tr. at 12:23-13:1 (ex-CommScope employee stating that ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ ); *id*. at 43:17-25 (discussing how ██████████ ████████████████████████████████████████ ████████████████████████████████ ); *id*. at 44:11-18 (discussing how ████████████████████████████████████ ); Ex. 50, M. Zimmerman Nov. 10, 2023 Dep. Tr. at 587:13-588:1 (Dr. Zimmerman, CommScope's 30(b)(6) witness, stated that ████████████████████████ ████████████████████ ); Ex. 51, COMM00392842 (Dr. Zimmerman emailing ████████████████████████████████ on Feb. 5, 2019); Ex. 52, COMM05889375 at -77-78 (March 15, 2017 email sent by Dr. Zimmerman ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ); Ex. 53, COMM01478964 (emailing ████████████████████ ████████████████████████████████ ); Ex. 54, COMM01424865 (a CommScope's 30(b)(6) witness Mr. Firouzbakht ████████████████████ ████████████████ on Nov. 28, 2016); Ex. 55, COMM01523892, Ex. 56, COMM01524059 (CommScope employee ████████████████ ████████████████████████████████████████ ████████████████ ); Ex. 57, COMM02676806 (CommScope employee emailing ████████████████████ on July 31, 2019); Ex. 58, COMM00286125 (CommScope employee ████████████████████ ████████████████ on Feb. 14, 2017); Ex. 59, COMM00205319 (CommScope employee emailing ████████████████████████ on Sept. 8, 2016); Ex. 60, COMM01227278 (CommScope employee emailed ████████████████████████████ on February 8, 2019); Ex. 61, COMM01607049 (CommScope employee emailed ████████████████ ████ on July 14, 2020); Ex. 62, COMM01146202, Ex. 63, COMM02877081 (CommScope's Vice President of Corporate Marketing forwarding ████ ████████████████████████████████ on April 25, 2016 and July 1, 2019); Ex. 64, COMM00365274 (CommScope's ex-head of its BSA department emailing ████████████████████████████████████ on

31

The spoliated documents were all requested through Defendants' RFPs, *supra* at 20-22, and Plaintiffs were obligated, before discovery closed, to produce them. Further, these documents were required to be produced even if they weren't identified by negotiated search terms or direct investigation. *See Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 709 (D.N.J. 2015) ("obligation on parties and counsel to come forward with relevant documents requested during discovery is 'absolute.'") (citation omitted); *IQVIA*, 2021 WL 12319551, at *46 ("Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure"). Moreover, Plaintiffs have continued to identify ex-CommScope employees who left for Defendants through 2019 by way of unverified hearsay,[20] but because ███████ ████████████████████████ those documents have also not been produced.

Accordingly, Plaintiffs' destruction of ████████████████████████ was intentional and deliberate, willful, made in bad faith, and was designed to prejudice Defendants' ability to assert defenses that would bar Plaintiffs' claims in this action. *See IQVIA*, 2021 WL 12319551 at *37 (if "a party acts in bad faith with intent to conceal the evidence from its opponent, the harshest sanctions under Rule

---

Nov. 2, 2018); Ex. 65, COMM02765513 at -13 ████████████████████████ ████████████████████████).

[20] *See, e.g.*, Ex. 45, F. Firouzbakht 30(b)(6) Nov. 15, 2023 Dep. Tr., Ex. 2 (excerpt) (listing fourteen (14) employees who left CommScope in 2018-2019).

37(e)(2) are available . . . A finding of intent to deprive may be based on circumstantial evidence").

### C. Plaintiffs Have Prejudiced Defendants And Any Sanction Lesser Than Dismissal Will Not Cure That Prejudice

The allegations in this litigation are not typical for a claim of trade secret misappropriation.   CommScope has not alleged its ex-employees emailed themselves documents with the intent of taking them to Defendants, or that they have done a forensic investigation of these employees' emails and computers and discovered such misappropriation, or that these employees possessed the Alleged Trade Secrets other than in their normal scope of work duties. Instead, Plaintiffs have taken the extraordinary step of basing nearly all of their allegations of design file misappropriation on similarities in technology between theirs and Defendants' BSAs, thereby alleging trade secret misappropriation by way of conjecture. By destroying all evidence which could undermine their allegations—including that this information was freely distributed and never treated as trade secret—Plaintiffs have deliberately prejudiced Defendants.

