# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Amphenol Corporation and Outdoor Wireless Networks LLC, | ) Civil Action No. 19-cv-15962-JXN-LDW |
| Plaintiffs, | ) |
| v. | ) **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE DR. WARREN STUTZMAN'S EXPERT REBUTTAL REPORT AND TESTIMONY RELIED UPON IN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** |
| Rosenberger Technology (Kunshan) Co. Ltd., Rosenberger Asia Pacific Electronic Co., Ltd., Rosenberger Technology LLC, Rosenberger USA Corp., Rosenberger North America Pennsauken, Inc., Rosenberger Site Solutions, LLC, Rosenberger Hochfrequenztechnik GmbH & Co. KG, Northwest Instrument, Inc., and CellMax Technologies AB, | ) **FILED UNDER SEAL** |
| Defendants. | ) **CONTAINS INFORMATION DESIGNATED ATTORNEYS' EYES ONLY UNDER THE DISCOVERY CONFIDENTIALITY ORDER** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 4

    I.    CommScope's Expert Dr. Daniel van der Weide Demonstrates that Rosenberger Misappropriated CommScope's Trade Secret CAD Files. ..... 4

    II.    In His Rebuttal Report, Dr. Stutzman Opines It Is "Unlikely" Rosenberger Used CommScope's Design Files to Create Its Own Design Files Based on Pure "Speculation." ................................................................................... 7

    III.    At His Deposition, Dr. Stutzman Concedes that His Misappropriation Opinions Are Rooted in "Speculation." ..................................................... 11

    IV.    At His Deposition, Dr. Stutzman Explains that His Misappropriation Opinion Is Based on an Incorrect Standard of "Use" of Trade Secrets. ..... 14

    V.    Rosenberger Relies on Dr. Stutzman's "Speculation" in Its Opposition to CommScope's Sanctions Motion. ............................................................ 15

LEGAL STANDARD ........................................................................................ 16

ARGUMENT ..................................................................................................... 17

    I.    Dr. Stutzman's Misappropriation Opinion Is Unreliable and Unhelpful Because It Is, by Dr. Stutzman's Own Admission, Based on Speculation . 17

    II.    Dr. Stutzman's Misappropriation Opinion Is Unhelpful and Does Not Fit the Case Because It Is Based on an Incorrect Understanding of What Constitutes "Use" of a Trade Secret. ...................................................... 21

CONCLUSION .................................................................................................. 24

i

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Astrazeneca LP v. Breath Ltd.,*
   2014 WL 5093516 (D.N.J. Oct. 10, 2014) ......................................................16

*Cohen v. Cohen,*
   125 F.4th 454 (3d Cir. 2025)..................................................................17, 21

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993)...........................................................................1, 3, 16

*In re Dealer Mgmt. Sys. Antitrust Litig.,*
   581 F. Supp. 3d 1029 (N.D. Ill. 2022).................................................................22

*Exela Pharma Scis., LLC v. Eton Pharms., Inc.,*
   2022 WL 806524 (D. Del. Feb. 8, 2022)....................................................22, 24

*Harbor Bus. Compliance Corp. v. Firstbase.io, Inc.,*
   152 F.4th 516 (3d Cir. 2025).....................................................................23

*Hoff v. Capital Brands, LLC,*
   2025 WL 1788693 (D.N.J. June 30, 2025).......................................................24

*Oakwood Lab'ys LLC v. Thanoo,*
   999 F.3d 892 (3d Cir. 2021).................................................................*passim*

*Oddi v. Ford Motor Co.,*
   234 F.3d 136 (3d Cir. 2000)........................................................................18

*Riya Dev. Corp. v. AmGUARD Ins. Co.,*
   2025 WL 900305 (D.N.J. Mar. 25, 2025) .......................................................21

*Slatowski v. Sig Sauer, Inc.,*
   148 F.4th 132 (3d Cir. 2025)..............................................................3, 18, 20

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres,*
   949 F.3d 825 (3d Cir. 2020)..............................................................3, 18, 20

*In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.,*
   2025 WL 1024048 (D.N.J. Apr. 7, 2025)..............................................................4, 24

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 25(c) ....................................................................................1

Fed. R. Evid. 702 ............................................................... 16, 17, 18, 21