CommScope has not alleged that any emails or information were sent directly to any Defendants' email address, nor do Defendants have access to any CommScope emails, e-mail logs, or CommScope computers. Without access to this material information, or other direct evidence of misappropriation, Plaintiffs and Defendants are left with an expert witness duel in which Plaintiffs—under cover of

33

their own document destruction—claim that over one thousand BSA parts, ***which are common parts that all BSA companies use***, are substantially similar and therefore allegedly indicate that they were misappropriated. Defendants have been substantially prejudiced by the absence of ████████████████████ which would show that (i) CommScope's ex-employees did not actually misappropriate anything but instead had documents that were not treated as confidential in their possession pursuant to their normal business duties; and (ii) CommScope did not take reasonable measures to protect its Alleged Trade Secrets which were widely distributed without reasonable protections.[21] *See Robertet Flavors, Inc. v. Tri-Form Const., Inc.*, 203 N.J. 252, 285, 1 A.3d 658, 678 (2010) (granting dismissal as sanction where plaintiff's spoliation destroyed information that would normally "level[] the playing field"); *see also Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 326 (D. Del. 2013) (granting dispositive sanction where the nature of the "spoliation has made it impossible to know 'the precise contours of the destroyed materials.'") (citation omitted).

---

[21] Relying on emails produced in this action, CommScope alleges by way of hearsay that it ████████████████████████████████████ ████████████████████████████. *See, e.g.*, Ex. 45, F. Firouzbakht 30(b)(6) Nov. 15, 2023 Dep. Tr., Ex. 2 (excerpt). In fact, CommScope does not know ████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████. *See, e.g.*, Dkt No. 562 at 11.

In these circumstances it is appropriate for the Court to dismiss all of Plaintiffs' claims and grant Defendants their attorneys' fees and costs. *Gentex Corp.*, 827 F. Supp. 2d at 391 (granting dispositive spoliation sanction due to spoliators "unabashedly intentional destruction of relevant, irretrievable evidence" and to deter future similar acts); *Micron Tech.*, 917 F. Supp. 2d at 326-28  (granting dispositive sanction where spoliation included "documents [that] could have been central to [opposing party's] claims and defenses," an "evidentiary sanction would likely result in the same substantive outcome but in a less efficient manner," and "a dispositive sanction serves as an effective deterrent to future misconduct of this severity, which will in turn advance the ability of the court to decide cases on the merits. Any lesser sanction would, in effect, reward [the spoliator] for the gamble it took by spoliating and tempt others to do the same").[22]

Indeed, this matter is similar to *In re JMO Wind-Down, Inc.,* 2021 WL 665741, in which the spoliator deleted relevant emails "despite being under an obligation to preserve and retain evidence dating back at least six years." *Id*. at *4.

---

[22] Defendants reserve the right pursuant to Fed. R. Civ. Proc. 54(d)(2)(B) to bring a timely motion for fees following the entry of judgment. However, this Court "may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C). Further, courts have the authority to order parties to submit their relevant billings once spoliation is found. *Stream Cos. v. Windward Advert.*, No. 12-CV-4549, 2013 WL 3761281, at *6 (E.D. Pa. July 17, 2013) ("Accordingly, [movant] shall submit their billing records, and/or an affidavit, within 14 days of this Order setting forth their expenses and fees incurred as a result of Defendants spoliation of emails.").

The record developed showed that the spoliator "wiped clean his [] emails to prevent the [movant] and ultimately the Court from conducting a full proceeding and trial on the merits." *Id*. In turn, the movant "demonstrated that it is severely prejudiced by [the spoliators] conduct," and the court was "entitled to infer that the destroyed evidence is of value and that the [movants] ability to fully and fairly litigate its case has been irretrievably damaged." *Id*. (citation omitted). Accordingly, as should be found here, a dispositive sanction "is not only warranted but is the only appropriate remedy in light of the circumstances described and demonstrated here." *Id*. at *5.

In the alternative, the Court may (a) exclude all evidence submitted by Plaintiffs that could have been rebutted by the spoliated documents, (b) provide an adverse evidentiary inference to be used on summary judgment; and (c) allow instructions to be presented to the jury in this case stating that (i) the spoliated files shall serve as evidence establishing Plaintiffs did not treat the information as trade secrets, (ii) Plaintiffs do not know to whom their Alleged Trade Secrets have been distributed and therefore these documents were not kept confidential, and (iii) all relevant ███████████████████████████████████████████ ████████████ by Plaintiffs did not undertake any misappropriation of Plaintiffs' and their predecessors Alleged Trade Secrets or confidential information. *See Mosaid*, 348 F. Supp. 2d at 335 (granting spoliation inference where defendant deleted emails within its control after litigation was anticipated) (citations omitted);

36

*Donofrio v. Ikea US Retail, LLC*, No. CV 18-599, 2024 WL 1998094, at \*36-37 (E.D. Pa. May 6, 2024) (granting spoliation inference and attorneys' fees due to negligent deletion of four email accounts after a duty to preserve arose); *see also TelQuest*, 2009 WL 690996 at \*5-6 (granting spoliation inference and attorneys' fees and costs where spoliator routinely deleted business emails and records).[23]

## II.   CommScope Committed Spoliation By ████████████████ ████████████

CommScope's vast and systematic ███████████████████ ████████ was perpetrated in bad faith, ████████████████. *See supra* at 13-20.   It is appropriate for the Court to issue an adverse inference that the deleted information would have established that CommScope lacked control over who used its Alleged Trade Secret Software and that it was widely distributed to parties outside of CommScope. *See Mosaid,* 348 F. Supp. 2d at 336 ("This inference is predicated upon the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him").