## INTRODUCTION[1]

As the Court knows, this is a trade secret case about base station antenna ("BSA") technology. CommScope contends, among other things, that Rosenberger misappropriated CommScope's hardware technology, including the computer-aided design files ("CAD," or electronic blueprints) for technical components used in BSAs. In opposing CommScope's motion for sanctions, Rosenberger relies on Dr. Warren Stutzman's opinion that it is "unlikely" that Rosenberger's hardware design files "were made from" CommScope's CAD files. (Dkt. 671-29 ("Stutzman Rpt.") ¶ 21(iii) (cited in Dkt. 671 ("Opp.") at 30-31).) The Court should exclude this opinion—referred to in this brief as Dr. Stutzman's "misappropriation opinion"—because it is unreliable and does not "fit" the relevant inquiry. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).

***First***, Dr. Stutzman's opinion is unreliable because it is, by Dr. Stutzman's own admission, based on speculation. As explained in more detail below, Dr. Stutzman's misappropriation opinion is based on his belief that "it is unlikely that a designer using a CommScope's [sic] design file would change the design such that

---

[1] Amphenol Corporation and OWN LLC substituted into the case pursuant to Federal Rule 25(c). (Dkt. 630.) This Motion refers to "CommScope" because the factual predicates predate the substitution, and for consistency with prior motions. "Rosenberger" refers to all of the Defendants. Rosenberger Technology (Kunshan) Co., Ltd. is also known as PROSE Technologies (Suzhou) Co., Ltd., and Rosenberger Technology, LLC is also known as PROSE Technologies, LLC.

almost every possible measurement was different, but then leave a few measurements the same." (Stutzman Rpt. ¶ 82.) This premise is critical to Dr. Stutzman's misappropriation opinion. This premise allows him to discount the indicia of use identified by CommScope's hardware expert, Dr. Daniel van der Weide, ███████████████████████████████████████████ ███████████████████████████████████████ To be clear, Dr. Stutzman does not dispute and cannot explain these facts. Instead, he simply asserts that because he sees differences between Rosenberger's design files and CommScope's design files, it is "unlikely" that Rosenberger's design files were made using CommScope's. (*Id.* ¶ 81.)

But at his deposition, Dr. Stutzman admitted that this critical premise is based on nothing but empty speculation:



A. ███████████ .

(Ex. 1 ("Stutzman Dep.") 126:20-127:8 (emphasis added).[2]) This testimony is unequivocal and fatal to Dr. Stutzman's misappropriation opinion.

No matter how experienced the witness, an opinion based on "██████ ██████" cannot pass muster under *Daubert*. *See Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132, 138 (3d Cir. 2025) (exclusion proper where expert "resorted to . . . speculation"; "[s]peculation does not cut it"); *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 831, 834-36 (3d Cir. 2020) (same, where expert "candid[ly]" conceded that "there is an element of subjectivity or even speculation in his approach"). Thus, Dr. Stutzman's misappropriation opinion should be excluded as unreliable and unhelpful.

***Second***, Dr. Stutzman's misappropriation opinion should be excluded for lack of "fit," because it is based on and applies a standard for "use" of a trade secret that contradicts the standard articulated by the Third Circuit. The law is clear that "misappropriation" of a trade secret can include "use," and that "[u]se" of a trade secret is "broad[er]" than "replication" and "encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative

---

[2] All references to "Ex. _" are to the Declaration of Randall Kahnke, filed concurrently with this motion.

3

purpose, such as 'assist[ing] or accelerat[ing] research or development.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 909-10 (3d Cir. 2021).

Yet according to Dr. Stutzman, CommScope could show use of its hardware CAD files only by showing that Rosenberger's design files were "███████ ██████" to CommScope's design files. (Stutzman Dep. at 125:12-126:15.) Because Dr. Stutzman's misappropriation opinion is based on a fundamental misunderstanding of what qualifies as "use" of a trade secret, it is not relevant to the dispute presented, is confusing and unhelpful to the trier of fact, and should thus be excluded. *See In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*, 2025 WL 1024048, at *17-19 (D.N.J. Apr. 7, 2025) (excluding expert on "fit" grounds in part because the expert's opinion did not account for the "more nuanced" governing law).