"An adverse inference . . . should be imposed upon a finding that: (1) the evidence in question was within the party's control; (2) 'it must appear that there has been actual suppression or withholding of the evidence'; (3) the evidence destroyed

---

[23] Defendants reserve the right to present language regarding the specific jury instructions to the extent this action proceeds to trial.

was relevant to the claims or defenses; and (4) it was reasonably foreseeable that the evidence would be discoverable in litigation." *TelQuest*, 2009 WL 690996 at *3 (D.N.J. Mar. 11, 2009) (citations omitted).

First, these documents and related information were unquestionably within Plaintiffs' possession and control. ████████████████████
████████████████████████████████████████
████████████████████████

Second, there has been actual suppression of evidence that was relevant to Defendants' defenses. Plaintiffs cannot maintain that their Alleged Trade Secret Software is confidential, and therefore a trade secret, ████████████████
████████████████████████████. *See Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 451 (2d Cir. 2021) (finding a plaintiff's lack of "control over who used" the alleged trade secret supported dismissal of Defend Trade Secrets Act claim). In late 2018—██████████████████—Plaintiffs had already drafted documents at the direction of counsel regarding intellectual property claims for this litigation, engaged outside counsel, and ██████████████
██████ *See supra* at 6-10. ████████████████████████
████████████████████████████████████████
████████████████████████ (*supra* at 16); as a result of CommScope's unlawful document and data destruction, Defendants cannot

38

determine the extent of distribution of the Alleged Trade Secret Software, where it was kept, and who had access to it. Indeed, if the executable files of this software were located on employees' workstation computers—█████████████████████ ████████████████████████—the Alleged Trade Secret Software would not be entitled to trade secret status in light of this lack of reasonable protection and control. *See IQVIA*, 2021 WL 12319551, at *37 (finding actual suppression and granting spoliation inference where the spoliator "was in control of [the spoliated] e-mails, the deletion of the e-mails was intentionally performed, and the deletion occurred after [the spoliator] anticipated litigation").

Third, this evidence would have been discoverable in this litigation. Defendants issued RFPs concerning the Alleged Trade Secret Software and CommScope issued discovery requests targeted to deletion of software, including the deletion of *copies* of this same software, and the entire reason that CommScope ████████████████ is because it was preparing for litigation with Rosenberger and wanted to remove evidence that the Alleged Trade Secret Software was not kept confidential. Further, █████████████████████████████ ████████████████████████ over the Alleged Trade Secret Software would be at issue in this litigation. *Ogin v. Ahmed*, No. 06-cv-350, 2008 WL 4722390, at *1 (M.D. Pa. Sept. 2, 2008) (circumstances warranted the sanction of an adverse inference where the defendants destroyed logs of information within their control,

39

with notice of pending litigation, which related to the pending claims, and it was reasonably foreseeable that the logs would be discoverable); *FinancialApps*, 2025 WL 2399303, at *6, 7, 10 (confirming logs showing use of trade secret software was "highly relevant").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order (1) striking all of Plaintiffs' claims, or in the alternative, (a) excluding all evidence submitted by Plaintiffs that could have been rebutted by the spoliated documents, (b) providing an adverse evidentiary inference to be used on summary judgment; and (c) allowing instructions to be presented to the jury in this case stating that (i) the spoliated files shall serve as evidence establishing that Plaintiffs did not treat the information as trade secrets, (ii) Plaintiffs do not know to whom their Alleged Trade Secrets have been distributed and therefore they were not kept confidential, and (iii) all ██████████████████████████████ ████████████████████████████████ by Plaintiffs did not undertake any misappropriation of Plaintiffs' and/or their predecessors Alleged Trade Secrets and confidential information, (2) providing that Plaintiffs shall pay all Defendants' attorneys' fees and costs incurred in this action, and (3) all other and further relief that the Court deems appropriate.

40

Dated: October 7, 2025

/s/ Vincent Filardo, Jr.

Vincent Filardo, Jr.
*Pro Hac Vice*
Michael S. DeVincenzo
*Pro Hac Vice*
Charles Wizenfeld
*Pro Hac Vice*
KING & WOOD MALLESONS
500 Fifth Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
vincent.filardo@us.kwm.com
michael.devincenzo@us.kwm.com
charles.wizenfeld@us.kwm.com

Daniel S. Eichhorn
CULLEN AND DYKMAN LLP
433 Hackensack Avenue
Hackensack, New Jersey 07601
(201) 488-1300

*Attorneys for Defendants, Rosenberger Technology (Kunshan) Co. Ltd., Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG, Northwest Instrument, Inc., and CellMax Technologies AB*

41