## BACKGROUND

I.  **CommScope's Expert Dr. Daniel van der Weide Demonstrates that Rosenberger Misappropriated CommScope's Trade Secret CAD Files.**

On October 18, 2024, CommScope submitted an opening expert report from Dr. Daniel van der Weide. (Dkt. 658-4 (Ex. 16).) In that report, Dr. van der Weide concluded that ████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████ (*Id*. ¶¶ 7-10.) Dr. van der Weide also concluded that ████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████

4

████████████ (*Id.* ¶¶ 12, 76, 579.) *See Oakwood*, 999 F.3d at 905, 909-10 ("misappropriation" includes "use" of another's trade secret, with "use" being defined "broad[ly]").

In support of these conclusions, Dr. van der Weide identified and relied on overwhelming evidence. For example, Dr. van der Weide ████████████

████████████

████████ (Dkt. 658-4 (Ex. 16) ¶¶ 586-611.) ████████

████████████

████████████ (*id.* ¶¶ 592-93), ████████████

████████████ (*id.* ¶¶ 594-601).

Dr. van der Weide also compiled extensive evidence of misappropriation based on ████████████. Specifically, Dr. van der Weide analyzed the ████████████

████████████

████████████." (*Id.* ¶¶ 78-216.)

As just one example, Dr. van der Weide observed that ████████████

████████████

████████████ (*Id.* ¶ 90.) ████

████████████

████████████. (*Id.* ¶¶ 92, 220.)



(*Id.* ¶ 84, figs. 5 (CommScope top) & 6 (Rosenberger bottom).)

Dr. van der Weide opined that ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ (*Id.* ¶ 92.) ████████████████

███████████████████████████████████████████████

██████████████████████████ (*Id.* ¶¶ 122, 136, 166, 176, 189, 193, 203.)

Dr. van der Weide also found that █████████████████

████████████████████ (*Id.* ¶¶ 146, 466-69.) He also identified several instances

where ████████████████████████████████████████

███████████████████████████████████████████████

6

██████████████████████. (*Id.* ¶¶ 111, 146, 148.) ███████████████

████████████████████████████████████

███████████████████████████████ (*See, e.g., id.* ¶¶ 323-27 ██████

████████████████████████████████████

███████).)

████████████████████████████████████

████████████████████ Specifically, Dr. van der Weide observed that

"██████████ █████████ ██ █████ █ ██ █

████████████████████████████████████

████████████████ (*Id.* ¶ 683.) █████████

██████, Dr. van der Weide maintained, were "███████████████

████████████████████████████████. (*Id.* ¶¶ 684, 692,

701, 711, 720.)

## II.    In His Rebuttal Report, Dr. Stutzman Opines It Is "Unlikely" Rosenberger Used CommScope's Design Files to Create Its Own Design Files Based on Pure "Speculation."

On February 10, 2025, Rosenberger submitted a rebuttal expert report from

Dr. Warren Stutzman. (Dkt. 671-29 ("Stutzman Rpt.").)

Dr. Stutzman's report did not dispute much of Dr. van der Weide's analysis.

████████████████████████████████████

████████████████████. (*See, e.g., id.* ¶ 192 (██████████████

7

███████████████████████████████████████████ ").) He did not dispute that

████████████████████████████████████████████████████████

███████████████████████. (*Cf. id.* ¶¶ 387-400.) And most strikingly, Dr.

Stutzman did not dispute *any* of Dr. van der Weide's conclusions regarding ████████

████████████████████████████████████████████████████████

████████████████████ (*See, e.g., id.* ¶¶ 99-100 (accepting measurements without

dispute).)

Instead, Dr. Stutzman reviewed the ████████████████████████████████

████ addressed in Dr. van der Weide's report side-by-side and opined that:

(a) some high-level design concepts for those components could be found in public

materials, and (b) there were "several" aspects of the Rosenberger designs that

"differ[ed]" from the CommScope designs. (*See generally id.* ¶¶ 110-248.)

For instance, ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ (*id.* ¶¶ 88-95),

and (b) ███████████████████████████████████████████████

8



Based on these observations, Dr. Stutzman opined that it was "unlikely" that Rosenberger "used" "CommScope's design file[s]" to "create" any of the ███ ████████████████████ (*Id*. ¶ 116.) Dr. Stutzman based this conclusion on his opinions that (1) "[a]ny design similarities are likely the result of common, generally known design practice," (*id*. ¶ 115); and (2) had Rosenberger used CommScope's design files, he "would [have] expect[ed] near identicality" in *every* aspect of the design, not just "substantial similarities" in certain dimensions and measurements (*id*. ¶ 116; *see also id*. ¶¶ 21(i), 21(iii), 81-82, 116, 133, 162, 191, 207-08, 219, 227, 234, 241, 248 (same conclusion)).[3]

---

[3] Dr. Stutzman used different phrasings to describe this conclusion in certain paragraphs. (*See, e.g., id*. ¶ 191 (stating that "it cannot be determined whether Rosenberger[]" used CommScope's design files to design its own component).) But at his deposition, Dr. Stutzman confirmed that ████████████████████████

9

Notably, Dr. Stutzman's report did not explain how the ███████ ████████████████████████████████████████████ ██████ identified by Dr. van der Weide, could have arisen other than through use of CommScope's design files. Indeed, as to ███████████████████████████, Dr. van der Weide specifically opined that ██████████████████████ ████████████████████████████████" (Dkt. 658-4 (Ex. 16) ¶ 111.B), ██████████████████████████████████████ ██████████████████████████████████████████ Dr. Stutzman does not rebut this opinion or otherwise offer any explanation for ████ ████████ Dr. van der Weide identified in ███████████████ ██████████ (*See* Stutzman Rpt. ¶¶ 110-116.) And yet based on Rosenberger's changes to the design, Dr. Stutzman somehow concludes it is "unlikely" that Rosenberger "used" CommScope's CAD file to create its own ███████████ ████████. (*Id.* ¶ 116.)

In short, while Dr. Stutzman identified features he contended were *different*, he did not engage with the ████████████████████████████ ██████████████████████████that Dr. van der Weide identified.

—————————————————

██████████████████████████████████████ ██████████████████████████████████ (Stutzman Dep. at 200:17-201:18.)

10

III.    **At His Deposition, Dr. Stutzman Concedes that His Misappropriation Opinions Are Rooted in "Speculation."**

At Dr. Stutzman's deposition, CommScope questioned Dr. Stutzman about the basis for his conclusion that it was "unlikely" that Rosenberger used CommScope's design files when designing its own BSAs. In particular, CommScope asked Dr. Stutzman to explain the statement in his report that "[a]s a practical matter, it is unlikely that a designer using a CommScope's [sic] design file would change the design such that almost every possible measurement was different, but then leave a few measurements the same." (Stutzman Rpt. ¶ 82.) When asked to explain the basis for this assertion, Dr. Stutzman responded that it was " ███████████████

(Stutzman Dep. at 127:6-18; *see also id.* at 230:17-231:11 (██████████████

████████████████████████████████████████████

███████ .)

Dr. Stutzman also made several other concessions at his deposition that confirm that his misappropriation opinion is, indeed, "just . . . speculation."

*First,* ████████████████████████████████████████

████████████████████████████████ . (*Id.* at 89:19-24, 204:4-10.)

*Second,* Dr. Stutzman confirmed that he does not dispute any of Dr. van der Weide's analysis showing that ████████████████████████

████████████████████████████████████████████

████████████████████ (*See, e.g., id.* at 59:14-18 ████████

11

█████████ Indeed, Dr. Stutzman conceded that he did not "go out and measure" anything in the at-issue design files. (*Id*. at 52:16-53:11 ("I did not penetrate into the design file, no.").)

*Third*, Dr. Stutzman conceded that he does not know how Rosenberger designed the components that contained the matching measurements. (*See, e.g., id.* at 207:11-15, 249:19-256:6.) He confirmed that he did not interview any Rosenberger witnesses who could have told him what sources Rosenberger consulted during the design process. (*Id.* at 20:11-24, 151:3-152:5.) █████████

████████████████████████ (*Id.* at 49:15-51:1, 252:25-253:1.) Dr. Stutzman did not even review any Rosenberger deposition transcripts other than what was directly quoted in Dr. van der Weide's report. (*Id.* at 54:8-55:1, 279:14-19.)

*Fourth*, Dr. Stutzman conceded that he does not "have any explanation" for how Rosenberger's design files came to contain the matching measurements or other indicia of copying. (*Id.* at 140:19-141:7, 156:16-22, 186:12-21 █████████ █████████ 220:14-18 ("I don't know where that came from.").)

*Fifth*, ████████████████████████████████████████████████ ████████████████████████████████████████████. (*See, e.g., id.* at 74:25-75:16 (nothing in "patents" or "textbooks").) █████████████████

12

███████████████████████████████████████████████████

████████████████████ (*Id.* at 65:24-66:2.)

In the end—and as the preceding concessions make apparent—Dr. Stutzman's opinion boils down to saying he does not think Rosenberger used CommScope's design files because he sees differences between those files. The following testimony illustrates the point:



(Stutzman Dep. at 147:5-11; *see also id.* at 186:5-10 ("Q. ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████."); *id.* at 188:14-22

(similar).)

Dr. Stutzman further testified that ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ (*Id.* at 148:15-149:4;

*see also id.* at 160: 6-10 ("████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████").)

In sum, Dr. Stutzman's deposition testimony confirms that he resorted to his admittedly speculative premise—that "it is unlikely that a designer using a CommScope's [sic] design file would change the design such that almost every possible measurement was different, but then leave a few measurements the same"— because he had no explanation for or response to the ████████████████████ ████████████████████ that Dr. van der Weide identified.

## IV.     At His Deposition, Dr. Stutzman Explains that His Misappropriation Opinion Is Based on an Incorrect Standard of "Use" of Trade Secrets.

Dr. Stutzman's deposition testimony also confirmed that his misappropriation opinion is based on and applies an improper standard of "use" under governing trade secret law.

Dr. Stutzman acknowledged in his report that misappropriation includes "use" of a trade secret. (Stutzman Rpt. ¶ 13.) Throughout his deposition, Dr. Stutzman resisted explaining his understanding of the concept of use, as illustrated by the exchange below:





(Stutzman Dep. at 92:25-93:23.) Along similar lines, Dr. Stutzman repeatedly—and

bizarrely—denied that " ███████████████████████████ ."

(*Id*. at 47:5-8; *see also id*. at 47:22-48:1.) Ultimately, however, Dr. Stutzman

explained his belief that, in order to show that a Rosenberger component was "██

██" or made "███ a CommScope component, CommScope would need to show

that the resulting Rosenberger part was "█████████████" to the original

CommScope part. (*Id*. at 123:12-126:15 (emphasis added).)

## V.    Rosenberger Relies on Dr. Stutzman's "Speculation" in Its Opposition to CommScope's Sanctions Motion.

Rosenberger's opposition to CommScope's sanctions motions relies on Dr.

Stutzman's report in arguing against CommScope's "requested design file adverse

inference." (Opp. at 30.) Specifically, Rosenberger claims that such an inference is

"not justified" because, according to Dr. Stutzman, "it is unlikely that" the

Rosenberger design files "were made from" CommScope's design files—a

conclusion based on Dr. Stutzman's speculation about the "differences" between

CommScope's and Rosenberger's designs. (*Id*. at 30-31; *see also id*. at 3

15

("Defendants' experts have easily rebutted Plaintiffs' accusations and experts' analyses"), *id*. at 31 ("Defendants' expert [Dr. Stutzman] disputes that Dr. van der Weide establishes that  ).)

## LEGAL STANDARD

Under Federal Rule of Evidence 702, a party may rely on an expert opinion only if (1) the purported expert witness is "qualified as an expert by knowledge, skill, experience, training, or education" and (2) the party seeking to introduce the expert "demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702 (as amended in 2023); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).[4]

---

[4] CommScope acknowledges that the Court's gatekeeping function is more relaxed where, as on the parties' pending motions for sanctions, the Court is both gatekeeper and factfinder. *See Astrazeneca LP v. Breath Ltd.*, 2014 WL 5093516, at *1 (D.N.J. Oct. 10, 2014) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."). Plaintiffs reserve their rights to renew this motion to exclude or to move to exclude additional aspects of Dr. Stutzman's expert testimony at an appropriate juncture.

16

**ARGUMENT**

CommScope does not dispute Dr. Stutzman's qualifications. Rather, CommScope challenges the reliability and relevance of Dr. Stutzman's misappropriation opinion. *First*, because Dr. Stutzman simply "speculat[es]" that the differences between CommScope's and Rosenberger's design files make it "unlikely" Rosenberger used CommScope's designs, his testimony is unreliable and unhelpful. *Second*, because Dr. Stutzman's opinions are based on and apply a standard of "use" of trade secrets that is contrary to Third Circuit law, it does not "fit" the case and is thus unhelpful. The Court should accordingly exclude Dr. Stutzman's opinion that "it is unlikely that the designs of Rosenberger's components were made from CommScope's design file[s]." (Stutzman Rpt. ¶ 81; *see also id.* ¶¶ 21(i), 21(iii), 81-82, 116, 133, 162, 191, 207-08, 219, 227, 234, 241, 248.)

## I.    Dr. Stutzman's Misappropriation Opinion Is Unreliable and Unhelpful Because It Is, by Dr. Stutzman's Own Admission, Based on Speculation.

To satisfy Federal Rule of Evidence 702, every aspect of an expert's testimony must be "reliable," including "the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Cohen v. Cohen*, 125 F.4th 454, 462 (3d Cir. 2025) (citation omitted). This "reliability requirement ensures that an expert's testimony is based on the methods and procedures of science, not on subjective belief and unsupported speculation." *Id.* at 461-62 (quotation omitted). "[Y]ears of experience" do not provide the "necessary reliability" if the expert

17

"use[s] little, if any, methodology beyond his own intuition" and speculation. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000); *see, e.g.*, *Slatowski*, 148 F.4th at 138 (exclusion proper where expert "resorted to . . . speculation"; "[s]peculation does not cut it"); *UGI Sunbury*, 949 F.3d at 831, 834-36 (same, where expert "candid[ly]" conceded that "there is an element of subjectivity or even speculation in his approach").

Here, Dr. Stutzman's misappropriation opinion—*i.e.*, his opinion that it is "unlikely" that Rosenberger used CommScope's design files to develop its own design files (Stutzman Rpt. ¶ 81)—does not satisfy Rule 702 because it is based on unreliable speculation. In support of his misappropriation opinion, Dr. Stutzman's report states that "[a]s a practical matter, it is unlikely that a designer using a CommScope's [sic] design file would change the design such that almost every possible measurement was different, but then leave a few measurements the same." (*Id.* ¶ 82.) When asked to explain the basis for this premise, Dr. Stutzman responded ▮▮▮▮▮▮▮▮▮▮▮▮▮." (Stutzman Dep. at 126:20-127:8 (emphasis added).)

This premise is central to Dr. Stutzman's overall misappropriation opinion: he agreed that it is "important" to his "conclusions in this case." (*Id.* at 127:9-18.) In fact, this premise is so important to Dr. Stutzman's misappropriation opinion that he restates a version of the same premise repeatedly throughout his report: "Indeed, to the extent the design files of CommScope were used to make the Rosenberger

18

components one would expect near identicality and not mere similarities or even 'substantial similarities.'" (Stutzman Rpt. ¶ 109 (



*see also id.* ¶ 116 ( ¶ 133 ( ); ¶ 162 ( ); ¶ 207 ( ); ¶ 219 ( ); ¶¶ 227, 234, 241 ( ¶ 269 ); ¶ 301 ( ); ¶ 306 ( ); ¶ 313 ( ); ¶ 338 ( ).)

Indeed, without this speculative premise—that "[a]s a practical matter, it is unlikely that a designer using a CommScope's [sic] design file would change the design such that almost every possible measurement was different, but then leave a few measurements the same"—Dr. Stutzman's opinion collapses entirely.

To reiterate, Dr. Stutzman did not dispute



that Dr. van der Weide identified between CommScope's and Rosenberger's design files. (*See supra* at 8, 10-12.) Nor did Dr. Stutzman have any explanation for how or why Rosenberger's components came to have these uncanny similarities with CommScope's components, similarities which Dr. van der Weide concludes

(*See, e.g.*, Stutzman Dep. at 220:14-18 ("

19

███████████████████████████████.”); *see also id.* at 140:19-141:7 (“████████

███████████”), 156:16-22 (same), 186:12-21 (same).)

In fact, there was no way Dr. Stutzman *could* have reliably offered such an explanation, because he never investigated how Rosenberger *actually developed* the components discussed in his report. (*See supra* at 12.) Instead, Dr. Stutzman just speculated about what he considered “likely” in the abstract, which cannot support an admissible expert opinion. *See Slatowski*, 148 F.4th at 137-38 (expert testimony inadmissible where expert “just tout[ed] his theory” about what “most likely” “could have” happened, without “consider[ing]” the “factual context” of the case); *see also UGI Sunbury*, 949 F.3d at 834-36 (finding similar testimony inadmissible because “[a]t best,” it “offer[ed] ‘the beginning of a discussion and not the end’”).

Dr. Stutzman also sought to discount the ████████████████████████ ████████████████████████, on the basis that information about the various types of components at issue was available through public disclosures (*e.g.*, patents, textbooks, etc.). Importantly, however, Dr. Stutzman concedes that ██████████ ████████████████████████████████████████████████ ████████████████████. (*See, e.g.*, Stutzman Dep. at 65:24-66:2, 74:25-75:16.) Thus, the existence of these disclosures cannot explain the uncanny similarities (*e.g.*, matching measurements, copied typos, and relics of copying) that demonstrate Rosenberger’s use of CommScope’s design files. Dr. Stutzman’s failure to address

20

this point undermines any "link" between the disclosures and Dr. Stutzman's conclusion that Rosenberger (theoretically) could have used the disclosures to design their components. *See, e.g.*, *Riya Dev. Corp. v. AmGUARD Ins. Co.*, 2025 WL 900305, at *7 (D.N.J. Mar. 25, 2025) (excluding expert opinion that "fail[ed] to consider" the "facts" that "would have 'enabled him to express a reasonably accurate conclusion'").

Thus, Dr. Stutzman's misappropriation opinion is based on impermissible speculation and should be excluded under Rule 702. At minimum, the Court should bar Dr. Stutzman from opining that "it is unlikely that a designer using a CommScope[] design file would change the design such that almost every possible measurement was different, but then leave a few measurements the same" or any similar statement or opinion, because those statements are improper speculation.

## II.    Dr. Stutzman's Misappropriation Opinion Is Unhelpful and Does Not Fit the Case Because It Is Based on an Incorrect Understanding of What Constitutes "Use" of a Trade Secret.

Dr. Stutzman's misappropriation opinion should also be excluded because it does not "fit" the case and is therefore unhelpful to the trier of fact. Under Rule 702(d), proposed expert testimony must be "sufficiently tied to the facts of the case . . . so that it 'fits' the dispute and 'will assist the trier of fact.'" *Cohen*, 125 F.4th at 460 (citation omitted). "This condition goes primarily to relevance." *Id.* at 464.

21

Under these principles, if an expert opinion is rooted in an incorrect understanding of the governing legal standard and so will confuse rather than assist the trier of fact, the court should exclude the testimony. *See, e.g.*, *Exela Pharma Scis., LLC v. Eton Pharms., Inc.*, 2022 WL 806524, at \*3 (D. Del. Feb. 8, 2022) (excluding patent-infringement opinions that were "based on a legally erroneous premise" and noting that "courts routinely preclude those portions of an expert's report that are premised on a misunderstanding of the law"; collecting cases); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1063 (N.D. Ill. 2022) ("Expert opinions that are contrary to law are inadmissible.").

Here, Dr. Stutzman's misappropriation opinion—*i.e.*, that it is "unlikely" that Rosenberger used CommScope's CAD files to develop Rosenberger's design files— is based on and applies an incorrect standard for what constitutes "use" of trade secrets.

One of the ways a person can "misappropriate" a trade secret is to "use" it. *See Oakwood*, 999 F.3d at 908-09. The law is clear that "[u]se" of a trade secret is "broad[er]" than "replication" and "encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as 'assist[ing] or accelerat[ing] research or development.'" *Id*. at 910. Under the governing legal standard, Rosenberger would have "used" CommScope's

22

design files if it used those design files as a starting point or reference and then made

changes to the design. *See, e.g.*, *Harbor Bus. Compliance Corp. v. Firstbase.io, Inc.*,

152 F.4th 516, 531 (3d Cir. 2025) (affirming misappropriation verdict where

defendant used plaintiff's trade-secret documents "to assist and accelerate the

development of" its competing product). The problem here is that Dr. Stutzman

applied a fundamentally different standard of "use" than the one that governs in the

Third Circuit.

As explained above (*see supra* at 4, 15), Dr. Stutzman believed that, in order

to show that Rosenberger "used" a CommScope design file, CommScope would

need to show that the resulting Rosenberger part was "substantially identical" to the

original CommScope component. (*Id.* at 125:12-126:15.) This is simply wrong as a

matter of law. A defendant does not have to "replicate" a trade secret in its entirety

in order to misappropriate the trade secret. *Any* "use" of another's trade secret is

improper. *See Oakwood*, 999 F.3d at 908-09; *Harbor Bus.*, 152 F.4th at 530-31.

Further, as a logical matter, it makes no sense to conclude, as Dr. Stutzman

effectively does, that the presence of some *differences* between CommScope's and

Rosenberger's designs cancels out the *unexplained uncanny similarities* and other

indicia of use. The existence of differences between the design files does not indicate

that Rosenberger did not *use* CommScope's design files. The existence of differences

suggests only that Rosenberger did not make an unchanged carbon copy of them—

23

something CommScope does not allege, and that trade secret law does not require CommScope to prove. *See Oakwood*, 999 F.3d at 910.

Because Dr. Stutzman's opinion holds CommScope to a heightened burden of proof contrary to governing law, it "add[s] more confusion than clarity and ultimately would not help the trier of fact to understand the evidence." *Hoff v. Capital Brands, LLC*, 2025 WL 1788693, at *6 (D.N.J. June 30, 2025). Thus, the Court should exclude Dr. Stutzman's misappropriation opinion for lack of "fit." *See Valsartan*, 2025 WL 1024048, at *17-19 (excluding expert on "fit" grounds in part because the expert's opinion did not account for the "more nuanced" governing law); *Exela Pharma*, 2022 WL 806524, at *3 (excluding patent-infringement opinions that were "based on a legally erroneous premise").

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court exclude Dr. Stutzman's expert rebuttal report and related testimony claiming that it is "unlikely" that Rosenberger misappropriated CommScope's design files. (*See, e.g.*, Stutzman Rpt. ¶¶ 21(i), 21(iii), 81-82, 109, 116, 133, 162, 191, 207-08, 219, 227, 234, 241, 248.) Plaintiffs reserve their rights to renew this motion and/or move to exclude additional aspects of Dr. Stutzman's expert testimony at an appropriate juncture.

24

Dated: November 18, 2025

Tracey Salmon-Smith
Kevin H. DeMaio
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932
Phone: (973) 549-7000
Fax: (973) 360-9831
tracey.salmonsmith@faegredrinker.com
kevin.demaio@faegredrinker.com

Timothy A. Lindquist
Pro Hac Vice
TLindquist@carlsoncaspers.com
Dennis C. Bremer
Pro Hac Vice
dbremer@carlsoncaspers.com
Tara C. Norgard
Pro Hac Vice
tnorgard@carlsoncaspers.com
CARLSON, CASPERS, VANDENBURGH
& LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Phone: (612) 436-9600

*Attorneys for Plaintiffs Amphenol Corporation and Outdoor Wireless Networks, LLC*

/s/ *Edward G. Sponzilli*
Edward G. Sponzilli
NORRIS MCLAUGHLIN, P.A.
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
Phone: (908) 722-0700
Fax: (908) 722-0755
Email: egsponzilli@norris-law.com

/s/ *Randall E. Kahnke*
Randall E. Kahnke (MN Atty. No. 202745)
Pro Hac Vice
Tyler Young (MN Atty. No. 395017)
Pro Hac Vice
Lauren W. Linderman (MN Atty. No. 0398446)
Pro Hac Vice
Anna E. Sallstrom (MN Atty. No. 400489)
Pro Hac Vice
Bryan K. Washburn (MN Atty. 0397733)
Pro Hac Vice
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
Email: randall.kahnke@faegredrinker.com
    tyler.young@faegredrinker.com
    lauren.linderman@faegredrinker.com
    anna.sallstrom@faegredrinker.com
    bryan.washburn@faegredrinker.com

Harmony Mappes (IN Atty. No. 27237-49)
*Pro Hac Vice*
Faegre Drinker Biddle & Reath LLP

25

300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Phone: (317) 237-0300
Fax: (317) 237-1000
Email: harmony.mappes@faegredrinker.com